UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Gary Aguirre, | ) | |
| 1528 Corcoran Street, N.W. | ) | |
| Washington, D.C.  20009, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case number: |
| | ) | |
| Securities and Exchange | ) | |
| Commission, 100 F Street N.E., | ) | |
| Washington, DC 20549, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and Privacy Act of 1974, 5 U.S.C. § 552a, to compel Defendant United States Securities and Exchange Commission ("SEC") to produce, provide access to, and make available certain records specified below that were requested by Plaintiff Gary Aguirre and that pertain to him.

## JURISDICTION

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. § 552a(g).

## PARTIES

3. Plaintiff is a citizen of the United States, a resident of the District of Columbia, and a former employee of Defendant SEC.

4.  Defendant is an agency of the United States Government and has possession and control of the records that are the subject of this action.

## **PUBLIC INTEREST**

5.  The facts underlying this complaint raise an issue of the highest public interest. The SEC has been *entrusted* with the power and duty of "great social and economic significance to the American people." Section 200.53 of Title 17 of the United States Code of Federal Regulations spells out that trust:

> Members of the Securities and Exchange Commission are entrusted by various enactments of the Congress with powers and duties of great social and economic significance to the American people. It is their task to regulate varied aspects of the American economy, within the limits prescribed by Congress, to insure that our private enterprise system serves the welfare of all citizens. Their success in this endeavor is a bulwark against possible abuses and injustice which, if left unchecked, might jeopardize the strength of our economic institutions.

6.  Few principles are more deeply engrained in Title 17 of the Code of Federal Regulations, which governs how the SEC must execute its powers and duties, than the mandates obligating the SEC to handle all of its affairs, including the enforcement of the securities laws, with impartiality. In short, Justice must remain blindfolded. No conduct would stray farther from those mandates than a double set of laws: one for the politically well connected and another for everyone else. Through this complaint, Plaintiff seeks SEC records that will demonstrate that the most senior SEC officials violated these mandates by giving favored, special and thus unlawful treatment to an individual ("Suspect"), who has

powerful political connections, in an SEC investigation of significant importance to the nation's capital markets.

7. That the records sought involve a matter of the highest public interest is conformed by recent events. Three committees and one subcommittee of the United States Senate as well as the United States Office of Special Counsel are currently investigating the matter. This matter is also the subject of significant media attention in this country and in foreign country, including the United Kingdom, France, Germany and Spain.[1]

## **FACTUAL BACKGROUND**

8. Plaintiff was employed by Defendant SEC as a Senior Counsel in the Division of Enforcement ("Enforcement") from September 7, 2004, through September 2, 2005.

9. During his employment with Defendant SEC, Plaintiff had primary responsibility, as the assigned staff attorney, for conducting an investigation of possible securities violations by the same financial institution in numerous separate matters.

10. During the first half of May 2005, Branch Chief Robert Hanson ("Hanson") and Assistant Director Mark Kreitman ("Kreitman") directed Plaintiff to focus his time and efforts on one matter ("Primary Matter") and to look for evidence of the identity of the other necessary participant or participants in that matter.

11. Beginning in early June 2005, Plaintiff informed Hanson and Kreitman of growing evidence indicating the Suspect was an essential participant in the securities violations under investigation in the Primary Matter. Until late June 2005, Hanson and Kreitman

---

[1] At the court's request, Plaintiff will provide the court for an in camera review of his sworn statement and supporting exhibits, previously provided to the Senate committees and OSC, which demonstrate that the underlying facts alleged below are true.

praised and approved how Plaintiff conducted the investigation of the Primary Matter, including the investigation of the Suspect's possible role.

12. The investigation of the Suspect's role in Primary Matter progressed until approximately June 23, 2005, when, out of nowhere, Hanson told Plaintiff that it would be difficult to obtain approval to take the Suspect's testimony because he had powerful political connections. Events over the next week corroborated Hanson's statement.

13. From time to time thereafter, Hanson repeated his statement alleged in paragraph 12 and also made similar statements in the same context, e.g., the Suspect had "political clout" and the Suspect's attorneys had "juice." Some of these comments were confirmed in emails between Plaintiff, Hanson and other senior SEC officials.

14. Hanson's statement regarding the Suspect's political connections was and is true.

15. Giving special treatment of this type violates numerous provisions of the Code of Federal Regulations requiring that Defendant SEC actions in general and enforcement proceedings in particular be conducted with impartiality, including 17 CFR 200.55  17 CFR 200.58, 17 CFR 200.61, 17 CFR 200.64, 17 CFR 200.735-2, and 17 CFR 200.51. No conduct strays further from the mandates of these regulations than Defendant SEC's use of a double set of securities laws: a lenient set for the politically well-connected and the standard set for everyone else.

16. After Hanson's refusal, Plaintiff sought the approval of Hanson's supervisor, Kreitman, to issue the subpoenas in question. Kreitman angrily refused the request. On June 14, 2005, he authorized Plaintiff to present the Primary Matter, including the Suspect's possible role, to a federal criminal prosecutor and the FBI.

17. From late June until early September of 2005, Hanson and Kreitman continued to block the issuance of the subpoenas for the Suspect's testimony and related records.

18. During this period, Plaintiff informed Associate Director Paul Berger ("Berger") by email and face-to-face meetings, Director Linda Thomsen ("Thomsen") by email, and Chairman Christopher Cox ("Cox") by letter of Hanson's and Kreitman's conduct effectively halting the investigation of the Suspect.

19. Plaintiff is informed and believes, and thereon alleges, that Berger, Thomsen and Cox made no legitimate inquiry in connection with the information Plaintiff provided them as alleged in paragraph 18. Berger, Thomsen and Cox, jointly and individually, never informed Plaintiff that his allegations were being investigated.

20. Plaintiff is informed and believes and thereon alleges that the most senior level Enforcement officials directly participated in the decision to give the Suspect favored and special treatment by blocking the investigation of his role in the suspected violations of the securities laws under investigation in the Primary Matter.

21. Plaintiff is informed and believes and thereon alleges that Defendant SEC has terminated the investigation of the Primary Matter. The media has also confirmed Defendant SEC has terminated its investigation of the primary matter.

