UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GARY AGUIRRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06-cv-01260-ESH |
| ) | |
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**STATEMENT OF THE SECURITIES AND EXCHANGE COMMISSION
OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rules 7(h) and 56.1, the defendant United States Securities and Exchange Commission ("Commission") submits that there are no genuine issues as to the following material facts:

1. In a letter dated December 30, 2005, Gary Aguirre, a former employee of the Commission, requested twenty-nine categories of documents from the Commission pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a ("the request"). Declaration of Melinda Hardy ("Hardy Decl."), Exh. 1 (Jan. 8, 2007) (filed herewith). The request seeks, among other things, documents concerning certain Commission ethics regulations and documents relating to various personnel actions taken in the course of Aguirre's employment with the Commission. *Id.;* Complaint ¶ 37. The Commission is withholding documents and portions of documents responsive to the request. Hardy Decl., Exh. 3 & 6.

**Correspondence Between Commission Staff and Office of Government Ethics Staff**

2. The Commission is withholding 54 pages responsive to items two through five of the request. Hardy Decl., Exhs. 2-4. The 54 pages are made up of three documents that concern a Commission regulation titled, "Regulation Concerning Conduct of Members and Employees of the Securities and Exchange Commission" (the "Conduct Regulation"). **Document 1** is a February 14, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) with revisions to the Conduct Regulation to address comments the Commission had previously received from Rick and an 18-page revised version of the Conduct Regulation; **Document 2** is a February 28, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) which outline revisions to the Conduct Regulation and a 17-page revised version of the Conduct Regulation; and **Document 3** is an April 14, 2000 fax titled "SEC 4-14-00 Revised Draft and Responses to OGE's 3/17/00 Comments" that consists of one cover page describing Commission comments and a 16-page "attached revised draft" of the Conduct Regulation. Declaration of William Lenox ("Lenox Decl.") at ¶ 3 (Jan. 8, 2007) (filed herewith).

3. The Commission also searched its own files for responsive records and found no additional documents other than what was already referred by OGE. Lenox Decl. at ¶ 7.

**Redactions from Documents Regarding Personnel Actions**

4. The Commission has determined to release to Aguirre certain handwritten notes and internal emails concerning personnel actions. Hardy Dec., Exh. 6. These documents are being redacted to withhold names, e-mail addresses, phone numbers, and addresses of Commission staff and of third parties. *Id.* However, the following names will not be redacted: Linda Thomsen, Paul Berger, Mark Kreitman, Robert Hanson, and John Mack. *Id.* Those documents

do not come within any of the Commission's systems of records. Declaration of Celia Winter ("Winter Decl.") at ¶ 3 (Jan. 8, 2007) (filed herewith).

5. All three documents concern draft revisions to the Conduct Regulation that were considered by the Commission and by OGE. Commission staff created the records at issue in advance of any decision to revise this rule. The documents reflect individual staff views on whether and how possible revisions to the Conduct Regulation should be formulated and contain staff comments and opinions. The documents thus reflect advice to the agency decisionmakers on possible changes to the Conduct Regulation. Lenox Decl. at ¶ 4.

6. The documents do not reference Mr. Aguirre. Lenox Decl. at ¶ 4.

7. The proposed changes to the Conduct Regulation were not publicly disclosed, and no final decision on these changes was ever made. To date, the changes to the Conduct Regulation continue to be contemplated and deliberated by the Commission, and these draft documents continue to be integral to those discussions. Lenox Decl. at ¶ 5.

**Compensation Committee Spreadsheets**

8. The Commission is withholding provision versions of compensation committee spreadsheets. The Commission will release columns in the final spreadsheet as to how many steps employees should receive – without personal identifying information. Hardy Decl., Exh. 6.

9. In 2005, under the Commission's Performance Management Process, a compensation committee composed of Senior Officers from the Division of Enforcement was responsible for comparing employee contributions and assessing the accomplishments of employees. The committee's process culminated in a recommendation to the Director of the Division as to the number of steps each employee should receive as merit pay. Declaration of Susan Markel ("Markel Decl.") at ¶ 2 (Jan. 8, 2007) (filed herewith).

