UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY AGUIRRE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SECURITIES AND EXCHANGE<br>　COMMISSION,<br><br>　　　　　Defendant. | Case No. 1:02-cv-1260-ESH |

## DECLARATION OF MARY BETH SULLIVAN

I, Mary Beth Sullivan, declare as follows:

1.　I am Counsel to the Inspector General and Associate Inspector General for Investigations (AIGI) in the Office of the Inspector General (OIG) of the Securities and Exchange Commission ("Commission"). I work in the Commission's Washington, D.C. headquarters office. I have been employed with the OIG since approximately September 1994. My principal responsibilities are to conduct and oversee investigations of possible staff misconduct, and to provide legal advice to the Inspector General and the OIG.

2.　The OIG is an independent office within the Commission, as required by the Inspector General Act of 1978, as amended. *See* 5 U.S.C. app. 3 § 8G(a)(2)(2000). Among other things, the OIG is responsible for conducting internal investigations to prevent and detect fraud, waste and abuse in the Commission's programs and operations. It is the responsibility of the OIG to expeditiously report to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of a federal criminal law. *See id.* § 4(d).

3. I make this declaration based on personal knowledge of the investigation described below and the records compiled in connection with it. On October 6, 2005, the OIG opened an investigation into allegations contained in a letter sent by plaintiff to Chairman Christopher Cox dated September 2, 2005. Plaintiff sent a second letter to Chairman Cox on October 11, 2005 and the OIG thereafter expanded its investigation to include the allegations contained in this letter.

4. In connection with the OIG's initial investigation into plaintiff's allegations, several Commission staff members were interviewed, and certain documents were collected and reviewed. On November 29, 2005, the Office of the Inspector General closed its initial investigation into this matter.

5. The Inspector General reopened its investigation into this matter on July 6, 2006. This investigation remains open. The records in the Inspector General's investigatory files are compiled for law enforcement purposes, including determining whether there is any evidence that any laws or regulations were violated, and disclosure of those records could reasonably be expected to interfere with the ongoing investigatory proceedings.

6. During Inspector General investigations, the OIG staff generally gathers evidence by conducting interviews, taking testimony on the record, corresponding with witnesses, and/or collecting and reviewing documents. Some of these steps have been taken during the ongoing investigation into plaintiff's allegations.

7. As one of the attorneys principally responsible for the ongoing investigation, I have performed a document-by-document review of the investigatory files and testify that the documents can be categorized as follows:

A. **Internal Memoranda and Work Product Prepared by OIG Staff.** This category includes OIG memoranda, attorney notes, investigative plans, legal research and internal OIG communications. A major portion of this category is comprised of notes taken by OIG staff during witness interviews and memoranda prepared based on those notes. Release of this information would reveal the nature, scope, direction, focus, or strategy of the ongoing OIG investigation. Revelation of this type of information would provide other potential witnesses and and subjects of the investigation with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts.

B. **Evidentiary Materials Gathered by the OIG.** OIG staff have gathered numerous documents during the investigation. Some of these documents were produced by witnesses in response to OIG requests. From these documents, a person could learn what information OIG investigative staff requested or obtained from a particular witness, the identities of witnesses, and what information each witness might possess. Release of these records would reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts.

C. **Internal SEC - OIG Communications.** This category includes communications (including electronic mail) between OIG staff and SEC staff regarding interviews and document requests. From these documents, a person could learn whom the OIG staff interviewed, what

documents the OIG investigative staff requested from various sources, and what information those sources might possess. Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts.

      **D. OIG - Third-Party Communications.** This category includes communications (including electronic mail) between OIG staff and sources outside the Commission regarding interviews, document requests and matters pertinent to the ongoing investigation. From these documents, a person could learn what documents the OIG investigative staff requested from various sources, and what information those sources might possess. Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts, including the identification of individuals and potential witnesses who possess information relative to the investigation. Potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts.

      I declare under penalty of perjury that the foregoing is true and correct. Executed on January 8, 2007 in Washington, D.C.

*Mary Beth Sullivan*
Mary Beth Sullivan