## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____
                                        )
GARY AGUIRRE,                           )
                                        )
            Plaintiff,                   )
                                        )
      v.                                )      Case No.  1:06-cv-01260-ESH
                                        )
SECURITIES  AND EXCHANGE                )
COMMISSION,                             )
                                        )
            Defendant.                   )
_____)

## MEMORANDUM OF THE SECURITIES AND EXCHANGE
## COMMISSION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant, the Securities and

Exchange Commission ("Commission"), files this memorandum in support of its motion for summary

judgment with respect to items two through five and seven through twelve of plaintiff Gary Aguirre's

December 30, 2005 FOIA/Privacy Act request (as enumerated in paragraph thirty-seven of the

Complaint).[1]

### FACTS

In a letter dated December 30, 2005, Aguirre, a former employee of the Commission,

requested twenty-nine categories of documents from the Commission pursuant to the Freedom of

_____

[1]    This Court, at the request of the parties, ordered bifurcated proceedings in this case because
       part of the case pertains to documents whose identity cannot yet be fully determined.  *See* Oct.
       12, 2006 Minute Order.

Information Act ("FOIA"), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a.  Declaration of

Melinda Hardy ("Hardy Decl."), Ex. 1 (Jan. 8, 2007) (filed herewith).  The request seeks a broad

array of information, including documents concerning certain Commission ethics regulations, all

electronic mail containing various forms of Aguirre's name from seventeen named persons and

additional unnamed staff, documents relating to various personnel actions taken in the course of

Aguirre's employment with the Commission, records from the Commission's Office of Equal

Employment Opportunity relating to Aguirre, and information about the selection process for twenty-

seven positions in the Commission.  *Id.*  The letter identifies five separate offices or divisions of the

Commission that could have responsive documents.  *Id.*

      This motion concerns two of the categories in the December 30, 2005 request:  (1) documents

concerning certain Commission ethics regulations (items two through five of the request); and (2)

documents relating to personnel actions taken with respect to Aguirre (items seven through twelve of

the request).

      In a letter dated September 8, 2006, the FOIA Office advised Aguirre that items two through

five regarding the Commission's ethics regulations were duplicative of another FOIA request from

Aguirre.  Hardy Decl., Ex. 2.  The September 8, 2006 letter referred Aguirre to a February 16, 2006

letter from the FOIA Office that addressed a request Aguirre had made to the Office of Government

Ethics that is essentially identical to items two through five in the December 30, 2005 request to the

Commission.  *Id.*, Exs. 2 & 3.  The Office of Government Ethics referred its request to the Commission

so that the Commission could respond as to documents that originated from the Commission.  *Id.*, Ex.

3.  The FOIA Office's February 16, 2006 letter found that the responsive documents that originated

from the Commission are exempt from disclosure under Exemption 5 of the FOIA because they are

protected by the deliberative process privilege. *Id.*; *see* 5 U.S.C. 552(b)(5). Aguirre appealed the

FOIA Office's February 16, 2006 letter to the Commission's Office of the General Counsel, and on

May 23, 2006, the Commission affirmed the FOIA Office's determination. Hardy Decl., Ex. 4.[2]

      With respect to items seven through twelve, the FOIA Office informed Aguirre in a letter dated

October 11, 2006 that it had completed its review of responsive records. Hardy Decl., Ex. 5. The

FOIA Office granted access to some documents but withheld "records generated by the Office of

Inspector General, staff handwritten notes, deliberative intra-agency memoranda, deliberative internal

electronic mails, employees names, and Compensation Committee spreadsheets." *Id.* at 1-2.

      The Commission has now determined that many of the documents can be released. Hardy

Decl., Ex. 6. Commission staff discussed their deliberations and their actions with respect to Aguirre at

a December 5, 2006 hearing before the Senate Committee on the Judiciary, so the Commission does

not have a continuing need to keep many of its predecisional deliberations confidential. *Id.* The only

information the Commission is now withholding is staff names (other than the names of the persons who

testified in the Senate hearing), e-mail addresses, street addresses, phone numbers, and social security

numbers in the documents produced; compensation committee spreadsheets; and records generated in

the Office of Inspector General's ("OIG") ongoing investigation. *Id.* The Commission is withholding

the staff names and other identifying information under Exemption 6 of the FOIA, 5 U.S.C. 552(b)(6).

---

[2]     The Commission also searched its own files for responsive records and found no additional
documents other than what was already referred by OGE. Declaration of William Lenox
("Lenox Decl.") at ¶ 7 (Jan. 8, 2007) (filed herewith).

Hardy Decl., Ex. 6.  The Commission is withholding the compensation committee spreadsheet under

Exemptions 5 and 6 of the FOIA.  *Id.*  The Commission is withholding the OIG investigatory

documents under Exemption 7(A) of the FOIA, 5 U.S.C. 552(b)(7)(A).  Hardy Decl., Ex. 6.  The

Commission also does not have an obligation to release any of the withheld information under the

Privacy Act because it is not in a system of records, does not pertain to Aguirre, or is exempt from

disclosure under the Act.

## ARGUMENT

## I.    THE COMMISSION IS PROPERLY WITHHOLDING DOCUMENTS UNDER THE FREEDOM OF INFORMATION ACT.

Most FOIA actions are resolved by summary judgment.  *See, e.g., Miscavige v. Internal*

*Revenue Service*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on

motions for summary judgment").  The Court may rely on affidavits to determine whether the agency

has met its burden of proof regarding the merits of any claimed FOIA exemption, and may award

summary judgment if the government's affidavits are relatively detailed, non-conclusory, and submitted

in good faith.  *Davis v. Central Intelligence Agency*, 711 F.2d 858, 860 (8th Cir. 1983) (quoting

*National Cable Tel. Ass'n  v. Federal Communications Comm'n*, 479 F.2d 183, 186 (D.C. Cir.

