UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

|  |  |
|---|---|
| Gary Aguirre, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.:  06-1260 (ESH) |
| ) | |
| Securities and Exchange ) | |
| Commission, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## PLAINTIFF'S STATUS REPORT AND PROPOSED BRIEFING SCHEDULE

Pursuant to the Courts July 16, 2007 Order requiring the parties to submit a new briefing schedule, the parties jointly propose the following deadlines:

| | |
|---|---|
| Sept. 28, 2007 | SEC summary judgment brief and Vaughn index |
| Nov. 2, 2007 | Aguirre's summary judgment brief and opposition |
| Nov. 27, 2007 | SEC opposition and reply |
| Dec. 11, 2007 | Aguirre reply |

The parties have not been able to agree on the scope of the summary judgment briefs. Defendant Securities and Exchange Commission (SEC) seeks to bifurcate its summary judgment motion and, more importantly, it also seeks to bifurcate Plaintiff's motion, which he would file on November 2, 2007, pursuant to the proposed schedule. Specifically, the SEC asks the court to direct Plaintiff to exclude nine transcripts and one email from his summary judgment motion.

Such an order would carve out from both motions the key documents sought by the Plaintiff in this case.  These transcripts are the most direct evidence whether the SEC

1

gave preferential treatment to a member of Wall Street's elite, as Plaintiff's has alleged, or whether the SEC has conducted a thorough investigation as it has publicly claimed. Indeed, these are the most significant documents which have not yet been produced in this case. As a practical matter, the SEC seeks another continuance of the summary judgment motions.

The SEC has failed to demonstrate any cause that would warrant a further delay of the summary judgment motions. Even if all the SEC's contentions all of the SEC explanations why it delayed its processing are accepted as true, it still offers no rational explanation why it has not timely completed that process. Additionally, it has not shown why the court must decide such a critical issue without it being briefed by the parties in their dispositive motions. The SEC's argument could easily be briefed as part of its opposition to Plaintiff's summary judgment motion. The court would be better informed on the facts at that time. Nor has the SEC explained why the submitters could not intervene in this action.

But there is another dynamic that sheds light on why the SEC has been dragging its feet. Last week, two Senate committees released a report highly critical of the SEC for blocking the investigation the investigation Plaintiff was heading, giving preferential treatment to the subject of the investigation, and firing Plaintiff for questioning the preferential treatment. During the investigation, Senate staff conducted approximately 30 interviews and reviewed over 10,000 pages of documents. Significantly, this Senate investigation was not partisan. It was conducted by two Republican Chairman of Senate Committees. Its subject was a Federal agency headed by a former Republican

Congressman. It concerned alleged preferential treatment given to a Republican fund raiser to the Republican White House.

The Senate investigation is now completed and the report is publicly available at http://finance.senate.gov/sitepages/legislation.htm. It consists of a 108 page report and 600 pages of exhibits. In brief, the report found that the allegations made by Plaintiff in this case were true. The Senate report specifically found that the SEC had fired Plaintiff as a reprisal for complaining about the preferential treatment given to a suspect, now publicly identified as John Mack, the CEO of Morgan Stanley. Mack was suspected of giving a tip to Arthur Samberg, the CEO of Pequot Capital Management ("PCM"), which at the time, was the largest hedge fund in the world. The insider trading investigation, as alleged in the complaint and acknowledged in the Senate report, was focused on trades in two stocks, now publicly known to be the PCM's trading in the stock of General Electric and Heller Financial shortly before General Electric acquired Heller in July 2001

During the Senate proceedings, SEC senior staff claimed they had conducted a thorough investigation of the GE-Heller matter and that there were legitimate reasons for terminating the investigation (conducted at the time by Plaintiff) without taking the testimony of John Mack. SEC employee Linda Thomsen presented this evidence in the form of the SEC's Case Closing Report ("CCR")[1] at a hearing before the Senate Judiciary Committee on December 5, 2006. The CCR tells how the testimony of each witness who testified in the GE-Heller matter supports the SEC position. The Senate report sheds a much different light on the examinations in question. The Senate report details how the

---

[1] The CCR is located at http://www.sec.gov/news/testimony/2006/ts120506lct.pdf (last visited August 8, 2007).