22. Until Plaintiff questioned his immediate supervisors' decision to give favored, special and unlawful treatment to the Suspect, his supervisors consistently found his performance met or exceeded all applicable SEC standards. Immediately before Plaintiff first questioned his immediate supervisors' decision to block the investigation of the Suspect, as alleged above, Plaintiff's supervisors and other senior SEC officials made the following positive findings regarding his 2004-2005 performance:

1. On June 1, 2005, Plaintiff's immediate supervisors, Kreitman and Hanson, met with him to review his performance for the 2004-2005 cycle pursuant to applicable standards as set forth in SEC Form 2494, "Critical Elements and Acceptable Standards." Kreitman certified that Plaintiff's performance for 2004-2005 satisfied every applicable standard in SEC Form 2494. A copy of his certification is attached hereto as Exhibit A.

2. On June 14, 2005, Plaintiff's immediate supervisors again met with him to review in detail his work on the single investigation he was conducting. Plaintiff summarized the evidence he had uncovered indicating that a certain financial institution had engaged in series of transactions violating the securities laws and that the Suspect had also violated those same securities laws by participating in the same transactions. After the review, Kreitman stated that he sometimes gave his own personal award (his "Perry Mason" award) to his subordinate staff for excellent work; he described three levels of this award; he then gave Plaintiff the highest form of this award for his work on the investigation described above, stating that he was unsure whether he had ever given that award to any staff member before.

3. Because Kreitman certified that Plaintiff's performance met all applicable SEC standards for the 2004-2005 cycle in Exhibit A, Plaintiff qualified under Defendant SEC policy and practice for a merit rating increase for the next year, the 2005-2006 cycle.

4. As the next step in the merit rating process, Plaintiff prepared and submitted his "contribution statement" for 2004-2005 cycle to Hanson describing in detail Plaintiff's progress on the hedge fund investigation.

5. Using Plaintiff's "contribution statement," shortly after June 17, 2005, Hanson prepared his own evaluation of Plaintiff's 2004–2005 performance as the next step in the merit rating review process. Hanson's evaluation is attached hereto as Exhibit B. It reads in part as follows:

> Gary worked extremely hard on one investigation during his time with the group, a significant matter involving [possible securities violations by name of company], one of the nation's largest [certain type of financial institution].
>
> Gary has an unmatched dedication to this case (often working well beyond normal work hours) and his efforts have uncovered evidence of potential [violations of the securities laws by the financial institution] and its principals. He has been able to overcome a number of obstacles opposing counsel put in his path on the investigation. Gary worked closely with the Office of Compliance Inspections and Examinations to develop the case and worked with several self-regulatory organizations to develop a number of potential leads. He has gone the extra mile, and then some.

6. Plaintiff is informed and believes, and thereon alleges, that Hanson also made a positive recommendation regarding a merit rating increase for Plaintiff and forwarded that recommendation along with his evaluation of Plaintiff to Kreitman.

7. Plaintiff is informed and believes, and thereon alleges, that Assistant Director Kreitman agreed with Hanson's evaluation of Plaintiff and his positive recommendation regarding a merit rating increase and forwarded both, in accordance with established SEC policy and practice, to the Enforcement Compensation Committee ("Committee") for a determination whether Plaintiff's 2004-2005 performance warranted a merit increase for the 2005-2006 cycle.

23. Senior SEC officials also approved Plaintiff's two-step merit pay increase:

   a. The Compensation Committee, comprised of high level Enforcement officials, determined that Plaintiff's performance warranted a two-step merit increase.

   b. Plaintiff is further informed and believes, and thereon alleges, that Thomsen also approved Plaintiff's two-step merit increase.

   c. On August 18, 2005, Cox approved Plaintiff's two-step merit increase.

   d. On August 21, 2005, Defendant SEC's Human Resources Office issued a notice approving Plaintiff's two-step merit increase. A copy of said notice is attached hereto as Exhibit C and incorporated herein by reference. From that day forward, Defendant SEC included the two step pay raise in Plaintiff's compensation.

24. Eleven days after Defendant SEC approved Plaintiff's two-step merit rate increase, Thomsen, Berger, Kreitman and Hanson acted in concert on September 1, 2005, to terminate Plaintiff's employment on one day's notice while he was on vacation thousands

of miles a way. Plaintiff's access to any SEC records, including emails, was immediately cut off after he was given notice of his termination.

25. Berger and Thomsen issued a Notice of Termination on September 1, 2005, purporting to state the grounds for the termination of Plaintiff's employment. On September 19, 2005, Plaintiff wrote an agent of the SEC who was looking into the circumstances surrounding his firing:

> After we met yesterday, I obtained some of my personnel files from the
> Division of Enforcement, including a Notification of Personnel Action,
> dated August 21, 2005. I had previously requested, but was not provided
> with the step increase information. The August 21 notice indicated that I had
> received a two-step pay increase based on the 2004-2005 evaluation period.
> It is difficult for me to reconcile the August 21 step increase with the
> conclusions stated offered in the September 1 memo as the basis for my
> termination. Also, the conclusions in the September 1 memo are inaccurate.
> Accordingly, to bring the factual basis for my termination into sharper
> focus, I suggest that you obtain a more detailed statement from Associate
> Director Paul Berger, regarding his decision to terminate my employment
> with the Commission.

26. Berger declined to provide any statement. Instead, five days after Plaintiff's request above, Berger directed Kreitman to retroactively alter Plaintiff's personnel to justify the decision of senior SEC officials to terminate Plaintiff's employment and to cover up their real reason for doing so.

27. Since Defendant SEC terminated his employment, Plaintiff has informally and formally sought records from Defendant SEC that would shed light on why Thomsen, Berger, Kreitman and Hanson (1) approved Plaintiff's two-step merit rate increase, effective August 21, 2006, and then (2) terminated his employment eleven days later.

28. Defendant SEC has consistently blocked Plaintiff's efforts to obtain such records and evidence, except for the exhibits attached to this Complaint.

29. Defendant SEC has given Plaintiff conflicting information regarding the location and content of his personnel records. Defendant SEC first told Plaintiff that his records had been placed in storage. When Plaintiff requested copies of his employment records in January 2006 from the Federal Records Center, its representative informed Plaintiff it had no records relating to his employment with the SEC.