10. In the course of preparing for the meeting of the compensation committee and during that meeting, the members of the compensation committee used a spreadsheet that listed all the non-supervisory employees in the Division, along with information about their supervisors, their position, their current grade and step, and for recent employees the date they started employment at the Commission. Gary Aguirre is listed on that spreadsheet. Markel Decl. at ¶ 3.

11. The spreadsheet includes a column showing whether each employee's supervisor had provided a summary of the employee's contributions as well as columns showing the recommendations that each employee's immediate supervisor had made regarding the employee's contributions. Markel Decl. at ¶ 4.

12. The spreadsheet also shows the number of steps each employee received in 2004 and has columns for the recommendations of the compensation committee. For all but the final version of the spreadsheet approved by the Director of the Division, those columns reflect the deliberations of the compensation committee. The spreadsheet also contains statistics at the end that show how many employees received different numbers of steps, and that information could be broken down by supervisor. The statistics aided the committee's deliberations as it sought an appropriate distribution of steps. Markel Decl. at ¶ 5.

13. Also, some of the drafts have some rows highlighted to show employees that warranted some extra attention. Mr. Aguirre's name is not highlighted in any of the spreadsheets. Markel Decl. at ¶ 7.

14. The spreadsheets do not come within any of the Commission's systems of records. The SF-50s for each employee, not the spreadsheet, contain the Commission's formal record of the merit pay awarded to each employee. Winter Decl. at ¶ 4.

**OIG Investigative Files**

15. On July 6, 2006, the Inspector General reopened an investigation into allegations made by Aguirre in letters to the Commission dated September 2, 2005 and October 11, 2005. This investigation remains open. The records in the Inspector General's investigatory files were compiled for law enforcement purposes and disclosure of those records could reasonably be expected to interfere with the ongoing investigatory proceedings. Declaration of Mary Beth Sullivan ("Sullivan Decl.") at ¶ 5 (Jan. 8, 2007) (filed herewith).

16. The OIG investigatory files can be categorized as follows:

    **A. Internal Memoranda and Work Product Prepared by OIG Staff.** This category includes OIG memoranda, attorney notes, investigative plans, legal research and internal OIG communications. A major portion of this category is comprised of notes taken by OIG staff during witness interviews and memoranda prepared based on those notes. Release of this information would reveal the nature, scope, direction, focus, or strategy of the ongoing OIG investigation. Revelation of this type of information would provide other potential witnesses and subjects of the investigation with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.A.

    **B. Evidentiary Materials Gathered by the OIG.** OIG staff have gathered numerous documents during the investigation. Some of these documents were produced by witnesses in response to OIG requests. From these documents, a person could learn what information OIG investigative staff requested or obtained from a particular witness, the identities of witnesses, and what information each witness might possess. Release of these records would

reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.B.

      C. **Internal SEC - OIG Communications.** This category includes communications (including electronic mail) between OIG staff and SEC staff regarding interviews and document requests. From these documents, a person could learn whom the OIG staff interviewed, what documents the OIG investigative staff requested from various sources, and what information those sources might possess. Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.C.

      D. **OIG - Third-Party Communications.** This category includes communications (including electronic mail) between OIG staff and sources outside the Commission regarding interviews, document requests and matters pertinent to the ongoing investigation. From these documents, a person could learn what documents the OIG investigative staff requested from various sources, and what information those sources might possess. Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory

efforts, including the identification of individuals and potential witnesses who possess information relative to the investigation. Potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.D.

        Respectfully submitted,

_____
MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

THOMAS J. KARR, D.C. Bar No. 426340
Assistant General Counsel

LAURA WALKER, D.C. Bar No. 445455
Senior Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5140
January 8, 2007        (202) 772-9263 (fax)