1973)).  "If the government fairly describes the content of the withheld material, and adequately states

its grounds for non-disclosure, and if those grounds are reasonable and consistent with the applicable

law, the district court should uphold the government's position."  *Cox v. Department of Justice*, 576

F.2d 1302, 1312 (8th Cir. 1978).  The dispositive issue under the FOIA is whether the agency has

"improperly withheld" agency records.  *Kissinger v. Reporters Comm. for Freedom of the Press,*

4

445 U.S. 136, 150 (1980).

> **A.    The Commission Properly Withheld Documents Responsive to Items Two Through Five of the December 30, 2005 Request Under Exemption Five of the FOIA.**

Exemption 5 of the FOIA permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. 552(b)(5); 17 CFR 200.80(b)(5). Thus, documents that would normally be privileged in civil litigation are protected from public disclosure. *See National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (reasonable to construe Exemption 5 to exempt those documents that would be privileged as deliberative process, attorney-client communications, and attorney work product); *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181, 1184-87 (D.C. Cir. 1987).

In the instant case, the Commission has withheld three documents (54 pages) pursuant to Exemption 5 on the grounds that they are protected by the deliberative process privilege. Hardy Decl., Ex. 6. All three documents concern proposed changes to a Commission regulation titled, "Regulation Concerning Conduct of Members and Employees of the Securities and Exchange Commission" (the "Conduct Regulation"). Lenox Decl. at ¶ 3. The three documents concern draft revisions to the Conduct Regulation being considered by the Commission and by the Office of Government Ethics ("OGE"). Lenox Decl. at ¶ 4. The threshold requirement of Exemption 5 is met in that the documents constitute "inter-agency or intra-agency memorandums" between two federal agencies.

Thus, consideration turns to whether the information sought is protected by the deliberative process privilege. This privilege is unique to the government and protects "the consultative functions of

government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). The general purpose of Exemption 5 is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. The privilege applies whether or not the deliberations involve attorneys or litigation is anticipated. It covers "all communications received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "all papers which reflect the agency's group thinking in the process of working out its policy," including "memoranda containing recommendations which do not ripen into agency decisions." *Id.* at 150-53. It also protects factual materials that are closely intertwined with opinions, recommendations, and deliberations – such as "factual summaries that were written to assist the making of a discretionary decision." *Mapother v. Department of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993).

Courts have established two fundamental requirements for the deliberative process privilege to be invoked: first, the communication must be predecisional and, second, the communication must be deliberative. *Sears*, 421 U.S. at 150-52. To this end, the Supreme Court has stated that Exemption 5 applies to "deliberations comprising part of a process by which governmental decisions and policies are formulated." *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). It exempts from disclosure documents that are part of an agency's deliberative process leading to a final decision. *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975); *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978). A predecisional document is one that is designed to assist agency decision makers in arriving at their decisions and that contains the opinions of the writer

6

rather than the policy of the agency. *Formaldehyde Institute v. HHS*, 889 F.2d 1118, 1120 (D.C. Cir. 1989) (material is predecisional when it is part of the process leading to a final decision on an issue).

The documents withheld under Exemption 5 are as follows: **Document 1** is a February 14, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) with proposed revisions to the Conduct Regulation to address comments the Commission had previously received from Rick and an 18-page revised draft version of the Conduct Regulation; **Document 2** is a February 28, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) that outlines the proposed revisions to the Conduct Regulation and a 17-page revised draft version of the Conduct Regulation; and **Document 3** is an April 14, 2000 fax titled "SEC 4-14-00 Revised Draft and Responses to OGE's 3/17/00 Comments." It consists of one cover page describing Commission comments and a 16-page "attached revised draft" of the Conduct Regulation. Lenox Decl. at ¶ 3.

The documents withheld in this matter are inter-agency records forming an integral part of the Commission's predecisional deliberative processes and are not routinely made available to any party in litigation with the Commission. *See, e.g., Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). All three of the draft documents pertaining to the proposed changes to the Conduct Regulation contain information and notations that are predecisional, in that they have been drafted prior to any Commission action on the proposed changes, and deliberative, in that they contribute to an ongoing deliberative process within the Commission. Lenox Decl. at ¶¶ 3-5. The proposed changes to the Conduct Regulation were never publicly disclosed, and no final decision on

these changes has been made by the Commission. *Id.* at ¶ 5.[3]  They have been prepared to assist the

decisionmaker in arriving at a decision, in this case to assist the Commission in the determination of

whether changes to the Conduct Regulation are needed, and if so, what language should be used in the

text of the clarification. *Id.* at ¶ 4.  The information they contain is deliberative because it reveals staff's

recommendations and individual staff views on whether and how possible revisions to the Conduct

Regulation could be formulated. *Id.* at ¶ 4.  Disclosure may inhibit the staff's candor in making

recommendations on drafts and discussing comments and alternatives on rule changes. *Id.* at ¶ 6.