SEC pulled its punches in taking the examinations at issue.  Here is a sample from the Senate report concerning how the SEC pulled its punches:

> During his August 1, 2006 testimony, Mack claimed that Samberg had asked him to invest in an opportunity called ''Fresh Start'' because Pequot could not invest anymore than it already had.179 However, e-mail exchanges between Samberg and others at Pequot suggest that the courtship was in the other direction. In short, according to Pequot e-mails, Mack was ''busting chops'' to invest in Fresh Start and some were unhappy that Samberg allowed him to do so. Eichner did not inquire about this apparent contradiction, nor did the SEC seriously test the Aguirre's theory that investment in Fresh Start was a reward for inside information. For example, the SEC did not determine whether Mack's participation in Fresh Start diluted Pequot's profits or whether Pequot faced some limitation on the amount it could invest in the deal and genuinely needed additional capital from Mack.

See http://www.senate.gov/~finance/sitepages/leg/LEG%202007/Leg%20110%20080307%20SEC.pdf at 41 (last visited August 8, 2007).

Another excerpt from the Senate Report sheds more light on how Senior SEC officials compromised the investigation.  This section of the Report describes the reaction of another staff attorney (Liban Jama) who was being pressured to take one of the exams on extremely short notice.  This examination was abruptly scheduled after the Senate began its investigation. The report reads:

> In his interview with Senate staff, Jama described his conversations with his colleagues about the request:
>
>> I don't remember who I spoke to. I know I talked to other folks just to say, in general . . . I got a request to take some testimony and I have . . . a day-and-a-half. . . . I do remember saying, ''Is a day and a half enough time, in your opinion, if you haven't been involved?'' ''No'' was the universal response.(footnote omitted)
>
> By contrast to his colleagues, Jama described Kreitman's attitude toward taking this ''critical'' testimony as oddly nonchalant:

4

>He said, ''You don't need to prepare that much for it,'' which
>I found to be strange, and I relayed that to folks. So, yeah, he
>didn't feel like I needed to be prepped, . . . which I thought was
>unusual in my mind.
>
> * * *
>
>I just thought it was an unusual request to make of me—and,
>quite frankly, unfair. I thought he put me in a difficult
>position. (footnote omitted)

Following Jama's e-mail, Kreitman re-assigned the duty to James Eichner. Eichner took the testimony of the two CSFB executives and, on August 1, 2006, he took John Mack's testimony.

When asked why the Enforcement staff failed to pursue investigative leads on Mack sooner, Eichner, stated:

>After the events of the previous fall, we hadn't really focused
>on him as—we had not focused on him as a tipper or as a potential
>tipper. We were focusing on other things. So there was
>a—once there was a lack of evidence that he had information,
>he ceased to be a primary focus of the investigation.(footnote
>omitted)

The five-year statute of limitations for any Department of Justice criminal enforcement action against Pequot, Samberg, and Mack expired on or around July 27, 2006, leaving only the potential for the SEC to obtain other remedies such as disgorgement.178 When the SEC finally did take Mack's testimony on August 1, 2006, it did so five days *after* the statute of limitations period applicable to civil and criminal penalties expired.

Id.

These transcripts are also relevant to another SEC public assertion.  Senior SEC officials testified that one of the reasons they fired Plaintiff was his unprofessional manner that he took two of the examinations in question.  The Senate investigation reached the opposite conclusion.  Citing the testimony taken in the investigation, Senator Grassley noted that Plaintiff had been praised at the time for the manner in which he took these examinations.