30. On April 11, 2006, Plaintiff requested by email that Defendant SEC provide him "with the current location of [his] EPF file maintained by the Division of Enforcement as well as [his] personnel file maintained by Human Resources." On April 24, 2006, Defendant SEC asserted that it was not obligated to provide Plaintiff with the requested information under FOIA. Plaintiff's request made no reference to FOIA or the Privacy Act.

31. Plaintiff informed the SEC Ethics Office in a phone call on November 29, 2005, and by email on December 1, 2005, attached as Exhibit D, of his intention "to file a complaint with the OSC in connection with my discharge on September 2, 2005, and the relevant misconduct of certain SEC officials." He also requested the Ethics Office to confirm his understanding that he could provide the OSC with his sworn statement and "copies of communications between [him] and other more senior SEC officials relating to the Investigation as necessary to prove the allegations of [his] complaint." Defendant SEC

10

responded by its letter December 15, 2005, attached as Exhibit E, with a veiled threat of criminal prosecution and a demand that the records be returned immediately without providing copies to the OSC.

32. By his letters of December 21, 2005 and January 6, 2006, and his counsel's letter of January 18, 2005, attached as Exhibit F, Plaintiff questioned Defendant SEC regarding the legal bases for its demand and implied threat. Defendant SEC replied by email on February 17, 2006, attached as Exhibit G, that, "The Commission is in the process of preparing a response to your letter." The SEC has never provided such response.

33. Though Defendant SEC never provided a response to Plaintiff's inquiries, as alleged in Paragraph 32, it has provided misleading statements to the media in which it again makes contentions similar to those made in its letter of December 15, 2005, and again impliedly threatens Plaintiff, but this time using the media as its messenger. For example, based on information provided by the SEC, the London Times published the following inaccurate account on June 28, 2005, of the SEC's and Plaintiff's communications regarding the events alleged in paragraph 32:

> SEC chiefs now believe that Mr. Aguirre has in his possession sensitive documents pertaining to the [hedge fund under investigation] case and his attempts to subpoena [the Suspect]. The agency has asked him to return the documents, but has yet to receive a formal response. An SEC source close to the Pequot case told The Times: "We have asked Aguirre to return anything that he has in his possession that would be considered property of the SEC, that would include documents, tapes, depositions, anything to do with the case. His answer so far has been 'we'll get back to you on that'."

34. Plaintiff's counsel informed Defendant SEC on June 26, 2005, as stated in Exhibit F, that he had been asked to testify before United States Senate Committee on the Judiciary in connection with the investigation that was the subject of his complaint to the OSC. In response, Defendant SEC sent Plaintiff's counsel a letter, which is attached as Exhibit G, in which it contended that SEC regulations, which would subject Plaintiff to criminal sanctions, were applicable to his testimony, notwithstanding the provisions in 5 U.S.C. 7211 and 5 U.S.C. 2302(b)(8) authorizing Plaintiff to provide such information to the Congress.

35. Plaintiff has also sought information pursuant to FOIA from the SEC and informally and through FOIA from the United States Office of Government Ethics ("OGE") regarding the obligations of a former federal employee. Plaintiff learned from the OGE and other reliable sources that certain SEC regulations applicable to departing employees may not have been issued in compliance with applicable law.

36. Plaintiff is informed and believes and thereon alleges that Defendant SEC possesses records relating to the events alleged in paragraphs 8 though 32.

## THE FOIA/PRIVACY ACT REQUESTS

37. By letter of December 30, 2005, pursuant to the applicable provisions of FOIA and the Privacy Act, Plaintiff requested access to and copies of certain documents, records and files. The scope of Plaintiff's request for purposes of this action has been narrowed to records relating to the following portions of this request:

> 2) All communications and any records of communications between and any employee of the SEC and any employee of the U.S. Office of Government Ethics ("OGE") during 2005 relating to 17 CFR 200.735-3;

3) All communications and any records of communications between and any employee of the SEC and any employee of the OGE relating to SEC rules and regulations applicable to departing employees;

4) All records relating to any discussion, dispute, controversy or communications between the OGE and the SEC relating to the enforceability of CFR 200.735-3;

5) All records relating to the Securities and Exchange Commissions rules and regulations applicable to departing employees;

6) All references to Gary J. Aguirre ("Aguirre") in whatever manner, including (but not limited to) "Gary Aguirre," "Aguirre," "Mr. Aguirre," "Gary," GJA," and "GA" in the electronic mail to or from the following officials and staff:

   a) Christopher Cox from July 1, 2005, through the present;

   b) Commissioners Paul S. Atkins, Cynthia A. Glassman and Annette L. Nazareth for the period from June 1, 2005, though the present;

   c) Commissioner Roel C. Campos for the period from September 7, 2004, through the present;

   d) Stephen Cutler for the period from September 7, 2004, through the present;

   e) Linda Thomsen for the period from September 7, 2004, through the present;

   f) Paul Berger for the period from September 7, 2004, through the present;

   h) James Clarkson for the period from September 7, 2004, through the present;

   i) Richard Humes for the period from September 7, 2004, through the present;

   k) Richard Grime for the period from September 7, 2004, through the present;

   l) Charles Cain for the period from September 7, 2004, through the present;

   m) Mark Kreitman for the period from September 7, 2004, through the present;

n) Robert Hanson for the period from January 1, 2005, through the present;

o) Kevin O'Rourke for the period from May 1, 2005, through the present;

p) James Eichner for the period from May 1, 2005, through the present;

q) Liban Jama for the period from May 1, 2005, through the present;

7) All records relating to Aguirre's merit pay increase for the 2004 through 2005 evaluation period, including (but not limited to) electronic or hard copy documents to or from his supervisors, electronic or hard copy documents to or from the committee members who authorized Aguirre's merit pay increase, transmittal letters, memorandums, emails, notes of the compensation committee, and all other documents generated in implementing such merit pay increase;

8) All records containing information regarding Aguirre's evaluation or performance as an employee or the purported reasons for the termination of his employment including (but not limited to) employee performance files, personnel security files, compensation review files, personnel discipline files, personnel termination files, or any other file;

9) All records including (but not limited to) employee performance files, personnel security files, compensation review files, personnel discipline files, personnel termination files, or any other file containing information regarding Aguirre's performance as an employee or the purported causes of his termination;

10) All written or electronic communications or record of any communications relating to Aguirre's merit pay increase for the 2004 through 2005 evaluation period to or from Christopher Cox, Linda Thomsen, Paul Berger, James Clarkson,

Richard Humes, Deborah Balducchi, Mark Kreitman, Robert Hanson, Richard Grime, Charles Cain or any other SEC staff member;

11) All records relating to the SEC's termination of Aguirre's employment, including (but not limited) to electronic or hard copy documents to or from his supervisors, transmittal letters, memorandums, emails, notes or memorandums of any meeting during which such possibility was discussed, and all other documents generated in carrying out such termination;

12) All records relating to the SEC's termination of Aguirre's employment to or from Christopher Cox, Linda Thomsen, Paul Berger, James Clarkson, Richard Humes, Deborah Balducchi, Mark Kreitman, Robert Hanson, Richard Grime, and Charles Cain.

38. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in paragraph 37 in one or more systems of records.

39. In response to Plaintiff's request for items 2 through 12 as stated in his letter of December 30, 2005, as alleged in paragraph 37 above, Defendant SEC replied in its letters of January 4, 2006, and January 26, 2006, that we "are consulting with Commission staff" regarding these "items of your request." Other than said letters, Defendant SEC has provided Plaintiff no further response to his request of December 30, 2005.

40. By letter of March 21, 2006, pursuant to the applicable provisions of FOIA, Plaintiff requested access to and copies of certain documents, records and files, including those specified below. Plaintiff has substituted below fictitious names for certain real persons and has redacted other phrases. The scope of Plaintiff's request has been narrowed to records relating to the following portions of this request:

15

1) All correspondence and other written communications, including electronic mail, and records of oral communications, including phone calls, in [case number] containing references to [the hedge fund under investigation] in whatever manner, including (but not limited to) [other appellations for the hedge fund] to or from or otherwise involving the following officials and staff:

   a) Chairman Christopher Cox ("Cox") for the period from June 1, 2005, through the present;

   b) Stephen Cutler ("Cutler") for the period from January 1, 2005, through the date of his departure from the SEC;

   c) Linda Thomsen ("Thomsen") for the period from January 1, 2005, through the present;

   d) Paul Berger ("Berger") for the period from January 1, 2005, through the present;

   g) Gary J. Aguirre ("Aguirre") for the period from September 1, 2004, through the date of his departure from the SEC;

   h) Mark Kreitman ("Kreitman") for the period from January 1, 2005, through the present;

   i) Robert Hanson ("Hanson") for the period from January 1, 2005, through the present;

   j) Kevin O'Rourke ("O'Rourke") for the period from January 1, 2005, through the present;

   k) James Eichner ("Eichner") for the period from January 1, 2005, through the present;

l)  Liban Jama ("Jama") for the period from January 1, 2005, through the present;

m) Eric Ribelin ("Ribelin") for the period from October 1, 2004, through the present;

n)  Joseph Cella ("Cella") for the period from October 1, 2004, through the present.

2)  All correspondence and other written communications, including electronic mail, and records of oral communications, including phone calls, in [case number] containing references to CEO of hedge fund under investigation] in whatever manner, including (but not limited to) [CEO of hedge fund] to or from or otherwise involving the following officials and staff:

a)  Chairman Christopher Cox ("Cox") for the period from June 1, 2005, through the present;

b)  Stephen Cutler ("Cutler") for the period from January 1, 2005, through the date of his departure from the SEC;

c)  Linda Thomsen ("Thomsen") for the period from January 1, 2005, through the present;

d)  Paul Berger ("Berger") for the period from January 1, 2005, through the present;

g)  Gary J. Aguirre ("Aguirre") for the period from September 1, 2004, through the date of his departure from the SEC;

h)  Mark Kreitman ("Kreitman") for the period from January 1, 2005, through the present;

    i)   Robert Hanson ("Hanson") for the period from January 1, 2005, through the present;

    j)   Kevin O'Rourke ("O'Rourke") for the period from January 1, 2005, through the present;

    k)   James Eichner ("Eichner") for the period from January 1, 2005, through the present;

    l)   Liban Jama ("Jama") for the period from January 1, 2005, through the present;

    m) Eric Ribelin ("Ribelin") for the period from January 1, 2005, through the present;

    n)   Joseph Cella ("Cella") for the period from January 1, 2005, through the present.

3)    All correspondence and other written communications, including electronic mail, and records of oral communications, including any communications with [Attorney A] or [Attorney B], containing references to [the Suspect] in whatever manner  to or from or otherwise involving the following officials and staff:

    a)   Chairman Christopher Cox ("Cox") for the period from June 1, 2005, through the present;

    b)   Stephen Cutler ("Cutler") for the period from January 1, 2005, through the date of his departure from the SEC;

    c)   Linda Thomsen ("Thomsen") for the period from January 1, 2005, through the present;

    d)   Paul Berger ("Berger") for the period from January 1, 2005, through the present;

g) Gary J. Aguirre ("Aguirre") for the period from September 1, 2004, through the date of his departure from the SEC;

h) Mark Kreitman ("Kreitman") for the period from January 1, 2005, through the present;

i) Robert Hanson ("Hanson") for the period from January 1, 2005, through the present;

j) Kevin O'Rourke ("O'Rourke") for the period from January 1, 2005, through the present;

k) James Eichner ("Eichner") for the period from January 1, 2005, through the present;

l) Liban Jama ("Jama") for the period from January 1, 2005, through the present;

m) Eric Ribelin ("Ribelin") for the period from January 1, 2005, through the present;

n) Joseph Cella ("Cella") for the period from January 1, 2005, through the present.

4) The transcripts of, and any exhibits marked or referred to, during any testimony, either sworn or unsworn, of [the Suspect] in [case number].

5) The transcripts of the testimony of any other person who staff questioned in [case number] about [an aspect of the investigation].

6) The transcripts of the testimony of any employee of [the hedge fund] who staff questioned in [case number] about an aspect of the violation.

7) All records, including electronic messages, generated during 2005 or 2006 relating [to an aspect of the investigation].

9) All correspondence and other written communications, including electronic mail, and records of oral communications, including phone calls, between [Attorney A] and Thomsen relating to or referring to [the Suspect] from June 1, 2005, to the present.