Courts have regularly protected deliberative materials like these from public release so that

agency staff may freely engage in the candid, frank, and open interchange of ideas critical to the

deliberative process. *See, e.g., City of Virginia Beach v. Department of Commerce*, 995 F.2d

1247, 1252-53 (4th Cir. 1993).  In *Exxon Corp. v. Department of Energy*, the court stated that

"draft documents, by their very nature, are typically pre-decisional and deliberative.  They 'reflect only

the tentative view of their authors; views that might be altered or rejected upon further deliberation

either by their authors or by superiors.'" 585 F. Supp. 690, 698 (D.D.C. 1983) (quoting *Penzoil v.*

*Department of Energy*, 4 Energy Mgt. (CCH) 26,340, at 28,606-07 (D. Del. 1981)).  The

"disclosure of editorial judgments – for example, decisions to insert or delete material or to change a

draft's focus or emphasis – would stifle the creative thinking and candid exchange of ideas necessary to

---

[3]     The fact that no final rule has been published and that no final agency decision has been made
does not impact whether the exemption applies. *See NLRB v. Sears, Roebuck & Co.*, 421
U.S. 132, 153 n.18 (1975) ("Agencies are, and properly should be, engaged in a continuing
process of examining their policies; this process will generate memoranda containing
recommendations which do not ripen into agency decisions; and the lower courts should be
wary of interfering with this process.").

produce good historical work." *Dudman Communications v. Dept. of Air Force*, 815 F.2d 1565,

1569 (D.C. Cir. 1987). Drafts of revisions to a Commission rule were found to be properly protected

in the case of *Abraham Fruchter & Twersky, LLP v. Securities and Exchange Comm'n*, 2006 WL

785285 (S.D.N.Y. March 29, 2006). In that case, the court found drafts of proposed rulemaking to

be "precisely the type of candid discussion that the deliberative process privilege is designed to shield."

*Id.* at *3. Similarly, in *Pies v. IRS*, 668 F.2d 1350, 1353 (D.D.C. 1981), the court held that draft

proposed regulations and a draft memorandum relating to a regulation were protected by the

deliberative process privilege of Exemption 5 because they did not constitute the working law of the

IRS; rather, they reflected the process of agency "give and take." *See also National Wildlife Fed'n*

861 F.2d at 1117 (purpose of deliberative process privilege is "to protect the consultative functions of

government by maintaining the confidentiality of advisory opinions, recommendations and deliberations

comprising part of a process by which governmental decisions and policies are formulated").

    **B.    The Commission's Withholdings and Redactions of Documents Relating to Items Seven Through Twelve Are Proper.**

       Items seven through twelve seek documents regarding three personnel actions the Commission

took with respect to Aguirre: evaluating his performance, granting him a merit pay increase, and

terminating his employment. *See* Complaint ¶ 37. As stated above, the Commission is disclosing most

of the documents that Aguirre is seeking in that portion of his request. However, the Commission is

continuing to withhold three categories of information, each of which is discussed below.

1.    **The Commission properly redacted staff names and identifying information from the documents it is providing pursuant to Exemption 6 of the FOIA.**

Exemption 6 of the FOIA allows agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(6). The term "similar files" includes any "'Government records on an individual which can be identified as applying to that individual.'" *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2nd Sess., 11 (1966), U.S. Code Cong. & Admin. News 1966, p. 2428). Thus, Exemption 6 applies whenever disclosure would constitute a clearly unwarranted invasion of personal privacy. *Id.* Courts reviewing the use of the exemption weigh the privacy interests in nondisclosure against the public interests in disclosure. *See, e.g.*, *Beck v. Department of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).[4] Courts that have balanced privacy interests and public interests have routinely recognized that agencies can withhold names and identifying information like e-mail addresses, street addresses, phone numbers, and social security numbers of agency staff and other persons.[5]

---

[4]    The same approach applies to Exemption 7(C) which protects "information compiled for law enforcement purposes" to the extent that it "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C). Although Exemption 7(C) has a lower invasion-of-privacy threshold than Exemption 6, cases applying Exemption 7(C) show what privacy and public interests courts deem significant for both exemptions. *See Beck*, 997 F.2d at 1492-94 (considering Exemptions 6 and 7(C) together).

[5]    *See, e.g.*, *Safecard Services, Inc. v. Securities and Exchange Comm'n*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding under Exemption 7(C) that usually names and addresses of private individuals in investigative files can be withheld); *National Assoc. of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875-79 (D.C. Cir. 1989) (protecting names and addresses of federal retirees under Exemption 6); *Mendoza v. Drug Enforcement Admin.*, No. 06-0591, 2006 WL 3734365, at *5 (D.D.C. Dec. 20, 2006) (protecting identities of

In this case, as in other cases before this Court, the privacy interests of Commission employees and third parties mentioned in Commission documents outweigh any public interest in disclosure of their names and identifying information. The District of Columbia Circuit has recognized that the "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." *National Assoc. of Retired Fed. Employees*, 879 F.2d at 875. That interest clearly exists in this case as there has been significant media interest in Aguirre's claims regarding why his employment with the Commission was terminated. Hardy Decl., Ex. 6. Disclosure of the names and identifying information would subject individuals named in the documents to unwanted and distracting inquiries from the media and anyone else who may be interested in Aguirre's employment at the Commission. *Id.*

There is not a countervailing public interest in the names and identifying information. The only relevant public interest is in "the preservation of 'the citizens' right to be informed about what their