It is hard to imagine that any of these transcripts contain confidential information. Plaintiff will demonstrate that three of the nine transcripts are publicly available at the offices of Senate staff. The transcripts exclusively relate to PCM's trading in GE and Heller stock during July 2001. All of PCM's trading records relating to these transactions are now public. The transcripts of Arthur Samberg and John Mack, the suspect tipper and tippee in the PCM investigation, are public. Further, the Senate has released nearly 2000 pages of SEC documents relating to this investigation, which include hundreds of pages of SEC internal e-mails relating to the PCM investigation. As an example, the Senate released Plaintiff's e-mail of June 27, 2005, in which he summarized the relevant contents of two of the transcripts the SEC wishes to exclude from the scope of Plaintiff summary judgment motion. In brief, these transcripts show the SEC's failure to diligently pursue the insider trading investigation of John Mack, who was suspected of giving the tip that resulted in an $18 million profit to PCM.

Defendant SEC has delayed in processing the alleged confidentiality requests made by third parties which concern this material. By its own account, it should have begun the process in February 2007. 17 CFR Subsection 200.83(d) sets the appropriate timelines for the processing of confidentiality requests. This subsection reads in part:

> "[T]he Commission's Freedom of Information Act Officer promptly shall so inform the person requesting confidential treatment . . . by telephone, facsimile or certified mail and require that substantiation of the request for confidential treatment be submitted in ten calendar days. Failure to submit a written substantiation within ten calendar days from the time of notification, or any extension thereof, may be deemed a waiver of the confidential treatment request and the confidential treatment requester's right to appeal an initial decision denying confidential treatment to the Commission's General Counsel as permitted by paragraph (e) of this section."

17 CFR Subsection 200.83 (d).  Thus, even using the date the SEC claims it should have began reviewing the confidential treatment requests, the matter should have been concluded months ago.  Further, Plaintiff has not requested a stay in the processing of this material as required pursuant to <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976).

      Furthermore, it should be noted that the Senate investigation concluded that the SEC actually stopped the investigation from which these transcripts arose in the spring of 2006, when the Senate began making inquiries into the SEC's performance.  That conclusion is supported by the CCR, which suggests that the PCM investigation was halted shortly after Plaintiff was terminated in September of 2005.  Thus, Defendant SEC should have actually begun its review of confidential treatment requests in the spring of 2006, when the investigation was initially halted.

      Finally, if the "submitters" of the information are concerned that this Court will decide to order the release of this information, remedies are available to allow them to participate in this case at the appropriate time.  The submitters are free to intervene in this matter pursuant to Federal Rule of Civil Procedure Rule 24 as intervenor-defendants.  Intervention of a submitter in a FOIA action is proper avenue where the submitter seeks to protect its interest in the information sought.  See <u>Public Citizen Health Research Group v. FDA</u>, 185 F.3d 898, 901 (D.C. Cir. 1999); <u>Public Citizen Health Research Group v. FDA</u>, 2000 U.S. Dist. Lexis 4108 (D.D.C. Jan. 19, 2000).  After intervening, the submitters will then have the opportunity to present any claims they wish to make on why this information is confidential business information.  Thus, it is hard to see how anyone will be prejudiced by allowing Plaintiff to present the non disclosure of these nine

transcripts and one email as an issue within the scope of his dispositive motion to be filed on November 2, 2007.

Alternatively, if the Court allows the SEC to limit the scope of Plaintiff's summary judgment motion, Plaintiff requests the Court to require the SEC to produce the requests for confidentiality and the substantiation of the requests, as authorized by subsection 17 CFR 200.83(g). Further, if Plaintiff is precluded from including this material in his summary judgment motion, he request that the Defendant be required to submit a motion for a stay from the processing of this material pursuant to <u>Open America v. Watergate Special Prosecution Force</u>, 547 F.2d 605 (D.C. Cir. 1976). These actions would allow both the Court and the Plaintiff to better evaluate Defendant SEC's contention that it has timely processed the confidentiality requests. To date, the SEC's statements are unclear regarding what steps it has taken in processing these requests and why it has failed to do so in a timely basis.

Date: August 8, 2007                                    Respectfully Submitted,


                                                        _____/s/_____
                                                        Scott A. Hodes, D.C. Bar. #430375
                                                        P.O. Box 42002
                                                        Washington, D.C. 20015
                                                        301-404-0502

                                                        Attorney for Plaintiff