11) All electronic mail of Aguirre.

41. Plaintiff is informed and believes, and thereon alleges, that Defendant SEC maintains all records described in paragraph 40 in one or more systems of records.

42. In response to Plaintiff's request for items 1 through 7, 9, and 11, as stated in his letter of March 21, 2006, as alleged in paragraph 40 above, Defendant SEC replied by its letter dated March 29, 2006, "we have determined to withhold records that may be responsive to your request under 5 U.S.C. §552 (b) (7) (A), 17 CFR § 200.80 (b) (7) (i)."

43. By letter dated April 5, 2006, Plaintiff appealed Defendant SEC's decision of March 29, 2006.

44. By letter dated May 23, 2006, Defendant SEC denied Plaintiff's appeal of April 5, 2006.

### PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF FOIA

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.

2. Plaintiff is entitled by law to access the records requested under FOIA.

3. Defendant SEC is in violation of FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 2 through 12 of the December 30, 2005, request for the records as specified in paragraph 37 above.

4. Defendant SEC is in violation of FOIA, 5 U.S.C. § 552, by failing to fully and lawfully fulfill paragraphs 1 through 7, 9 and 11 of the March 21, 2006, request for the records as specified in paragraph 40 above.

### PLAINTIFF'S CLAIM FOR RELIEF: VIOLATIONS OF THE PRIVACY ACT

5. Plaintiff realleges and incorporates by reference all preceding paragraphs.

6. Plaintiff is entitled by law to access the records requested under the Privacy Act, 5 U.S.C. § 552a.

7. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraphs 2 through 12 of Plaintiff's December 30, 2005, request for the records as specified in paragraph 37 above.

8. Defendant SEC is in violation of the Privacy Act, 5 U.S.C. § 552a, by failing to fully and lawfully fulfill paragraph 11 of the March 21, 2006, request for the records as specified in paragraph 40 above.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Order Defendant SEC to immediately search for and release all records responsive to paragraphs 2 through 12 of Plaintiff's December 30, 2005, request for the records as specified in paragraph 37 above;.

B. Declare that Defendant SEC has violated the FOIA and the Privacy Act by failing to satisfy Plaintiff's December 30, 2005, request for the records as specified in paragraph 37 above;

C. Declare that Defendants have violated the FOIA by failing to satisfy Plaintiff's March 21, 2006, request for the records as specified in paragraph 40 above and violated and the Privacy Act by failing to satisfy paragraph 11 of Plaintiff's March 21, 2006, request as specified in paragraph 40 above;

D. Order Defendant SEC to immediately search for and release all records responsive to paragraphs 1 through 7, 9, and 11 of Plaintiff's March 21, 2006, request for the records as specified in paragraph 40 above;

E. Award Plaintiff his costs and reasonable attorney fees and litigation costs in this action; and

F. Grant such other and further relief as the Court may deem just and proper.


      Respectfully Submitted,


Dated, July   , 2006.                      _____/s/_____

                                        Scott A. Hodes, D.C. Bar #430375
                                        P.O. Box 42002
                                        Washington, D.C.  20015
                                        301-404-0502

                                        Attorney for Plaintiff


                      _____/s/_____

                                          Joanne Royce, D.C. Bar #379728
                                        Government Accountability Project
                                        1612 K Street, N.W., Suite 1100
                                        Washington, D.C. 20006
                                        202-408-9855, ext. 131

                                        Attorneys for Plaintiff

# EXHIBIT A

## U. S. Securities and Exchange Commission
### Performance Plan and Evaluation

| Employee Information | Performance Evaluation Period | | | |
|---|---|---|---|---|

| Name | | From | | To |
|---|---|---|---|---|
| Aguirre, Gary J. | Month | Year | Month | Year |
| | 10 | 2004 | 04 | 2005 |

| Title | Period Covered by this Evaluation |
|---|---|
| General Attorney(s) | |
| Division/Office/Field Office | ☐ Entire Performance Evaluation Period |
| Enforcement | |
| Pay Plan, Series, Grade, Step | ☐ Detail  (From:_____To:_____) |
| SK- 0905 _ 14 _ 24 | ☐ Other (specify)_____ |

### Certification of Performance Appraisal Process

**Performance Planning** (To be held within 30 days of the beginning of the performance evaluation period)

| Employee Signature | Date |
|---|---|
| | |
| Supervisor/Rating Official Signature | Date  11/1/01 |

**Mid-Year Review** (To be held within 45 days of the mid-point of the performance evaluation period)

| Employee Signature | Date |
|---|---|
| | |
| Supervisor/Rating Official Signature | Date  11/10/04 |

**Evaluation** (To be completed within 60 days after the end of the performance evaluation period)

| Employee Signature | Date  6/1/05 |
|---|---|
| Supervisor/Rating Official Signature | Date  6/1/05 |

### Performance Rating

| ☒ Acceptable | ☐ Unacceptable |
|---|---|

SEC 2494 (5/03)

Exhibit A
Aguirre v. SEC

| Performance Assessment "X" the most appropriate level for each element | Results | |
|---|---|---|
| **Critical Elements and Acceptable Standards** | Acceptable | Unacceptable |
| **Knowledge of Field or Occupation** - Maintains and, with few exceptions, demonstrates technical skills essential to performing duties of the position, including knowledge of pertinent laws, standards, regulations, rules, policies, procedures, and technologies. | ☒ | ☐ |
| **Planning and Organizing Work** - With few exceptions, recognizes and solves problems, meets objectives, and considers priorities when planning work assignments. Efficiently uses time and resources to produce a quality product with appropriate guidance and completes assignments within agreed upon time frames. | ☒ | ☐ |
| **Execution of Duties** - With few exceptions, thoroughly and carefully analyzes and researches assignments. Effectively applies necessary knowledge and technical skills in order to perform duties of the position in an acceptable manner. Final work products meet established need, reflect appropriate attention to detail, and are well organized. | ☒ | ☐ |
| **Communications** - Oral and written communications further agency objectives and, with few exceptions, are clear, concise, well organized, accurate, grammatically correct, and appropriate for the intended audience. Required personal interactions with internal and external constituencies/ counterparts are generally responsive to the needs of these individuals or entities. Keeps these entities and management apprised of relevant issues, changes, and problems as directed. | ☒ | ☐ |

SEC 2494 (5/03)

# EXHIBIT B

**Gary Aguirre**

I supervised Gary Aguirre from January 18 2005 through the end of the rating period. As shown on his contribution statement, Gary worked extremely hard on one investigation during his time in the group, a significant matter involving the trading by ▮▮▮▮▮▮▮▮ one of the nation's largest hedge funds.