---

DEA agents, other government employees, and local law enforcement personnel under Exemption 7(C)); *American Civil Liberties Union v. Federal Bureau of Investigation*, 429 F. Supp. 2d 179, 192-93 (protecting names and identifying data under Exemptions 6 and 7(C)); *Judicial Watch, Inc. v. Department of the Army*, 402 F. Supp. 2d 241, 250-51 (D.D.C. 2005) (protecting names and duty station information of defendant's employees under Exemption 6); *Electronic Privacy Info. Center v. Department of Homeland Security*, 384 F. Supp. 2d 100, 115-18 (D.D.C. 2005) (protecting names and identifying information of government employees under Exemption 6); *Miller v. Department of the Navy*, 383 F. Supp. 2d 5, 13-15 (D.D.C. 2005) (protecting personal identifying information about investigators, the subject of the investigation, and witnesses in connection with an Inspector General report under Exemption 6); *Kidd v. Department of Justice*, 362 F. Supp. 2d 291, 296-97 (D.D.C. 2005) (protecting an employee's home phone number and names and addresses of persons who wrote to Congress under Exemption 6); *Edmonds v. Federal Bureau of Investigation*, 272 F. Supp. 2d 35, 52-53 (D.D.C. 2003) (protecting names and identifying data of FBI special agents, support personnel, and third parties under Exemptions 6 and 7(C)).

government is up to.'" *Beck*, 997 F.2d at 1492 (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773  (1989)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Id.* (quoting *Reporters Comm.*, 489 U.S. at 773).  Names and identifying information rarely further that purpose.  *See id.* ("The identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct.").  In his Complaint, Aguirre contends that he is raising issues that are in the public interest because he is seeking to show that senior SEC officials gave special treatment to an individual he asserts has powerful political connections.  Complaint ¶ 6.  Disclosure of the redacted information would not do anything to further that purpose, especially since the Commission has not redacted the names of the persons Aguirre alleges gave the favored treatment.  *See* Hardy Decl., Ex. 6.  Revealing the names of the many Commission employees who were involved in some aspect of personnel decisions related to Aguirre's employment will not further any determination of the Commission's action or help anyone understand the Commission's operations.  *Cf. Edmonds*, 272 F. Supp. 2d at 52 ("The fact that the underlying documents relate to plaintiff's whistleblower allegations about misconduct in the FBI's Language Division . . . does not create a public interest in the identities of these individuals, for there is no reason to believe that disclosure would shed light on the allegations under investigation.").

Because the privacy interest in names and identifying information is clear and strong while there is no public interest in that information, the Commission properly withheld the information under Exemption 6.

2.    **The Commission properly withheld compensation committee spreadsheets.**

The Commission is withholding all draft compensation committee spreadsheets under Exemptions 5 and 6 and is withholding all fields of the final compensation committee spreadsheet other than the fields that show how many merit steps each employee received under the same exemptions. Hardy Decl., Ex. 6.  Those spreadsheets were used as part of the process of determining what, if any, level of merit pay to give to each employee in the Commission's Division of Enforcement in 2005. Declaration of Susan Markel ("Markel Decl.") at ¶ 3.  Under the Commission's Performance Management Process, in July 2005 senior officials in the Division of Enforcement met to determine what, if any, merit pay each employee should receive.  *Id.* at ¶ 2.  Employees could receive up to a three-step increase in their pay in the merit pay process.  *Id.*  The senior officials in the Division of Enforcement used a spreadsheet to track the recommendations that immediate supervisors had made for each individual along with the compensation committee's recommendations to the Director of the Division of Enforcement.  *Id.* at ¶¶ 3-5.  After the director made a final decision regarding the merit pay, a final spreadsheet was sent to the Commission's Office of Human Resources for final approval and processing.  *Id.* at ¶ 6.  The spreadsheets contain each non-supervisory employee's name, the organization code for that employee's branch, the employee's supervisors, the employee's position, the employee's grade and step, the date recent hires started employment at the Commission, whether the employee's supervisor provided a summary of the employee's contributions, the number of steps the supervisor recommended, the number of steps the employee received the prior year, and the

committee's recommendation for merit pay. *Id.* at ¶¶ 3-5.[6]  Also, certain rows in some of the spreadsheets are highlighted. *Id.* at ¶ 7.  At the end of the spreadsheets, there are statistics showing how many employees received different numbers of steps. *Id.* at ¶ 5.  In some spreadsheets, the information is broken down by supervisor. *Id.*

  Initially, all names and other information that could be used to identify a person (organization code, supervisors, position, grade and step) is properly withheld under Exemption 6.  As discussed above, Commission employees have a privacy interest in their names, and that interest is especially significant here where their names are connected to information about the amount of merit pay they received. *See Federal Labor Relations Authority v. United States Dep't of Commerce*, 962 F.2d 1055, 1059 (D.C. Cir. 1992) ("we find that NWS employees who received outstanding or commendable ratings have a substantial interest in maintaining the privacy of their evaluations").  In contrast, the public interest in both the document as a whole and the specific names is minimal.  Because Aguirre is seeking documents concerning Division of Enforcement staff discussions regarding whether to take one individual's testimony in the summer of 2005, a document regarding the merit pay system that has no bearing on that individual's testimony or on the reasons Aguirre's employment was terminated is irrelevant.

  The Commission also properly withheld all columns that contain recommendations, the highlighting contained in the spreadsheets, and the statistics at the end of the spreadsheets under Exemption 5 because they are protected by the deliberative process privilege.  As discussed above, the

---

[6]   The draft spreadsheets do not all have each of these fields.  Markel Decl. at ¶ 7.

deliberative process privilege (and thus Exemption 5) protects information that is predecisional and deliberative. The withheld information is predecisional because everything in the spreadsheets precedes the final decision regarding merit pay increases. The withheld information is deliberative because it reflects the compensation committee's deliberations about what merit pay to provide each employee and how to distribute the merit pay throughout the Division. Thus, the Commission properly withheld the recommendations, highlighting, and statistics.

Because all the information in the spreadsheets is protected by Exemption 6 or Exemption 5, the Commission properly withheld the spreadsheets.

### 3.    The Commission properly withheld the investigative files from the Inspector General's ongoing inquiry under Exemption 7(A).