Gary has an unmatched dedication to this case (often working well beyond normal work hours) and his efforts have uncovered evidence of potential insider trading and possible manipulative trading by the fund and its principals. He has been able to overcome a number of obstacles opposing counsel put in his path on the investigation. Gary worked closely with the Office of Compliance Inspections and Examinations to develop the case and worked with several self-regulatory organizations to develop a number of potential leads. He has consistently gone the extra mile, and then some.

Gary can work on presenting information in a clearer and more concise manner to enhance the effectiveness of his communications both to those he reports to and those he works with.

**Written by Robert Hanson**

Exhibit B
Aguirre v. SEC

27

# EXHIBIT C

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 298-33, Subch. 4

## NOTIFICATION OF PERSONNEL ACTION

| | |
|---|---|
| 1. Name (Last, First, Middle) **AGUIRRE, GARY J** | 2. Social Security Number 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 / 3. Date of Birth 03/07/40 / 4. Effective Date 08/21/05 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature Of Action |
|---|---|
| 894 | PAY ADJ |
| 5-C. Code ZLM | 5-D. Legal Authority P.L. 107-123 |
| 5-E. Code | 5-F. Legal Authority |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| 6-C Code | 6-D. Legal Authority |
| 6-E. Code | 6-F. Legal Authority |

7. FROM: Position Title and Number
GENERAL ATTORNEY (SI)

40423000    0EN0718

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| SK | 0905 | 14 | 24 | $130257 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $112310 | $ 17947 | $130257 | $ 0 |

14. Name and Location of Position's Organization
DIVISION OF ENFORCEMENT
OFFICE OF ASSOCIATE DIRECTOR
OFFICE OF ASSISTANT DIRECTOR #10
BRANCH OF ENFORCEMENT #33

WASHINGTON, DC

15. TO: Position Title and Number
GENERAL ATTORNEY (SI)

40423000    0EN0718

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| SK | 0905 | 14 | 26 | $134110 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $115632 | $ 18478 | $134110 | $ 0 |

22. Name and Location of Position's Organization
DIVISION OF ENFORCEMENT
OFFICE OF ASSOCIATE DIRECTOR
OFFICE OF ASSISTANT DIRECTOR #10
BRANCH OF ENFORCEMENT #33

WASHINGTON, DC

**EMPLOYEE DATA**

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 - None  2 - 5-Point  3 - 10-Point/Disability  4 - 10-Point Compensable  5 - 10-Point Other  6 - 10-Point/Compensable/30% | 2 | 0 - None  1 - Permanent  2 - Conditional  3 - Indefinite | | YES  [X] NO |

| 27. FEGLI DO | 28. Annuitant Indicator 9 NOT APPLICABLE | 29. Pay Rate Determinant 0 |
|---|---|---|

| 30. Retirement Plan K FERS & FICA | 31. Service Comp. Date (Leave) 05/03/03 | 32. Work Schedule F FULL-TIME | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|

BASIC + STANDARD OPTION

**POSITION DATA**

| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 2 | 1 - Competitive Service  2 - Excepted Service  3 - SES General  4 - SES Career Reserved | E E - Exempt  N - Nonexempt | | 7777 |

| 38. Duty Station Code 11-0010-001 | 39. Duty Station (City - County - State or Overseas Location) WASHINGTON, DISTRICT OF COLUMBIA |
|---|---|

| 40. Agency Data CLS | 41. VET-STAT X | 42. EDUC LVL 15 | 43. SUPV LVL 8 | 44. POSITION SENSITIVITY NONSENSITIVE/LOW RI |
|---|---|---|---|---|

45. Remarks
MERIT INCREASE BASED ON 2004-2005 PERFORMANCE EVALUATION PERIOD

*Exhibit C*
*Aguirre v. SEC*

| 46. Employing Department or Agency SE - SECURITIES AND EXCHANGE | 50. Signature/Authentication and Title of Approving Official JEFFREY RISINGER ASSOCIATE EXECUTIVE DIRECTOR Director – OHR |
|---|---|
| 47. Agency Code SE00 | 48. Personnel Office ID 1057 | 49. Approval Date 08/21/05 | |

1 - Employee Copy - Keep for Future Reference

# EXHIBIT D

**From:** Gary Aguirre [mailto:gjaguirre@cs.com]
**Sent:** Thursday, December 01, 2005 7:37 AM
**To:** 'connorr@sec.gov'
**Cc:** 'thomsenl@sec.gov'
**Subject:** My request for Ethics Office Position

Mr. Connor:

By this email, I am following up on the legal issue we discussed during our telephone conversation of November 29, 2005. During that conversation, I requested the Ethics Office to confirm my understanding that I may disclose the information described below to the Office of Special Counsel ("OSC").

By way of background, I intend to file a complaint with the OSC in connection with my discharge on September 2, 2005, and the relevant misconduct of certain SEC officials. In large part, that complaint will be based upon communications between me and more senior SEC officials relating to investigation HO 9818 ("the Investigation"). I expect to provide the OSC with my sworn testimony and copies of communications between me and other more senior SEC officials relating to the Investigation as necessary to prove the allegations of my complaint.

The legal issue involves the conflict between (1) regulations purporting to prohibit or limit disclosures of certain information by former SEC staff obtained while employed with the SEC, e.g., 17 CFR § 200.735-3 (including the regulations and statutes referred to therein) and (2) the statutes, U.S.C. 1211, *et seq.*, and 5 U.S.C. 2302, which require the disclosure of the factual basis of my complaint to the OSC so that agency may carry out its statutory responsibilities.

It is my understanding that federal employees with the FBI, DOJ and SEC Enforcement staff have made similar disclosures to the OSC relating to ongoing investigations. I also understand that the OSC has established procedures for receiving non-public information and, indeed, classified information from current and former federal employees.