Exemption 7(A) protects from disclosure records or information "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. 552(b)(7)(A). Thus, it applies whenever premature release of evidence or information could harm the government's case. *See, e.g., National Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978); *National Pub. Radio v. Bell*, 431 F. Supp. 509, 514 (D.D.C. 1977) (Congress intended that Exemption 7(A) would apply where disclosure may impede any necessary investigation prior to court proceedings). In making this determination, the government need only show that "the possibility exist[s]" that the release of records would occasion some harm, not that the harm "will certainly result." *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988). Exemption 7(A) applies to records compiled for civil, criminal and administrative law enforcement purposes. *Barney v. IRS*,

618 F.2d 1268, 1273 (8th Cir. 1980); *Koch v. United States Postal Serv.*, 7 F.3d 1042 (8th Cir. 1993); *Rugiero v. Department of Justice*, 257 F.3d 534, 550 (6th Cir. 2001). Exemption 7(A)'s protection is temporary; once enforcement proceedings are "either concluded or abandoned, exemption 7(A) will no longer apply."[7] *Barney*, 618 F.2d at 1273-74. Congress intended Exemption 7(A) to be interpreted broadly. *See North v. Walsh*, 881 F.2d 1088, 1098 n.14 (D.C. Cir. 1989); *Manna v. Department of Justice*, 51 F.3d 1158, 1164 n.5 (3rd Cir. 1995); *In re Department of Justice*, 999 F.2d 1302, 1307 (8th Cir. 1993). To sustain its burden under Exemption 7(A), the government need only establish that the investigatory records were compiled for law enforcement purposes, and that their production could interfere with pending enforcement proceedings. *Barney*, 618 F.2d at 1273.

The government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. *Robbins Tire*, 437 U.S. at 234-35; *Barney*, 618 F.2d at 1273. "It is the particular categories of documents, and the likelihood that the release of documents within those categories could reasonably be expected to threaten enforcement proceedings, on which the court must focus." *In re Department*

---

[7]    Agencies ordinarily do not determine the applicability of other FOIA exemptions to individual records until the underlying investigation reaches a point where Exemption 7(A) no longer applies. *See, e.g., Chilivis v. SEC*, 673 F.2d 1205, 1208 (11th Cir. 1982); *Computer Prof'ls for Soc. Responsibility v. Secret Service*, 72 F.3d 897, 906-07 (D.C. Cir. 1996): *Dickerson v. Department of Justice*, 992 F.2d 1426, 1430 n.4 (6th Cir. 1993) (explaining that "where exemption 7(A) has become inapplicable," records may still be protected under other exemptions); *Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574, 589 (D.C. Cir. 1987) (finding that the "district court did not abuse its discretion in permitting the DOJ to press additional FOIA exemptions after its original, all encompassing Exemption 7(A) claim became moot).

*of Justice*, 999 F.2d at 1309. Thus, the government may assert Exemption 7(A) categorically and

make generic determinations that disclosure would interfere with law enforcement. *Robbins Tire*, 437

U.S. at 234-35; *Barney*, 618 F.2d at 1273. The "categories must be distinct enough to allow

meaningful judicial review, yet not so distinct as to prematurely let the cat out of the investigative bag."

*In re Department of Justice*, 999 F.2d at 1311 (*quoting Curran v. Department of Justice*, 813

F.2d 473, 475 (1st Cir. 1987)).

Courts have consistently upheld the following types of harms as sufficient to trigger Exemption

7(A)'s protection: (1) witness intimidation; (2) chilling investigations by making third parties reluctant to

provide information; (3) giving a suspected violator early access to information in the case against it,

allowing it to construct bogus defenses and to manufacture or destroy evidence; (4) revealing the

scope, direction or focus of law enforcement's investigative efforts; (5) revealing the agency's

impressions of testimony; and (6) hindering the government's ability to shape and control its

investigations. *See generally North*, 881 F.2d at 1097-98 (collecting and citing cases for above

propositions); *see also Swan v. Securities and Exchange Comm'n*, 96 F.3d 498, 499 (D.C. Cir.

1996); *New England Med. Ctr.*, 548 F.2d 377, 382-83 (1st Cir. 1976).

The OIG investigation at issue here was prompted by a letter Aguirre sent to the Commission,

in which Aguirre alleged that his employment with the Commission was terminated improperly and that

others at the Commission had engaged in other misconduct.[8]

---

[8]     The OIG has conducted two investigations in response to Aguirre's allegations. The first
investigation closed on November 29, 2005 (Declaration of Mary Beth Sullivan ("Sullivan
Decl.") at ¶¶ 3-5 (Jan. 8, 2007) (filed herewith)), and documents from this investigation are
being prepared for release. Those documents are addressed in the above discussion regarding

The OIG files were compiled for law enforcement purposes, including determining whether there is any evidence that any laws or regulations were violated. Sullivan Decl. at ¶ 5. The OIG is an independent office within the Commission, as required by the Inspector General Act of 1978, as amended. *See* 5 U.S.C. app. 3 § 8G(a)(2) (2000). Among other things, the OIG is responsible for conducting internal investigations of the Commission's programs and operations. It is the responsibility of the OIG to expeditiously report to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of a federal criminal law. *See* 5 U.S.C. app. 3 § 4(d) (2000). In other cases, analogous OIG files have been found to be compiled for law enforcement purposes and protected by Exemption 7(A). *See Edmonds v. Federal Bureau of Inv.*, 272 F. Supp. 2d 35, 55 (D.D.C. 2003) (information contained in OIG investigation file properly withheld under Exemption 7(A)); *Gould, Inc. v. GSA*, 688 F. Supp. 689 (D.D.C. 1988) (OIG records properly protected under Exemption 7(A)); *Local 32B-32J, Service Employees International Union, AFL-CIO v. GSA*, 1998 WL 726000, *11 (S.D.N.Y. Oct. 15, 1998)) (Exemption 7(A) properly invoked to protect OIG files).