I am providing a copy of this email to Linda Thomsen, Director of the Division of Enforcement, as a matter of courtesy.

Sincerely,


Gary J. Aguirre

EXHIBIT D
Aguirre v. SEC

# EXHIBIT E

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

December 15, 2005

Gary J. Aguirre
1528 Corcoran St., N.W.
Washington, D.C. 20009

Dear Mr. Aguirre:

On November 29, 2005, you called Assistant Ethics Counsel Richard Connor with questions regarding a complaint you are planning to file with the Office of Special Counsel. You indicated that your complaint is related to your September 2005 discharge from the Securities and Exchange Commission, and the conduct of certain Commission employees in connection with a non-public investigation you worked on while a Commission employee. Specifically, you asked Mr. Connor about the procedures for disclosing certain non-public information to the Office of Special Counsel in connection with your planned complaint, including some 70 emails between you and other Commission employees pertaining to the non-public Commission investigation.

On December 1, 2005, you sent an email to Mr. Connor following up on your November 29 conversation with him. You again indicated that you intend to file a complaint with the Office of Special Counsel, and that you expect to provide the Office of Special Counsel with copies of communications between you and other more senior Commission employees relating to the non-public investigation.

The purpose of this letter is to advise you that any written record of communications between you and other Commission employees relating to the non-public investigation are Commission property. Because those records are Commission property, and because those records contain non-public and confidential information, pursuant to applicable laws and regulations, you were not permitted to take that property with you when your Commission employment was terminated. See, e.g., 18 U.S.C. 641, 18 U.S.C. 2071, 44 U.S.C. 3106, SECR 7-4, and SECR 23-2a. You should immediately return all copies of that property to the Commission. If some of that information is stored on any non-Commission computer or other electronic equipment, that information should be permanently deleted after you return it to the Commission. You should provide the Commission with an appropriate affirmation that all of the Commission's property in

your possession has been returned to the Commission or permanently deleted from any non-Commission computer or other electronic equipment.

My advice to you in this letter is not meant in any way to affect the complaint you intend to file with the Office of Special Counsel. Once you have filed your complaint, there are established procedures for the Office of Special Counsel to request from the Commission any information that agency needs to address the allegations in your complaint. The Commission property you return will be preserved as required by law, regulation, and Commission practice.

Sincerely,

William Lenox
Ethics Counsel and
Designated Agency Ethics Official

EXHIBIT E
Aguirre v. SEC

# EXHIBIT F

LAW OFFICES

# KALIJARVI, CHUZI & NEWMAN, P.C.

JUNE D.W. KALIJARVI°
GEORGE M. CHUZI
ELIZABETH L. NEWMAN
ELAINE L. FITCH
————————————
MICHELLE L. PERRY° ▫
KATHLEEN C. CALLAHAN
HEATHER G. WHITE
————————————
OF COUNSEL:
STEPHEN L. SPITZ

° ALSO ADMITTED IN VIRGINIA
▫ ALSO ADMITTED IN MARYLAND

SUITE 610
1901 L STREET, N.W.
WASHINGTON, D.C. 20036
(202) 331-9260
——
FAX: (202) 331-9261
EMAIL: GCHUZI@AOL.COM

524 KING STREET
ALEXANDRIA, VIRGINIA 22314

SUITE 800

7475 WISCONSIN AVENUE
BETHESDA, MD 20814

————————————

OF COUNSEL:
FRANCINE K. WEISS°

January 18, 2006

William Lenox
Ethics Counsel
SEC
Washington, D.C.

**BY E-MAIL**
**LenoxW@SEC.gov**

Re: Gary Aguirre

Dear Mr. Lenox:

I have been retained by Gary Aguirre, a former attorney with the SEC, in connection with your correspondence regarding copies of documents he retained after his employment. On January 11, 2006, after he advised you that you could expect a communication from me in this matter, you advised Mr. Aguirre that you would prefer to deal with counsel rather than directly with Mr. Aguirre.

As I understand the situation, Mr. Aguirre contacted your office on November 29, 2005, and sent a confirming e-mail on December 1, 2005, requesting an Ethics Office opinion whether there were any prohibitions on his disclosing certain informa- tion to the U.S. Office of Special Counsel which, as you know, enforces the merit system principles in title 5, U.S. Code.

By letter dated December 15, 2005, while failing to answer his inquiry, you notified him that the documents which formed the basis for his inquiry were "Commission property" and he "should immediately return all copies of that property to the Commission". In your letter, you cited three statutes as well as "SECR 7-4 and SECR 23-2a."

William Lenox                                                    Page
January 18, 2006


     Mr. Aguirre requested copies of those SECR's (and one
other), which were promptly sent to him.  However, on December
21, 2005, he wrote to Richard Connor of your office (with whom
Mr. Aguirre had his original contacts on this issue) regarding
the nature of the authority reflected in the SECR's.  Specifi-
cally, Mr. Aguirre noted that the SECR's are different from the
SEC's regulations on the same issue, 17 C.F.R. § 200.735-
3(b)(1), (7).  Accordingly, Mr. Aguirre asked whether the SECR's
were "formally adopted by the Commission . . . [or] simply
[guidance] issued by different SEC offices?"

     When Mr. Aguirre did receive a reply, he sent a second e-
mail to you on January 6, 2006, again seeking your office's
opinion regarding the SECR's and in addition requesting your
opinion on two additional issues:

     I note that your letter [of December 15] made no refer-
     ence to SEC Rules 3(b)(1) and 3(b)(7).  Do they remain
     in effect?  Do I understand correctly that there is an
     issue with the Office of Government Ethics regarding
     their efficacy?  If so, would you kindly advise me of
     that issue?

     I am also inquiring whether your office has considered
     *Jacobs v. Schiffer*, 47 F.Supp.2d 16 (D.D.C. 1999) which
     appears to have reached a different conclusion regarding
     the application of the statutes cited in your letter of
     December 15 to similar facts in that matter.  Likewise,
     did your office consider the D.C. Circuit's decision in
     the same case where it concluded that a similar position
     by the Department of Justice to the one your office has
     articulated in its December 15 letter "was not substan-
     tially justified" (204 F.3d 259 (D.C.Cir.))