The records pertaining to the OIG's reopened investigation fall into the following four categories: (A) internal memoranda and work product prepared by OIG staff; (B) evidentiary materials gathered by the OIG; (C) internal SEC – OIG communications; and (D) OIG – third-party communications. The harm that could reasonably be expected to result from disclosure of each of

---

redactions of names and identifying information. The OIG reopened its investigation of Aguirre's allegations on July 6, 2006. Sullivan Decl. at ¶ 5. That investigation is currently open and ongoing, and the withheld documents are from that investigation. *Id.*

18

these categories of documents is as follows:[9]

**Category A:  Internal Memoranda and Work Product Prepared by OIG Staff**

This category includes OIG memoranda, attorney notes, investigative plans, legal research and internal OIG communications.  A major portion of this category is comprised of notes taken by OIG staff during witness interviews and memoranda based on those notes.  Sullivan Decl. at ¶ 7.A.  Release of this information would reveal the nature, scope, direction, focus or strategy of the ongoing OIG investigation.  Revelation of this type of information would provide other potential witnesses and subjects of the investigation with information that could help them interfere with the OIG's ongoing investigation.  *Id.*

Courts have consistently held that attorney notes and similar materials contained in an active investigative file can be withheld under Exemption 7(A).  *See, e.g., New England Med. Ctr.*, 548 F.2d at 383 (noting that "[d]isclosure of the agent's notes of the interview . . . might give some insight into what parts of the interview the agent deemed important"); *Swan*, 96 F.3d at 499 (releasing Commission notes of witness statements "would risk allowing those under Commission scrutiny to tailor their testimony, intimidate witnesses, manufacture favorable evidence, and conceal damaging evidence"); *Parker/Hunter, Inc. v. SEC*, 1981 WL 1675, *4 (D.D.C. April 29, 1981) (upholding Exemption 7(A) protection for notes, memoranda, and transcripts of witnesses interviews, as releasing these materials would "allow[] plaintiff to learn the SEC's impression of testimony and the direction of its case . . . and to identify a witness thought not previously known to plaintiff"); *Church of Scientology*

---

[9]     The declaration contains additional information about the kinds of documents gathered in each investigation and the harm that could arise from producing these documents.

*of Texas v. Internal Revenue Serv.*, 816 F. Supp. 1138, 1157 (W.D. Tex. 1993) (memorandum of

interview properly withheld under Exemption 7(A) so as to prevent harassment or reprisal and to

prevent disclosure of direction and scope of investigation).

Further, internal memoranda are routinely protected by Exemption 7(A).  *See Barney*, 618

F.2d at 1273 (8th Cir. 1980) (withholding internal agency memoranda and agent's work papers);

*Ehringhaus v. Federal Trade Comm'n*, 525 F. Supp. 21, 23 (D.D.C. 1980) (withholding documents

revealing focuses of investigation, aspects of strategy, strengths and weaknesses of case, and

impression of witnesses); *National Public Radio v. Bell*, 431 F. Supp. 509, 514-15 (D.D.C. 1977)

(internal memoranda protected by Exemption 7(A)); *J.P. Stevens & Co. v. Perry*, 710 F.2d 136,

142-43 (4th Cir. 1983) (same).

**Category B:  Evidentiary Materials Gathered by the OIG.**

In conducting its investigation, the OIG gathered documents from various sources.  Some of the

documents were produced by witnesses in response to OIG requests.  Sullivan Decl. at ¶ 7.B.  From

these documents, a person could learn what information the OIG investigative staff requested or

obtained from a particular witness, the identities of witnesses, and what information each witness might

possess.  *Id.*  Further, release of the records would reveal the nature, scope, direction, focus, or

strategy of the OIG's investigation.  *Id.*  Thus, release of the records could enable witnesses to shape

their testimony to fit the facts of which the OIG is aware, or otherwise help them interfere with the

OIG's ongoing investigatory efforts.  *Id.*

These investigatory records are properly protected under Exemption 7(A).  *See, e.g., Alyeska*,

856 F.2d 309, 311-12 (D.C. Cir. 1988) (Exemption 7(A) protected corporate records provided to

EPA by witness where EPA had averred that disclosure would "prematurely reveal [] . . . the size, scope and direction of [its] investigation" and that "the mere identification of the specific records submitted would reveal the scope and direction of the investigation to the requester"); *Solar Sources*, 142 F.3d 1033, 1036 (7th Cir. 1998) (affirming Exemption 7(A)'s application to documents produced in response to subpoenas); *Barney*, 618 F.2d at 1273 (disclosure of documentary evidence, "prior to the institution of civil or criminal tax enforcement proceedings, would necessarily interfere with such proceedings by prematurely revealing the government's case"); *see also New England Med. Ctr.*, 548 F.2d at 386 (producing parts of case files that were not employee witness statements "will 'interfere' with Board [law enforcement] proceedings by enabling a possible violator to construct defenses"); *Ehringhaus*, 525 F. Supp. at 23 (releasing documents related to a survey to gather potential evidence "would reveal preliminary evidence supporting the contemplated action, the focus of the investigation, important aspects of the planned strategy of Commission attorneys, the strengths and weaknesses of the government's case and the amount of resources devoted to the investigation").