     To date, partly because Mr. Aguirre advised you that he had
retained counsel, his questions have not been answered.  It is
time they are.  Mr. Aguirre has, in my view, raised with the
Ethics Officer a legitimate concern regarding the duties and
obligations which the SEC claims have been imposed upon him.
Because he requires this information in order to evaluate your
December 15, 2005 letter, we request a response.

William Lenox                                                    Page 3
January 18, 2006


    Thank you in advance for your prompt attention.

                Sincerely yours,

                George M. Chuzi

cc:  Gary Aguirre

EXHIBIT F
Aguirre v. SEC

# EXHIBIT G

From: Lenox, William [mailto:LenoxW@SEC.GOV]
Sent: Friday, February 17, 2006 3:40 PM
To: George Chuzi
Subject: RE: Gary Aguirre

Mr. Chuzi

The Commission is in the process of preparing a response to your letter.


William Lenox
Ethics Counsel

-----Original Message-----
From: George Chuzi [mailto:gchuzi@kcnlaw.com]
Sent: Tuesday, February 07, 2006 8:49 AM
To: Lenox, William
Cc: GJAguirre@cs.com
Subject: Gary Aguirre

Mr. Lenox --

On January 18, 2006, I sent to you via e-mail a letter requesting
clarification of certain advice your office had provided to my client, Gary
Aguirre.  Specifically, Mr. Aguirre had previously asked the SEC's Ethics
Office to reconcile its admonitions that Mr. Aguirre return certain
information to the agency and not further disclose it to anyone upon pain of
criminal violations, with court decisions in our circuit expressly rejecting
such limits.  In the absence of a response to Mr.
Aguirre, my letter asked again that this information be provided to us.

To date, almost three weeks later, we have received no response from you.
If you don't intend to reply, I would appreciate being informed of that fact.
If a response is forthcoming, I would like to know that as well.  In the
absence of a response to this e-mail, we will assume that the SEC has no
reply to the questions which Mr. Aguirre and I have raised.

Thank you again for your attention.

George Chuzi

Kalijarvi, Chuzi & Newman, P.C.
1901 L Street, NW  Suite 610
Washington, DC 20036
Tel: (202) 331-9260
FAX: (202) 331-9261

EXHIBIT G
Aguirre v. SEC

# EXHIBIT H

LAW OFFICES

# KALIJARVI, CHUZI & NEWMAN, P.C.

SUITE 610

JUNE D. W. KALIJARVI◦
GEORGE M. CHUZI
ELIZABETH L. NEWMAN
ELAINE L. FITCH□

MICHELLE L. PERRY*◦
KATHLEEN C. CALLAHAN¹
HEATHER G. WHITE²

OF COUNSEL:
STEPHEN L. SPITZ
*ALSO ADMITTED IN VIRGINIA
¹ALSO ADMITTED IN MARYLAND

1901 L STREET, N.W.
WASHINGTON, D.C. 20036

(202) 331-9260
FAX: (202) 331-9261
WWW.KCNLAW.COM

June 26, 2006

524 KING STREET
ALEXANDRIA, VIRGINIA 22320-0888

SUITE 200
2273 RESEARCH BOULEVARD
ROCKVILLE, MARYLAND 20850

OF COUNSEL:
FRANCINE K. WEISS*□

□ALSO ADMITTED IN CALIFORNIA
¹ALSO ADMITTED IN PA & NJ
²ALSO ADMITTED IN NY

Hon. Christopher Cox
Chairman
U.S. Securities and Exchange Commission          **BY FAX and E-MAIL**
100 F Street, N.E., Room 10700
Washington, D.C. 20549

### Notice of Testimony by Gary J. Aguirre

Dear Chairman Cox:

I'm writing on behalf of my client, Gary J. Aguirre, who until September 2005 was employed as an attorney in the SEC's Enforcement Division. As you may know, several Senate Committees are conducting an investigation into Mr. Aguirre's allegations that he was discharged because he questioned his superiors' decision to give preferential treatment to a suspect in an SEC investigation for political reasons, with the result the suspect did not testify.

On Friday, Senator Arlen Specter, Chairman of the Senate Judiciary Committee, invited Mr. Aguirre to testify before that Committee on Wednesday, July 28, 2006 (see enclosed letter). It is Mr. Aguirre's intention to honor the invitation, providing written testimony to Senator Specter tomorrow morning and testifying on Wednesday. He intends to answer all questions regarding the investigation, his termination, and his supervisors' decision to give the preferential treatment noted above.

Hon. Christopher Cox                                                    Page
June 26, 2006

    The purpose of this letter is to provide the SEC with advance notice of invitation and
pending testimony, with the objective of affording the Commission the opportunity to interpose
any objections, if any. If you have any objection to Mr. Aguirre's compliance with Senator
Specter's request, please advise me and Senator Specter's office of the objections and their bas
at your earliest convenience.

    Thank you for your prompt attention.

                                           Sincerely yours,

                                           George N. Chuzi

Enclosure

cc:    Linda C. Thomsen, Dir., Enforcement Division
       By fax and e-mail

       Brian G. Cartwright, Esq., General Counsel
       By fax and e-mail

       William Lennox, Ethics Office
       By fax and e-mail

                                     EXHIBIT H
                                     Aguirre v. SEC

# EXHIBIT I



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C.   20549

OFFICE OF THE
GENERAL COUNSEL

BY FACSIMILE

June 26, 2006

George M. Chuzi, Esq.
Kalijarvi, Chuzi & Newman, P.C.
Suite 610
1901 L Street, N.W.
Washington, D.C. 20036

Re: Notice of Testimony by Gary J. Aguirre

Dear Mr.Chuzi:

Your letter of June 26, 2006, to Chairman Cox regarding Mr. Aguirre's potential testimony before the Senate Judiciary Committee on June 28, 2006, has been referred to me for response. In the event Mr. Aguirre determines to testify, we expect him to comply with his ethical obligations as an attorney and with his responsibilities under all applicable Commission statutes, rules, and regulations prohibiting the disclosure of nonpublic and confidential information, including 17 CFR 240.0-4 and 17 CFR 203.2.

Sincerely,

Richard M. Humes
Associate General Counsel

EXHIBIT I
Aguirre v. SEC