**Category C:   Internal SEC – OIG Communications**

This category includes communications (including electronic mail) between OIG investigative staff and SEC staff regarding interviews and document requests.  Sullivan Decl. ¶ 7.C.  From these documents, a person could learn whom the OIG staff interviewed, what documents the OIG investigative staff requested from various sources, and what information those sources might possess. *Id.*  The release of this information would reveal the investigative steps taken by the OIG in this matter and could enable witnesses to shape their testimony to fit the facts of which the OIG is aware, or otherwise interfere with the OIG's ongoing investigatory efforts.  *Id.*

Courts have routinely held that documents raising such concerns are shielded from disclosure by Exemption 7(A). *See, e.g., Edmonds*, 272 F. Supp. 2d at 55 (administrative materials such as letters compiled as part of OIG investigation properly withheld under Exemption 7(A)); *Gould*, 688 F. Supp. at 699 (records generated by the government and compiled by OIG for a law enforcement purpose properly protected under Exemption 7(A)).

### Category D:  OIG – Third-Party Communications

This category includes communications (including electronic mail) between OIG investigative staff and sources outside the Commission regarding interviews, document requests and matters pertinent to the ongoing investigation.  Sullivan Decl. at ¶ 7.D.  From these documents, a person could learn what documents the OIG investigative staff requested from various sources, and what information those sources might possess.  *Id.*  Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation.  *Id.*  Revelation of this information could enable witnesses to shape their testimony to fit the facts of which the OIG is aware, or help them interfere with the OIG's ongoing investigatory efforts.  *Id.*

Courts have routinely held that similar documents are shielded from disclosure by Exemption 7(A).  *See  Edmonds*, 272 F. Supp. 2d at 54-55 (correspondence with third parties compiled as part of OIG investigation properly withheld under Exemption 7(A)); *ACLU v. FBI*, 429 F. Supp. 2d at 191 (release of documents compiled for law enforcement purpose properly protected under Exemption 7(A) when release could reveal nature and scope of investigation and investigative activities, identity of witnesses, and investigative steps taken to pursue interviews with witnesses); *Local 32B-32J, Service Employees International Union, AFL-CIO v. General Services Admin.*, 1998 WL 726000, *8

(S.D.N.Y. Oct. 15, 1998) (release of investigative file would have identified the individuals who OIG

has interviewed or who may have relevant information, and would have provided clues about the nature

and scope of the OIG investigation, provided targets of OIG investigation with road map of the case,

and enabled targets to fabricate defenses or harass witnesses).

 The forgoing categories of withheld documents are protected from disclosure under Exemption

7(A). The Commission has thus not improperly withheld any documents, and it is entitled to summary

judgment regarding documents contained in the reopened OIG investigatory files.

## II. THE PRIVACY ACT DOES NOT REQUIRE DISCLOSURE OF ANY ADDITIONAL DOCUMENTS.

 In addition to his claims under the FOIA, Aguirre has claimed in his Complaint that the

documents he seeks were improperly withheld under the Privacy Act. As discussed below, the Privacy

Act does not apply to the records withheld, and accordingly, plaintiff's Privacy Act claims should be

dismissed.

### A. The Privacy Act Does Not Apply to the Documents Responsive to Items Two Through Five of the December 30, 2005 Request.

 The Privacy Act does not apply to the communications between Commission staff and OGE

staff regarding the Conduct Regulation because the OGE records pertain to the subject of a proposed

change in rulemaking and do not pertain to a person, nor are they maintained or retrievable by a

personal identifier. *See* 5 U.S.C. 552a (a)(4), (5); *Tobey v. NLRB*, 40 F.3d 469 (D.C. Cir. 1994) (to

qualify as a "record" under the Privacy Act, an information must be "about" an individual and contain

the individual's name or other personal identifier.).

**B.    The Privacy Act Does Not Apply to Documents With Redacted Identifying Information or to Compensation Committee Spreadsheets.**

First, the documents pertaining to personnel actions regarding Aguirre that the Commission will produce in redacted form were not maintained in, nor were they retrieved from, a system of records within the meaning of the Privacy Act.  Declaration of Celia Winter ("Winter Decl.") at ¶ 3.  Thus, they are not subject to the Privacy Act's access provisions.  *See McCready v. Nicholson*, 465 F.3d 1, 9, 13 (D.C. Cir. 2006).  Similarly, the compensation committee spreadsheets were not maintained in, nor retrieved from, a system of records within the meaning of the Privacy Act.  Winter Decl. at ¶ 4.

Even assuming *arguendo* that the documents could be considered Privacy Act records, the Privacy Act does not require release of the redacted personal information concerning other Commission employees.  *See Dayton Newspapers , Inc. v. Dep't of Air Force,* 35 F.Supp. 2d 1033 (S.D. Ohio 1998) (claimants' names, social security numbers, home addresses, home/work telephone numbers and place of employment properly redacted pursuant to FOIA Exemption 6 and the Privacy Act); *In re B & H Towing*, 2006 WL 1728044, 12-13 (S.D.W.Va. June 23, 2006) (United States may redact private personal information in responding to interrogatory for information pertaining to Army Corps of Engineers' supervisors leave information).

Moreover, under the Privacy Act, a person is entitled to access only to records "pertaining to him," 5 U.S.C. 552a(d)(1), and the compensation committee spreadsheets are not documents "pertaining to" Aguirre.  As described in more detail below, the mere fact that records contain a person's name do not mean that they pertain to that person and must be released under the Privacy Act.  The compensation committee spreadsheets are not about Aguirre because they are not "about"

him.  *See Tobey*, 40 F.3d at 471.

> **C.     The Commission Properly Withheld the Investigative Files of the Inspector General.**

> **1.     The OIG investigative files are not records pertaining to Aguirre to which Aguirre is entitled access under the Privacy Act.**

The Privacy Act allows an individual to gain access to certain records "pertaining to him" if they are maintained by an agency in a system of records from which information is retrieved by the name of the individual or some identifying number or symbol assigned to the individual.  5 U.S.C. 552a(d)(1). The Privacy Act defines "record" as:

> any item, collection, or grouping of information **about an individual** that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. 552a(a)(4) (emphasis added).  To prove a violation of the Privacy Act, a plaintiff "must first establish that the requested information was a record **pertaining to him** within the meaning of the Act." *Lapka v. Chertoff*, 2006 WL 3095668, at *6 (N.D. Ill., Oct. 30, 2006) (emphasis added) (citing *Tobey*, 40 F.3d at 471-72).  Because the OIG investigative files are not records "pertaining to" Aguirre within the meaning of the Privacy Act, Aguirre cannot maintain a cause of action against the Commission under the Act for failing to allow him access to them.

The fact that the OIG files contain Aguirre's name does not make them "records" pertaining to him to which Aguirre is entitled access under the Privacy Act.  Not every document or piece of information that contains an individual's name, that can be retrieved using an individual's name, or that relates to an individual in some way is a "record" for purposes of the Privacy Act.  *Tobey*, 40 F.3d at

25

471.  To qualify as a "record" to which an individual is entitled access under the Privacy Act, the record must **both** contain the individual's name or identifier **and** be "about" the individual.  *Id.* at 471; *see also Logan v. Dep't. of Veterans Aff.*, 357 F. Supp. 2d 149, 154 (D.D.C. 2004); *Fisher v. NIH*, 934 F. Supp. 464, 468 (D.D.C. 1996).  Courts have held that "[n]ot every record that one might consider to be "about" a person in the colloquial sense constitutes a record of the individual as the Privacy Act defines that term."  *Lapka*, 2006 WL 3095668, at *6.  Rather, "[t]he Privacy Act protects information that is 'about' an individual, not that which simply 'applies to' him.  The latter category is a broad one, encompassing virtually all data that relates to an individual; the former, however, includes only information that actually describes the individual in some way."  *Tobey*, 40 F.3d at 472; *Fisher*, 934 F. Supp. at 471.

The OIG investigative files do not pertain to Aguirre within the meaning of the Act because Aguirre himself is not the subject of the OIG investigation, but a person who complained about the conduct of others.  Sullivan Decl. at ¶ 3.  "Under the Privacy Act, records that are generated in response to a complaint are not records about the complainant but rather are considered records about the accused."  *Lapka*, 2006 WL 3095668, at *7 (citing *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1448-49 (9th Cir. 1985)) (letter written by employee to government agency complaining of a dispute with management over his performance was not "about" the employee and therefore was not a "record" to which the employee was entitled access under the Privacy Act); *see also Logan*, 357 F. Supp. 2d at 154 (report related to internal investigation of supervisor "pertained to" supervisor, not to plaintiff).  Under this standard, the OIG investigative records are "about" those whom Aguirre accused of misconduct, not "about" Aguirre.

That the OIG records at issue are not "about" Aguirre is confirmed by the Commission's Systems of Records Notice concerning Inspector General investigative files. That Notice identifies the categories of individuals covered by that system of records as follows: "This system of records contains records on individuals who are or have been subjects of the Office of Inspector General's investigations or inquiries relating to programs and operations of the Commission." 55 Fed. Reg. 31230-03, 31231 (June 1, 2006). Because Aguirre was not a subject of an investigation, but a source, the OIG investigative files are not in a system of records that pertains to him.

2.    **The system of records maintained by the OIG that contains investigative files is exempt from the access provisions of the Privacy Act.**

Even if the OIG investigative files pertained to Aguirre within the meaning of the Privacy Act, Aguirre is not entitled to access them because OIG investigative files are properly exempt from the access provisions of the Act pursuant to SEC regulation.

Under the Privacy Act, "[t]he head of any agency may promulgate rules" exempting "investigatory material compiled for law enforcement purposes." 5 U.S.C. 552a(k)(2). Pursuant to this section of the Privacy Act, the Commission has promulgated a rule that exempts "the system of records maintained by the Office of the Inspector General of the Commission that contains the Investigative Files" from the access and other provisions of the Act. *See* 17 C.F.R. 200.313(b)(1). As discussed above in connection with Exemption 7(A) of the FOIA, the OIG files are "investigatory material compiled for law enforcement purposes." Thus, they are properly exempted under Commission regulation. *See Gowan v. Air Force*, 148 F.3d 1182, 1188-89 (10th Cir. 1998) (upholding exemption for inspector general records). Because the OIG files are properly exempt from

the access provisions of the Privacy Act, Aguirre does not have a cause of action to require the

Commission to disclose the files to him. *Id.* "Where, as here, an agency has properly exempted its

records, the agency no longer has any obligation to disclose those records [.]" *Nolan v. Department*

*of Justice*, 973 F.2d 843, 848-49 (10th Cir. 1992); *see also Doe v. Federal Bureau of Inv.*, 936

F.2d 1346, 1352 (D.C. Cir. 1991).

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant summary

judgment with respect to items two through five and seven through twelve of Aguirre's December 30,

2005 FOIA/Privacy Act request (as enumerated in paragraph thirty-seven of the Complaint).

Respectfully submitted,

_____
MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

THOMAS J. KARR, D.C. Bar No. 426340
Assistant General Counsel

LAURA WALKER, D.C. Bar No. 445455
Senior Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5140
January 8, 2007                          (202) 772-9263 (fax)

28