**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

_____
                                        )
GARY AGUIRRE,                           )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )     Case No.  1:06-cv-01260-ESH
                                        )
SECURITIES AND EXCHANGE                 )
COMMISSION,                             )
                                        )
            Defendant.                  )
_____ )

**MEMORANDUM OF THE SECURITIES AND EXCHANGE**
**COMMISSION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant, the Securities and

Exchange Commission ("Commission"), files this memorandum in support of its motion for

summary judgment, seeking summary judgment on all counts of the Complaint, as the

Commission has properly searched for responsive documents and withheld exempt documents.

**FACTS**

In a letter dated December 30, 2005, Aguirre, a former employee of the Commission,

requested twenty-nine categories of documents from the Commission pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a.  Second

Declaration of Melinda Hardy ("Hardy Decl."), Ex. 1 (Oct. 1, 2007) (filed herewith).  The

request seeks a broad array of information, including documents concerning certain Commission

ethics regulations, all electronic mail containing Aguirre's name from seventeen named persons

and additional unnamed staff, documents relating to various personnel actions taken in the

course of Aguirre's employment with the Commission, records from the Commission's Office of

Equal Employment Opportunity relating to Aguirre, and information about the selection process for twenty-seven positions in the Commission.  *Id.*  The letter identifies five separate offices or divisions of the Commission that could have responsive documents.  *Id.*

In a letter dated March 21, 2006, Aguirre requested eleven additional categories of information, including communications, transcripts, and other records relating to the Pequot investigation pursuant to the Freedom of Information Act and the Privacy Act.  *Id.*, Ex. 2.  The Commission's FOIA Office denied the request in its entirety pursuant to Exemption 7(A) because it sought documents from a then-ongoing Commission investigation and release of the documents could reasonably be expected to interfere with an enforcement proceeding.  Hardy Decl., Ex. 3.  On appeal the Commission's Office of the General Counsel affirmed that decision. Hardy Decl., Ex. 4.

On July 14, 2006, Aguirre filed this case claiming he was entitled to obtain documents the Commission had withheld or had otherwise not yet provided.  In this case he seeks all or part of eleven categories from the December 30, 2005 request (items 2 through 12) and nine categories from the March 21, 2006 request (items 1-7, 9, 11).  Complaint ¶¶ 37, 40.

<u>Items Two Through Five of the December 30, 2005 Request</u>

In a letter dated September 8, 2006, the FOIA Office advised Aguirre that items two through five of his December 30, 2005 request, which sought information concerning certain Commission proposed ethics regulations, were duplicative of another FOIA request from Aguirre.  Hardy Decl., Ex. 5.  The September 8, 2006 letter referred Aguirre to a February 16, 2006 letter from the FOIA Office that addressed a request Aguirre had made to the Office of Government Ethics ("OGE") that is essentially identical to items two through five in the December 30, 2005 request to the Commission.  *Id.*, Exs. 6 & 7.  The OGE referred Aguirre's

2

request to the Commission so that the Commission could respond as to documents that

originated from the Commission. *Id.*, Ex. 6. The FOIA Office's February 16, 2006 letter found

that the responsive documents that originated from the Commission are exempt from disclosure

under Exemption 5 of the FOIA because they are protected by the deliberative process privilege.

*Id.*; *see* 5 U.S.C. 552(b)(5). Aguirre appealed the FOIA Office's February 16, 2006 letter to the

Commission's Office of the General Counsel and, on May 23, 2006, the Office of the General

Counsel affirmed the FOIA Office's determination. Hardy Decl., Ex. 7.

The Commission also searched its own files for responsive records and found no

additional documents concerning the proposed ethics rulemaking other than what was already

referred by OGE. Declaration of William Lenox ("Lenox Decl.") at ¶ 7 (Jan. 8, 2007)

(originally filed on Jan. 8, 2007 and re-filed herewith).

<u>Items Seven Through Twelve of the December 30, 2005 Request</u>

On April 24, 2006, in response to a separate FOIA request, the FOIA Office sent Aguirre

a copy of his official personnel file. Hardy Decl., Ex. 8. That file is also responsive to items

seven through twelve of the December 30, 2005 request. On October 11, 2006, the FOIA Office

granted Aguirre access to an additional 235 pages of documents responsive to items seven

through twelve of the December 30, 2005 request. Hardy Decl., Ex. 9. At that time, the FOIA

Office withheld "records generated by the Office of Inspector General, staff handwritten notes,

deliberative intra-agency memoranda, deliberative internal electronic mails, employees' names,

and Compensation Committee spreadsheets." *Id.* at 1-2.

The Commission subsequently determined that many of the documents withheld in the

October 2006 response to items seven through twelve could be released because Commission

staff had testified regarding certain of their deliberations and actions with respect to Aguirre at a

December 5, 2006 hearing before the Senate Committee on the Judiciary, making it unnecessary to keep many of its predecisional deliberations confidential.  Hardy Decl., Ex. 10.  The only information the Commission is now withholding are the names of individuals[1] and other personal information including e-mail addresses, street addresses, telephone numbers, social security numbers, medical information, and a performance evaluation of a Commission employee other than Aguirre; compensation committee spreadsheets; and records generated in the Office of Inspector General's ("OIG") ongoing investigation.  *Id.*  The Commission is withholding the staff names and other personal information under Exemption 6 of the FOIA, 5 U.S.C. 552(b)(6).  Hardy Decl., Ex. 10.  The Commission is withholding the compensation committee spreadsheets under Exemptions 5 and 6 of the FOIA.  *Id.*  The Commission is withholding the OIG investigatory documents under Exemption 7(A) of the FOIA, 5 U.S.C. 552(b)(7)(A).  *Id.*

<u>Item Six of the December 30, 2005 Request and the March 21, 2006 Request</u>

On October 11, 2006, Aguirre and the Commission agreed "to define the records sought under item 6 of Mr. Aguirre's December 30, 2005 request and his entire March 21, 2006 request as those that the agency has produced or will produce to the Judiciary and Finance Committees under category one on page 2 of the August 2, 2006 letter of Senators Grassley and Specter."  Hardy Decl., Ex. 11.  The August 2, 2006 letter to which this agreement refers contains the following request as category one:

All documents created by SEC or SEC/OIG staff related to the investigation of

---

[1]    The Commission is withholding all names except the names of current and former employees who testified before the Senate (Linda Thomsen, Paul Berger, Mark Kreitman, Robert Hanson, Eric Ribelin, and Gary Aguirre) and the names of Arthur Samberg and John Mack.

Pequot Capital Management (PCM) including but not limited to all communications or records of communications in any form, such as email, sent or received by any of the following individuals:

    a. Gary Aguirre
    b. Eric Ribelin
    c. Mark Kreitman
    d. Robert Hanson
    e. Linda Thomsen
    f. Paul Berger
    g. Joseph Cella
    h. James Eichner

Hardy Decl., Ex. 12. Thus, under the agreement, the Commission staff would review for release only those documents it had given the Senate – even if other documents were responsive – and only documents provided in response to category one – not documents provided in response to other requests from Senators Grassley and/or Specter or their staffs. The Commission's Office of Legislative and Intergovernmental Affairs ultimately sent 8018 documents to the Senate ("Senate production"). In a separate production the Commission's Office of Inspector General provided 1299 documents ("OIG Senate production").

    The Commission has now produced 2525 pages of documents to Aguirre from the Senate production and 159 pages from the OIG Senate production.[2] Most of those documents were

---

[2]    The documents from the Senate production were produced to Aguirre as follows. On May 1, 2007, the Commission provided an initial production of 1910 documents. On or about July 26, 2007, the Commission provided 348 pages of documents related to its ethics regulations and 21 pages of documents from a Senate request for e-mails from August 1, 2005, even though those documents were not responsive to Aguirre's request. On August 16, 2007, the Commission provided 39 pages of documents that were responsive to items seven through twelve of the December 30, 2005 request. On August 24, 2007, the Commission provided 17 pages that were responsive but not previously produced. On September 5, 2007, the Commission provided 167 pages of transcripts. On September 17, 2007, the Commission provided 23 additional pages, all but four of which were not responsive but which Aguirre had requested. On September 17, 2007, the Commission also provided the 159 pages from the OIG Senate production.

released as produced to the Senate except the Commission redacted names and personal

identifying information of all individuals (other than the names of the current and former

employees who testified in the Senate hearing and the names of Arthur Samberg and John Mack)

and information about medical conditions pursuant to Exemption 7(C), 5 U.S.C. 552(b)(7)(C).

Aguirre has indicated that he does not object to the Exemption 7(C) withholdings in these

documents to the extent the Commission is withholding "purely personal information such as

home addresses, phone numbers, social security numbers, and birth dates."  Hardy Decl., Ex. 13.

 A few of the documents the Commission has produced contain additional redactions.

First, one document (Doc. No. 72)[3] contains redactions under Exemption 5, 5 U.S.C. 552(b)(5)

because in addition to mentioning Pequot as a "front burner item," it contains information

protected by the deliberative process privilege and the work product doctrine about other

Commission investigations.  Second, the Commission has produced two transcripts (Doc. Nos.

37-38) in which information in addition to identifying and medical information is redacted under

Exemption 7(C) to protect the witnesses' or others' privacy interests.  Third, the Commission

has redacted an evaluation of an employee other than Aguirre under Exemption 6 (Doc. Nos.

117-124), 5 U.S.C. 552(b)(6).  Fourth, in four e-mails from the OIG Senate production,

deliberations regarding how to handle a letter to the Commission were redacted under

---

[3] "Doc. No." refers to the numbers assigned to the documents on the Commission's
Vaughn Index.  *See* Hardy Decl., Ex. 14.  The Vaughn Index contains all documents that
the Commission is withholding under an exemption listed in 5 U.S.C. 552(b) in full or in
part, except the index does not list documents that were produced in part where the only
redacted information is names, other personal identifying information such as addresses
and phone numbers, and medical information that was redacted under Exemptions 6
and/or 7(C).  Information regarding those redactions is evident from the face of the
produced documents.  The documents listed on the Vaughn Index were withheld in their
entirety unless the Index indicates otherwise.  *Id*. at ¶ 15.

Exemption 5 (Doc Nos. 289-92).

The Commission has withheld 3473 pages of documents from the Senate production and 74 pages of documents from the OIG Senate production in their entirety. *See* Hardy Decl., Ex. 14. Of those pages 1645 are subject to confidential treatment requests (as are two transcripts referred to above that the Commission produced in redacted form).[4] The confidential treatment requesters have asked the Commission to withhold information they submitted to the Commission under Exemptions 3, 4, and 7(C). The Commission's FOIA Office has completed its initial determinations of all documents, but several confidential treatment requesters have appealed the FOIA Office's decision to the Commission's Office of the General Counsel, and those appeals are pending. (For a description of the Commission's confidential treatment process, *see* 17 C.F.R. 200.83.) At this time, the Commission will not address the propriety of its redactions on any of the documents subject to the confidential treatment process even though not all documents are on appeal because all the confidential treatment documents raise closely related issues, and the Commission can best address those issues after it resolves the appeals. The Commission anticipates addressing these documents in its opposition to Aguirre's motion for summary judgment.

The remaining withheld documents were withheld under Exemptions 5, 7(A), 7(C), and 8. All but a few of those documents were withheld under Exemption 5 because they are attorney work product and/or are protected by the deliberative process privilege. Aguirre has indicated that he will not dispute the application of Exemption 5 to the documents produced to the Senate except he contends that the Commission cannot withhold drafts if it did not produce a final

---

[4] The 1645 pages of documents are Doc. Nos. 2, 39-40, 68-71, 73-89, 112, 260.

version of the document and the final version would not be protected by Exemption 5.[5]  Hardy

Decl., Ex. 13 at 1.

      With respect to the other exemptions, the Commission withheld part of one document

under Exemption 7(A) (Doc. No. 30), and it appears Aguirre does not object to that withholding

as the 7(A) materials do not relate to Pequot; the part of the document that concerns Pequot was

withheld under Exemption 5.  Hardy Decl., Ex. 13.  The Commission has withheld three

documents (in addition to those subject to confidential treatment requests) in their entirety under

Exemption 7(C) because if the names, phone numbers, and other identifying information is

redacted, the documents contain no information of any substance (Doc. Nos. 95-96, 144, 246).

The Commission withheld two documents under Exemption 8 (Doc. Nos. 97, 258), and Aguirre

does not object to that withholding.  Hardy Decl., Ex. 13.

      The remaining documents in the Senate production consist of (1) 632 pages that are

duplicates of documents that the Commission provided from the Senate production on May 1,

2007; (2) 576 pages that are not responsive to Aguirre's FOIA request and that Aguirre has

indicated he is not interested in obtaining (Hardy Decl., Exs. 13 & 15); and (3) 812 pages from

the Senate production that are either duplicates of the documents provided in the Commission's

response to items 7 through 12 of the December 30, 2005 request (which did not come from the

Senate production) or that are not responsive to Aguirre's FOIA request.  The remaining

documents in the OIG Senate production consist of (1) 430 pages from a closed OIG

investigation that the Commission had previously produced in response to items seven through

twelve of the December 30, 2005 request, and (2) 636 pages from the OIG Senate production

---

[5]      Aguirre also contends that the Commission waived all exemptions by producing
documents to the Senate.  Hardy Decl., Ex. 13 at 1.

that are not responsive to category one of the Senate Committees' August 2, 2005 letter or otherwise responsive to portions of Aguirre's FOIA requests at issue in this litigation.[6]  Hardy Decl. at ¶¶ 25-26.  Aguirre appears to contend that the Commission has not provided sufficient information to show that the Commission has properly determined these documents did not need to be produced.  Hardy Decl., Ex. 13.  The Commission, however, has provided a great deal of information about these documents to Aguirre and has provided a declaration from counsel regarding these documents.  Hardy Decl., Exs. 15, 17 - 19.

## ARGUMENT

### I.    THE COMMISSION HAS PROPERLY WITHHELD AND REDACTED DOCUMENTS UNDER THE FREEDOM OF INFORMATION ACT.

Most FOIA actions are resolved by summary judgment.  *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment").  In reviewing an agency's invocation of an exemption to the FOIA, the district court must consider that in enacting the FOIA, Congress aimed to strike a balance between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole.  *ACLU v. DOJ*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003).  The Court may rely on affidavits to determine whether the agency has met its burden of proof regarding the merits of any claimed FOIA exemption, and "'may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are 'relatively detailed and non-conclusory[ ]'..." *Bigwood v. U.S.*

---

[6]    Documents that are not responsive include, without limitation, documents relating to Aguirre's hiring, to his EEO claim regarding decisions not to hire him, and to his request for "official time" to work on his EEO litigation.  Hardy Decl. ¶ 22.

*Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).   The affidavits or declarations must "describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [be] ... [un]controverted,'" whether by "'contrary evidence in the record [or] ... evidence of agency bad faith.'" *Id*. (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[W]hether the Court relies on affidavits or declarations, an *in camera* review of the documents, or ... both, an agency must demonstrate that 'each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements.'" *Id*. (Third alteration in original) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).   The dispositive issue under the FOIA is whether the agency has "improperly withheld" agency records.  *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980).

> **A.    The Commission Properly Withheld Documents Responsive to Items Two Through Five of Aguirre's December 30, 2005 Request, Relating to Draft Commission Conduct Regulations.**

Exemption 5 of the FOIA permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. 552(b)(5); 17 C.F.R. 200.80(b)(5).  Thus, documents that would normally be privileged in civil litigation are protected from public disclosure.  *See National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (reasonable to construe Exemption 5 to exempt those documents that would be privileged as deliberative process, attorney-client communications, and attorney work product); *Martin v. Office of Special Counsel, Merit Sys. Protection Bd.*, 819 F.2d 1181, 1184-87 (D.C. Cir. 1987).

10

In the instant case, the Commission has withheld three documents (54 pages) pursuant to the deliberative process privilege of Exemption 5. Hardy Decl., Ex. 7. All three documents concern proposed changes to a Commission regulation titled, "Regulation Concerning Conduct of Members and Employees of the Securities and Exchange Commission" (the "Conduct Regulation"). Lenox Decl. at ¶ 3. The three documents concern draft revisions to the Conduct Regulation being considered by the Commission and by the OGE. *Id*. at ¶ 4. The threshold requirement of Exemption 5 is met in that the documents constitute "inter-agency or intra-agency memorandums" between two federal agencies.

Thus, consideration turns to whether the information sought is protected by the deliberative process privilege. This privilege is unique to the government and protects "the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *National Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). The general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. The privilege applies regardless of whether the deliberations involve attorneys or litigation is anticipated. It covers "all communications received by the decisionmaker on the subject of the decision prior to the time the decision is made," and "all papers which reflect the agency's group thinking in the process of working out its policy," including "memoranda containing recommendations which do not ripen into agency decisions." *Id.* at 151-53. It also protects factual materials that are closely intertwined with opinions, recommendations, and deliberations – such as "factual summaries that were written to assist the making of a discretionary decision." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1539 (D.C. Cir. 1993).

11

Courts have established two fundamental requirements for the deliberative process privilege to be invoked:  first, the communication must be predecisional and, second, the communication must be deliberative.  *Sears*, 421 U.S. at 150-52.

The proposed Conduct Regulation documents withheld under the deliberative process privilege are as follows:  **Document 1** is a February 14, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) with proposed revisions to the Conduct Regulation to address comments the Commission had previously received from Rick and an 18-page revised draft version of the Conduct Regulation; **Document 2** is a February 28, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) that outlines the proposed revisions to the Conduct Regulation and a 17-page revised draft version of the Conduct Regulation; and **Document 3** is an April 14, 2000 fax titled "SEC 4-14-00 Revised Draft and Responses to OGE's 3/17/00 Comments."  It consists of one cover page describing Commission comments and a 16-page "attached revised draft" of the Conduct Regulation.  Lenox Decl. at ¶ 3.[7]

The documents withheld in this matter are inter-agency records forming an integral part of the government's predecisional deliberative processes and are not routinely made available to any party in litigation with the government.  *See, e.g., Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  All three of the draft documents pertaining to the proposed changes to the Conduct Regulation contain information and notations that are predecisional, in that they have been drafted prior to any Commission action on the proposed changes, and deliberative, in that they contribute to an ongoing deliberative process within the

---

[7]     The document numbers here correspond to document numbers in the Lenox Declaration. These documents are Doc. Nos. 296-298 on the Vaughn Index.

government.  Lenox Decl. at ¶¶ 3-5.  The proposed changes to the Conduct Regulation were never publicly disclosed, and no final decision on these changes has been made by the Commission.  *Id.* at ¶ 5.[8]  They have been prepared to assist the decisionmaker in arriving at a decision, in this case to assist the Commission in the determination of whether changes to the Conduct Regulation are needed and, if so, what language should be used in the text of the regulation.  *Id.* at ¶ 4.[9]  The information the draft documents contain is deliberative because it reveals staff's recommendations and individual staff views on whether and how possible revisions to the Conduct Regulation could be formulated.  *Id.*  Disclosure would inhibit the staff's candor in making recommendations on future drafts and discussing comments and alternatives on rule changes.  *Id.* at ¶ 6.

Courts have regularly protected deliberative materials like these from public release so that agency staff may freely engage in the candid, frank, and open interchange of ideas critical to

---

[8]    The fact that no final rule has been published and that no final agency decision has been made does not impact whether the exemption applies.  *See Sears*, 421 U.S. at 153 n.18 ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.").

[9]    The five Commissioners are the Commission's ultimate decisionmakers on any proposed rulemaking.  *See* 17 C.F.R. 200.2 ("the Commission" has authority over rulemaking); 17 C.F.R. 200.10 ("the Commission is composed of five members"); *cf. AF&T v. SEC*, 2006 WL 785285 (S.D.N.Y. Mar. 29, 2006) (noting that deliberative process documents were prepared "to assist the Commission . . . in determining what the content . . . of the Proposed Rule should be").  The SEC's Ethics Counsel drafts proposed rules for the Commissioners' consideration.  *See* 17 C.F.R. 200.21(b)(8).  Since decisionmaking on proposed rules falls with the Commissioners, proposals drafted by less senior officials are subject to the deliberative process privilege.  *See Arthur Andersen v. IRS*, 679 F.2d 254, 259 (D.C. Cir. 1982) (deliberative process privilege applied to draft rules, as "the flow of the documents was from subordinate to superior.  Because approval was required at each higher level, all the participants up to the Commissioner were without authority to make a final determination").

the deliberative process. *See, e.g., City of Virginia Beach v. Dep't of Commerce*, 995 F.2d 1247, 1252-53 (4th Cir. 1993). In *Exxon Corp. v. Dep't of Energy*, the court stated that "draft documents, by their very nature, are typically predecisional and deliberative. They 'reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors.'" 585 F. Supp. 690, 698 (D.D.C. 1983) (quoting *Pennzoil v. Dep't of Energy*, 4 Energy Mgt. (CCH) 26,340, at 28,606-07 (D. Del. 1981)). The "disclosure of editorial judgments – for example, decisions to insert or delete material or to change a draft's focus or emphasis – would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work." *Dudman Communications v. Dep't of Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987). Drafts of revisions to a Commission rule were found to be properly protected in the case of *Abraham Fruchter & Twersky, LLP v. SEC*, 2006 WL 785285 (S.D.N.Y. March 29, 2006). In that case, the court found drafts of proposed rulemaking to be "precisely the type of candid discussion that the deliberative process privilege is designed to shield." *Id.* at *3. Similarly, in *Pies v. IRS*, 668 F.2d 1350, 1353 (D.D.C. 1981), the court held that draft proposed regulations and a draft memorandum relating to a regulation were protected by the deliberative process privilege of Exemption 5 because they did not constitute the working law of the IRS; rather, they reflected the process of agency "give and take." *See also National Wildlife Fed'n*, 861 F.2d at 1117 (purpose of deliberative process privilege is "to protect the consultative functions of government by maintaining the confidentiality of advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated").

14

**B.     The Commission Properly Redacted and Withheld Documents Responsive to Items Seven Through Twelve of Aguirre's December 30, 2005 Request, Pertaining to Personnel Actions.**

In items seven through twelve of his December 30, 2005 request, Aguirre sought information pertaining to three personnel actions the Commission took:  evaluating his performance, granting him a merit pay increase, and terminating his employment.  *See* Complaint ¶ 37.  The Commission is continuing to withhold three categories of information responsive to these requests, each of which is discussed below.

**1.     The Commission's Withholdings under Exemption 6 Were Proper**.

The Commission is withholding under Exemption 6 names and other personal identifying information from the documents produced in response to items seven through twelve of the December 30, 2005 request except for the names of current and former Commission employees who testified before the Senate (Linda Thomsen, Paul Berger, Mark Kreitman, Robert Hanson, Eric Ribelin, and Gary Aguirre) and the names of Arthur Samberg and John Mack.[10]  In addition, the Commission is withholding a few sentences referring to medical conditions and portions of a few documents containing the evaluation of an employee other than Aguirre.  Aguirre has stated that he is contesting those withholdings except to the extent they contain "purely personal information such as home addresses, phone numbers, social security numbers and birth dates." Hardy Decl., Ex. 13 at 2.[11]  It is our understanding that the few sentences referring to medical

---

[10]     A few of these documents also come within Exemption 7(C) which is discussed further below.  The 7(C) documents are from the OIG closed investigative files.

[11]     Although Aguirre has stated that he was willing to compromise by limiting the release to the names identified in the Senate report, the Commission cannot accept that compromise.  As discussed below, that compromise would unnecessarily interfere with the personal privacy interests of many individuals.

15

conditions also come within Aguirre's definition of purely personal information.  Also, the

evaluation of another employee is not at issue in this case because an exhibit to the Senate report

contains the content of the evaluation (though the name is redacted).  *See* Hardy Decl., Ex. 16.

Exemption 6 of the FOIA allows agencies to withhold "personnel, medical, and similar

files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy."  5 U.S.C. 552(b)(6).  The term "similar files" includes any "'Government records on an

individual which can be identified as applying to that individual.'"  *United States Dep't of State*

*v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 1497, 89th Cong., 2nd

Sess., 11 (1966), U.S.C.C.A.N. 1966, p. 2428).  Thus, Exemption 6 applies whenever disclosure

would constitute a clearly unwarranted invasion of personal privacy.  *Id.*  Courts reviewing the

use of the exemption weigh the privacy interests in nondisclosure against the public interests in

disclosure.  *See, e.g.*, *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); *see also*

*Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989) (If there is

"a substantial privacy interest" at stake, the "privacy interest in non-disclosure [must be

weighed] against the public interest in the release of the records in order to determine whether,

on balance, disclosure would work a clearly unwarranted invasion of personal privacy.").[12]

Courts that have balanced privacy interests and public interests have routinely recognized that

---

[12]     The same approach applies to Exemption 7(C) which is discussed below and protects
"information compiled for law enforcement purposes" to the extent that it "could
reasonably be expected to constitute an unwarranted invasion of personal privacy."  5
U.S.C. 552(b)(7)(C).  Although Exemption 7(C) has a lower invasion-of-privacy
threshold than Exemption 6, cases applying Exemption 7(C) show what privacy and
public interests courts deem significant for both exemptions.  *See Beck*, 997 F.2d at 1492-
94 (considering Exemptions 6 and 7(C) together).

agencies can withhold names and identifying information of agency staff and other persons.[13]

In this case, as in other cases before this Court, the privacy interests of Commission employees and third parties mentioned in Commission documents outweigh any public interest in disclosure of their names and identifying information.  The District of Columbia Circuit has recognized that the "the privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address is significant." *National Assoc. of Retired Fed. Employees*, 879 F.2d at 875.  That interest clearly exists in this case as the media has covered Aguirre's claims regarding why his employment with the Commission was terminated.  *See, e.g.,* "S.E.C. Erred on Pequot, Report Says," *New York Times*, Section C, Page 1 (August 4, 2007); "S.E.C. Inquiry On Hedge Fund Draws Scrutiny," *New York Times*, Section 1, Page 1 (October 22, 2006); "SEC Wants to Question Morgan Stanley Chief," *Washington Post*, Section D, Page 1 (July 22, 2006).  Disclosure of the names and identifying information could subject individuals named in the

---

[13]    *See, e.g.*, *Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding under Exemption 7(C) that usually names and addresses of private individuals in investigative files can be withheld); *National Assoc. of Retired Fed. Employees*, 879 F.2d at 875-79 (protecting names and addresses of federal retirees under Exemption 6); *Mendoza v. Drug Enforcement Admin.*, 465 F. Supp. 2d 5 (D.D.C. 2006) (protecting identities of DEA agents, other government employees, and local law enforcement personnel under Exemption 7(C)); *American Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179, 192-93 (D.D.C. 2006) (protecting names and identifying data under Exemptions 6 and 7(C)); *Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241, 250-51 (D.D.C. 2005) (protecting names and duty station information of defendant's employees under Exemption 6); *Electronic Privacy Info. Center v. Dep't of Homeland Security*, 384 F. Supp. 2d 100, 115-18 (D.D.C. 2005) (protecting names and identifying information of government employees under Exemption 6); *Miller v. Dep't of the Navy*, 383 F. Supp. 2d 5, 13-15 (D.D.C. 2005) (protecting personal identifying information about investigators, the subject of the investigation, and witnesses in connection with an Inspector General report under Exemption 6); *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 296-97 (D.D.C. 2005) (protecting an employee's home phone number and names and addresses of persons who wrote to Congress under Exemption 6); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 52-53 (D.D.C. 2003) (protecting names and identifying data of FBI special agents, support personnel, and third parties under Exemptions 6 and 7(C)).

documents to unwanted and distracting inquiries from the media and anyone else who may be interested in Aguirre's employment at the Commission or the Pequot investigation.  Moreover, that privacy interest exists even for individuals whose names appear in the Senate report as the Senate has not disclosed all documents referring to each named individual and has not described all the views and actions of each individual.  To the extent specific aspects of an individual's involvement in a matter are not known, the individual maintains a privacy interest.  *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 769-71  (1989).  "[P]artial disclosure of information does not alter the privacy interests implicated by the broader disclosure of that information through the FOIA."  *Hopkins v. U.S. Dep't of HUD*, 929 F.2d 81, 87 (2d Cir. 1991) (citing *Reporters Comm.*); *see also Painting & Drywall Work Preservation Fund, Inc. v. Dep't of HUD*, 936 F.2d 1300, 1303 (D.C. Cir. 1991) (quoting and following *Hopkins*).

There is not a countervailing public interest in the names and identifying information.  The public interest served by the release of such information must be "the preservation of 'the citizens' right to be informed about what their government is up to.'"  *Beck*, 997 F.2d at 1492 (quoting *Reporters Comm.*, 489 U.S. at 773).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information."  *Id*.  Names and identifying information rarely further that purpose.  *See id.* ("The identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct.").  In his Complaint, Aguirre contends that he is raising issues that are in the public interest because he is seeking to show that senior SEC officials gave special treatment to an individual he asserts has powerful political connections.  Complaint ¶ 6.  Disclosure of the redacted information would not do anything to further that purpose, especially since the

18

Commission has not redacted the names of the persons Aguirre alleges gave or received the favored treatment. *See* Hardy Decl., Ex. 10. Revealing the names of the many Commission employees who were involved in some aspect of personnel decisions related to Aguirre's employment will not further any determination of the Commission's action or help anyone understand the Commission's operations. *Cf. Edmonds*, 272 F. Supp. 2d at 52 ("The fact that the underlying documents relate to plaintiff's whistleblower allegations about misconduct in the FBI's Language Division . . . does not create a public interest in the identities of these individuals, for there is no reason to believe that disclosure would shed light on the allegations under investigation.").

Because the privacy interest in names and identifying information is clear and strong and there is no public interest in that information, the Commission properly withheld the information under Exemption 6.

## 2. The Commission Properly Withheld Compensation Committee Spreadsheets.

The Commission is withholding all draft compensation committee spreadsheets under Exemptions 5 and 6 and is withholding all fields of the final compensation committee spreadsheet other than the fields that show how many merit steps each employee received under the same exemptions. Hardy Decl., Ex. 10. Those spreadsheets were used as part of the process of determining what, if any, level of merit pay to give to each employee in the Commission's Division of Enforcement in 2005. Declaration of Susan Markel ("Markel Decl.") at ¶ 3 (Jan. 8, 2007) (originally filed on Jan. 8, 2007 and refiled herewith). Under the Commission's Performance Management Process, in July 2005 senior officials in the Division of Enforcement met to determine what, if any, merit pay each employee should receive. *Id.* at ¶ 2. Employees

could receive up to a three-step increase in their pay in the merit pay process.  *Id.*  The senior officials in the Division of Enforcement used a spreadsheet to track the recommendations that immediate supervisors had made for each individual along with the compensation committee's recommendations to the Director of the Division of Enforcement.  *Id.* at ¶¶ 3-5.  After the director made a final decision regarding the merit pay, a final spreadsheet was sent to the Commission's Office of Human Resources for final approval and processing.  *Id.* at ¶ 6.  The spreadsheets contain each non-supervisory employee's name, the organization code for that employee's branch, the employee's supervisors, the employee's position, the employee's grade and step, the date recent hires started employment at the Commission, whether the employee's supervisor provided a summary of the employee's contributions, the number of steps the supervisor recommended, the number of steps the employee received the prior year, and the committee's recommendation for merit pay.  *Id.* at ¶¶ 3-5.[14]  Also, certain rows in some of the spreadsheets are highlighted.  *Id.* at ¶ 7.  At the end of the spreadsheets, there are statistics showing how many employees received different numbers of steps.  *Id.* at ¶ 5.  In some spreadsheets, the information is broken down by supervisor.  *Id.*

Initially, all names and other information that could be used to identify a person (organization code, supervisors, position, grade and step) are properly withheld under Exemption 6.  As discussed above, Commission employees have a privacy interest in their names, and that interest is especially significant here where their names are connected to information about the amount of merit pay they received.  *See FLRA v. United States Dep't of Commerce*, 962 F.2d 1055, 1059 (D.C. Cir. 1992) ("we find that NWS employees who received outstanding or

---

[14]     The draft spreadsheets do not all have each of these fields.  Markel Decl. at ¶ 7.

commendable ratings have a substantial interest in maintaining the privacy of their evaluations"). In contrast, the public interest in both the document as a whole and the specific names is minimal.  Because Aguirre is seeking documents concerning Division of Enforcement staff discussions regarding whether to take one individual's testimony in the summer of 2005, a document regarding the merit pay system that has no bearing on that individual's testimony or on the reasons Aguirre's employment was terminated is irrelevant.

The Commission also properly withheld all columns that contain recommendations, the highlighting contained in the spreadsheets, and the statistics at the end of the spreadsheets under Exemption 5 because they are protected by the deliberative process privilege.  As discussed above, the deliberative process privilege (and thus Exemption 5) protects information that is predecisional and deliberative.  The withheld information is predecisional because everything in the spreadsheets precedes the final decision regarding merit pay increases.  The withheld information is deliberative because it reflects the compensation committee's deliberations about what merit pay to provide each employee and how to distribute the merit pay throughout the Division of Enforcement.  Thus, the Commission properly withheld the recommendations, highlighting, and statistics.

Because all the information in the spreadsheets is protected by Exemption 6 or Exemption 5, the Commission properly withheld the spreadsheets.

### 3.    The Commission Properly Withheld the Investigative Files from the Inspector General's Ongoing Inquiry under Exemption 7(A).

The Commission is withholding documents from the OIG's active and ongoing

investigation under Exemption 7(A).[15]  Exemption 7(A) protects from disclosure records or

information "compiled for law enforcement purposes, but only to the extent that the production

of such law enforcement records or information . . . could reasonably be expected to interfere

with enforcement proceedings."  5 U.S.C. 552(b)(7)(A).  Thus, it applies whenever premature

release of evidence or information could harm the government's case.  *See, e.g., National Labor*

*Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 232 (1978); *National Pub. Radio v.*

*Bell*, 431 F. Supp. 509, 514 (D.D.C. 1977) (Congress intended that Exemption 7(A) would apply

where disclosure may impede any necessary investigation prior to court proceedings).  In

making this determination, the government need only show that "the possibility exist[s]" that the

release of records would occasion some harm, not that the harm "will certainly result."  *Alyeska*

*Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988).  For the exemption to apply, the

agency is required to show only that disclosure of records would interfere with a "concrete

prospective law enforcement proceeding."  *Carson v. Dep't of Justice*, 631 F.2d 1008, 1018

(D.C. Cir. 1980).

Exemption 7(A)'s protection is temporary; once enforcement proceedings are "either

concluded or abandoned, exemption 7(A) will no longer apply."[16]  *Barney*, 618 F.2d at 1273-74.

---

[15]    The OIG has conducted two investigations in response to Aguirre's allegations.  The first
investigation closed on November 29, 2005 (Second Declaration of Mary Beth Sullivan
("Sullivan Decl.") at ¶¶ 3-5 (October 1, 2007) (filed herewith)), and documents from this
investigation have been released with redactions under Exemptions 6 and 7(C).  Those
documents are addressed in the above discussion regarding redactions of names and
identifying information.  The OIG reopened its investigation of Aguirre's allegations on
July 6, 2006.  *Id.* at ¶ 5.  That investigation is currently open and ongoing, and the
withheld documents are from that investigation.  *Id.*  The Commission did not provide
documents from the open investigation to the Senate Committees.  *Id.* at ¶ 8.

[16]    At the conclusion of the OIG investigation, the Commission anticipates disclosing
documents using the same framework it has used in disclosing the other documents at

Congress intended Exemption 7(A) to be interpreted broadly. *See North v. Walsh*, 881 F.2d 1088, 1098 n.14 (D.C. Cir. 1989); *Manna v. Dep't of Justice*, 51 F.3d 1158, 1164 n.5 (3rd Cir. 1995); *In re Dep't of Justice*, 999 F.2d 1302, 1307 (8th Cir. 1993). To sustain its burden under Exemption 7(A), the government need only establish that the investigatory records were compiled for law enforcement purposes, and that their production could interfere with potential enforcement proceedings. *Barney*, 618 F.2d at 1273.

The government is not required to make a specific factual showing with respect to each withheld document that disclosure would actually interfere with a particular enforcement proceeding. *Robbins Tire*, 437 U.S. at 234-35. "It is the particular categories of documents, and the likelihood that the release of documents within those categories could reasonably be expected to threaten enforcement proceedings, on which the court must focus." *In re Dep't of Justice*, 999 F.2d at 1309. Thus, the government may assert Exemption 7(A) categorically and make generic determinations that disclosure would interfere with law enforcement. *Robbins Tire*, 437 U.S. at 234-35. The "categories must be distinct enough to allow meaningful judicial review, yet not so distinct as prematurely [to] let the cat out of the investigative bag." *In re*

---

issue in this case. Thus, the Commission will withhold: information whose disclosure would result in an "unwarranted invasion of personal privacy" under Exemptions 6 and/or 7(C); documents protected by the attorney-client or deliberative process privileges or work product production under Exemption 5; and confidential commercial or financial information under Exemption 4. The Commission is not providing a Vaughn index of those documents at this time because an index of all the documents gathered or created in the investigation could lead to many of the same harms as disclosure of the documents themselves. Sullivan Decl. at ¶ 8. Also, a Vaughn index of those documents is not necessary because this Court's decisions about the categories currently at issue here will apply to the documents from the OIG investigation, which concern the same facts and circumstances as the documents already at issue in this case. This approach should address any concerns raised in *Maydak v. Dep't of Justice*, 218 F.3d 760 (D.C. Cir. 2000).

*Dep't of Justice*, 999 F.2d at 1311 (quoting *Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987)).

Courts have consistently upheld the following types of harms as sufficient to trigger Exemption 7(A)'s protection:  (1) witness intimidation; (2) chilling investigations by making third parties reluctant to provide information; (3) giving a suspected violator early access to information in the case against it, allowing it to construct bogus defenses and to manufacture or destroy evidence; (4) revealing the scope, direction, or focus of law enforcement's investigative efforts; (5) revealing the agency's impressions of testimony; and (6) hindering the government's ability to shape and control its investigations.  *See generally North*, 881 F.2d at 1097-98 (collecting and citing cases for above propositions); *see also Swan v. SEC,* 96 F.3d 498, 499 (D.C. Cir. 1996); *New England Med. Ctr. v. National Labor Relations Bd.*, 548 F.2d 377, 382-83 (1st Cir. 1976).

The OIG investigation at issue here was prompted by a letter Aguirre sent to the Commission, in which Aguirre alleged that his employment with the Commission was terminated improperly and that others at the Commission had engaged in other misconduct.

The OIG files were compiled for law enforcement purposes, including determining whether there is any evidence that any laws or regulations were violated.  Sullivan Decl. at ¶ 5. The OIG is an independent office within the Commission, as required by the Inspector General Act of 1978, as amended.  *See* 5 U.S.C. app. 3 § 8G(a)(2) (2000).  Among other things, the OIG is responsible for conducting internal investigations of the Commission's programs and operations.  It is the responsibility of the OIG to expeditiously report to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of a federal criminal law.  *See id*. at § 4(d).  In other cases, analogous OIG files have been found to

be compiled for law enforcement purposes and protected by Exemption 7(A). *See Edmonds*, 272 F. Supp. 2d at 55 (information contained in OIG investigation file properly withheld under Exemption 7(A)); *Gould, Inc. v. GSA*, 688 F. Supp. 689 (D.D.C. 1988) (OIG records properly protected under Exemption 7(A)); *Local 32B-32J, Service Employees International Union, AFL-CIO v. GSA*, 1998 WL 726000, *11 (S.D.N.Y. Oct. 15, 1998)) (Exemption 7(A) properly invoked to protect OIG files).

The records pertaining to the OIG's reopened investigation fall into the following four categories:  (A) internal memoranda and work product prepared by OIG staff; (B) evidentiary materials gathered by the OIG; (C) internal SEC – OIG communications; and (D) OIG – third-party communications.  The harm that could reasonably be expected to result from disclosure of each of these categories of documents is as follows:

### Category A:  Internal Memoranda and Work Product Prepared by OIG Staff

This category includes OIG memoranda, attorney notes, investigative plans, legal research, and internal OIG communications.  A major portion of this category is comprised of notes taken by OIG staff during witness interviews and memoranda based on those notes. Sullivan Decl. at ¶ 7.A.  Release of this information would reveal the nature, scope, direction, focus, or strategy of the ongoing OIG investigation.  Revelation of this type of information would provide other potential witnesses and subjects of the investigation with information that could help them interfere with the OIG's ongoing investigation.  *Id.*

Courts have consistently held that attorney notes and similar materials contained in an active investigative file can be withheld under Exemption 7(A).  *See, e.g., New England Med. Ctr.*, 548 F.2d at 383 (noting that "[d]isclosure of the agent's notes of the interview . . . might give some insight into what parts of the interview the agent deemed important"); *Swan*, 96 F.3d

at 499 (releasing Commission notes of witness statements "would risk allowing those under Commission scrutiny to tailor their testimony, intimidate witnesses, manufacture favorable evidence, and conceal damaging evidence"); *Parker/Hunter, Inc. v. SEC,* 1981 WL 1675, *4 (D.D.C. April 29, 1981) (upholding Exemption 7(A) protection for notes, memoranda, and transcripts of witnesses interviews, as releasing these materials would "allow[] plaintiff to learn the SEC's impression of testimony and the direction of its case . . . and to identify a witness thought not previously known to plaintiff"); *Church of Scientology of Texas v. IRS*, 816 F. Supp. 1138, 1157 (W.D. Tex. 1993) (memorandum of interview properly withheld under Exemption 7(A) so as to prevent harassment or reprisal and to prevent disclosure of direction and scope of investigation).

Further, internal memoranda are routinely protected by Exemption 7(A). *See Barney,* 618 F.2d at 1273 (withholding internal agency memoranda and agent's work papers); *Ehringhaus v. Federal Trade Comm'n*, 525 F. Supp. 21, 23 (D.D.C. 1980) (withholding documents revealing focuses of investigation, aspects of strategy, strengths and weaknesses of case, and impression of witnesses); *National Public Radio v. Bell*, 431 F. Supp. 509, 514-15 (D.D.C. 1977) (internal memoranda protected by Exemption 7(A)); *J.P. Stevens & Co. v. Perry*, 710 F.2d 136, 142-43 (4th Cir. 1983) (same).

**Category B:  Evidentiary Materials Gathered by the OIG**

In conducting its investigation, the OIG gathered documents from various sources.  Some of the documents were produced by witnesses in response to OIG requests.  Sullivan Decl. at ¶ 7.B.  From these documents, a person could learn what information the OIG investigative staff requested or obtained from a particular witness, the identities of witnesses, and what information each witness might possess.  *Id.*  Further, release of the records would reveal the nature, scope,

direction, focus, or strategy of the OIG's investigation. *Id.* Thus, release of the records could enable witnesses to shape their testimony to fit the facts of which the OIG is aware, or otherwise help them interfere with the OIG's ongoing investigatory efforts. *Id.*

These investigatory records are properly protected under Exemption 7(A). *See, e.g., Alyeska*, 856 F.2d at 312 (Exemption 7(A) protected corporate records provided to EPA by witness where EPA had averred that disclosure would "prematurely reveal[] . . . the size, scope and direction of [its] investigation" and that "the mere identification of the specific records submitted would reveal the scope and direction of the investigation to the requester"); *Solar Sources v. United States*, 142 F.3d 1033, 1036 (7th Cir. 1998) (affirming Exemption 7(A)'s application to documents produced in response to subpoenas); *Barney*, 618 F.2d at 1273 (disclosure of documentary evidence, "prior to the institution of civil or criminal tax enforcement proceedings, would necessarily interfere with such proceedings by prematurely revealing the government's case"); *see also New England Med. Ctr.*, 548 F.2d at 386 (producing parts of case files that were not employee witness statements "will 'interfere' with Board [law enforcement] proceedings by enabling a possible violator to construct defenses"); *Ehringhaus*, 525 F. Supp. at 23 (releasing documents related to a survey to gather potential evidence "would reveal preliminary evidence supporting the contemplated action, the focus of the investigation, important aspects of the planned strategy of Commission attorneys, the strengths and weaknesses of the government's case and the amount of resources devoted to the investigation").

**Category C:   Internal SEC – OIG Communications**

This category includes communications (including electronic mail) between OIG investigative staff and SEC staff regarding interviews and document requests. Sullivan Decl. ¶ 7.C. From these documents, a person could learn whom the OIG staff interviewed, what

documents the OIG investigative staff requested from various sources, and what information

those sources might possess. *Id.* The release of this information would reveal the investigative

steps taken by the OIG in this matter and could enable witnesses to shape their testimony to fit

the facts of which the OIG is aware, or otherwise interfere with the OIG's ongoing investigatory

efforts. *Id.*

Courts have routinely held that documents raising such concerns are shielded from

disclosure by Exemption 7(A). *See, e.g., Edmonds*, 272 F. Supp. 2d at 55 (administrative

materials such as letters compiled as part of OIG investigation properly withheld under

Exemption 7(A)); *Gould*, 688 F. Supp. at 699 (records generated by the government and

compiled by OIG for a law enforcement purpose properly protected under Exemption 7(A)).

### Category D:  OIG – Third-Party Communications

This category includes communications (including electronic mail) between OIG

investigative staff and sources outside the Commission regarding interviews, document requests,

and matters pertinent to the ongoing investigation. Sullivan Decl. at ¶ 7.D.  From these

documents, a person could learn what documents the OIG investigative staff requested from

various sources and what information those sources might possess. *Id.* Release of these records

could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. *Id.*

Revelation of this information could enable witnesses to shape their testimony to fit the facts of

which the OIG is aware, or help them interfere with the OIG's ongoing investigatory efforts. *Id.*

Courts have routinely held that similar documents are shielded from disclosure by

Exemption 7(A). *See Edmonds*, 272 F. Supp. 2d at 54-55 (correspondence with third parties

compiled as part of OIG investigation properly withheld under Exemption 7(A)); *American Civil

Liberties Union v. FBI*, 429 F. Supp. 2d at 191 (release of documents compiled for law

enforcement purpose properly protected under Exemption 7(A) when release could reveal nature and scope of investigation and investigative activities, identity of witnesses, and investigative steps taken to pursue interviews with witnesses); *Service Employees International Union*, 1998 WL 726000, at *8 (release of investigative file would have identified the individuals who OIG has interviewed or who may have relevant information, and would have provided clues about the nature and scope of the OIG investigation, provided targets of OIG investigation with road map of the case, and enabled targets to fabricate defenses or harass witnesses).

The forgoing categories of withheld documents are protected from disclosure under Exemption 7(A). The Commission has thus not improperly withheld any documents, and it is entitled to summary judgment regarding documents contained in the reopened OIG investigatory files.

**C.    The Commission Properly Withheld and Redacted Information from the Senate Production.**

As described above, with respect to documents in the Senate production, Aguirre is contending that the Commission has improperly withheld or redacted documents under Exemptions 5, 6, and 7(C), that any future withholdings under Exemptions 3, 4, and 7(C) for documents subject to confidential treatment are not proper, and that he is entitled to a detailed description of the documents the Commission has determined are non-responsive. Those claims raise several issues, five of which are discussed below. The remaining issues are before the Commission's Office of the General Counsel in confidential treatment appeals, and we will address those issues in a subsequent memorandum after resolution of the appeals.

**1.    The Commission Did Not Waive the Protection of FOIA Exemptions by Producing Documents to the Senate.**

Aguirre asserts that the Commission waived all exemptions by providing the documents

29

to the Senate.  Hardy Decl., Ex. 13 at 1.  That argument is meritless.  The FOIA specifically

provides that it "is not authority to withhold information from Congress."  5 U.S.C. 552(d); *see

also Murphy v. Dep't of the Army*, 613 F.2d 1151, 1155-56 (D.C. Cir. 1979) (noting that

Congress, in codifying what became 5 U.S.C. 552(d), had "the obvious purpose . . . to carve out

for itself a special right of access to privileged information").  Finding waiver here would lead to

the absurd result that once an agency complies with a congressional request, it must produce the

disclosed documents to all persons.  If such a rule existed, "executive agencies would inevitably

become more cautious in furnishing sensitive information to the legislative branch – a

development at odds with public policy which encourages broad congressional access to

governmental information."  *Id.* at 1156 (footnote omitted).

     In light of these concerns, courts have consistently found that agencies do not waive their

ability to rely on FOIA exemptions by providing documents pursuant to a congressional request.

For example, in *Rockwell v. Dep't of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001), the Court held

that the Department of Justice did not waive attorney work-product protection for documents it

relied on in preparing a report defending its prosecution of a nuclear weapons plant operator by

turning the documents over pursuant to a request from the Investigations and Oversight

Subcommittee of the House Committee on Science, Space and Technology.[17]  Similarly, in

---

[17]    Although in *Rockwell* the Subcommittee had agreed not to make the documents public, the Court recognized that such an agreement was not necessary.  *Id.*  In *Murphy*, the Court found no waiver even though the agency that provided the documents had not made a specific request for confidentiality.  613 F.2d at 1158-59.  Here, the Committees did not provide specific assurances to the Commission, but each time it provided documents, the Commission included or referenced the following language (or substantially similar language):

        We understand that, absent extraordinary circumstances, it is not the practice of Congressional committees to make public disclosure of sensitive, nonpublic

*Edmonds v. FBI*, 272 F. Supp. 2d 35, 49 (D.D.C. 2003), this Court held that the disclosure of classified material to a congressional committee "does not deprive defendant of the right to classify the information under Exemption 1, for disclosure of information to a congressional committee does not constitute a waiver."

Furthermore, the mere fact that some documents may have been disclosed by Congress does not waive the applicability of a FOIA Exemption for related documents. The burden in this instance does not require the government to demonstrate that a disclosure of any withheld information has not occurred, but rather, the burden is on the plaintiff to show that the specific information sought is public. *See James Madison Project v. Nat'l Archives*, 2002 WL 31296220, at *1 (D.C. Cir. Oct. 11, 2002) (holding that FOIA plaintiff "bears the burden of showing that the specific information at issue has been officially disclosed"); *Public Citizen*, 11 F.3d at 201 (holding that plaintiffs "cannot simply show that similar information has been released, but must establish that a specific fact already has been placed in the public domain.").

      **2.**      **The Commission Properly Withheld the Draft Documents Listed on its Vaughn Index under Exemption 5.**

Aguirre does not dispute that the documents on the Senate Production Vaughn Index

---

material without prior consultation with the responsible agency. Because the records we are providing include such sensitive, nonpublic information, we respectfully request that the Committees on Finance, the Judiciary, and Banking, Housing and Urban Affairs, and any subcommittees that have access to the documents, follow that practice in this instance.

Declaration of Matthew Shimkus ("Shimkus Decl.") at ¶ 2 (Sept. 28, 2007) (filed herewith); Sullivan Decl. at ¶ 10.

Also, the Committees recognized the Commission's concerns and communicated with the Commission regarding redactions before making documents public. Shimkus Decl. at ¶ 3; Hardy Decl. at ¶ 28.

come within Exemption 5 except to the extent that the Commission is protecting draft correspondence and subpoenas "where no final version of the document was produced." Hardy Decl., Ex. 13 at 1. Although the Commission has now provided Aguirre with the final versions of correspondence from its paper files, Aguirre continues to seek the drafts for which the Commission does not have a final version.[18]

The drafts at issue were produced to the Senate in connection with a production of all electronic documents on a shared computer drive used for the Pequot investigation (the "J drive") dated after the termination of Aguirre's employment. Hardy Decl. at ¶ 23. It is impossible to determine from the J drive whether the correspondence on it is substantively the same as a final version that was actually sent. Declaration of Robert Hanson ("Hanson Decl.") at ¶ 4. The staff working on the Pequot investigation after Aguirre's termination did not have a practice of deleting any correspondence or subpoenas that were not sent out or that were not identical to the final correspondence and subpoenas. *Id.* at ¶ 5. Thus, if the Commission does not have a final version corresponding to a draft on the J drive, it cannot determine if what is on the J drive was actually sent out. *Id.* at ¶ 4. Indeed, several of the drafts for which there is no corresponding final version are plainly not final as they do not have dates or have blank spaces in the letters. *Id.* at ¶ 6; Hardy Decl. at ¶ 23. *See, e.g.,* Vaughn Index, Doc. Nos. 154-155, 168.

In light of these facts, the Commission has properly determined that the correspondence

---

[18]    The Commission is continuing to withhold the final version of one document (Doc. No. 149) because it is a communication between the Commission and a United States Attorney's Office regarding the Pequot investigation. Such a document is entitled to work product protection and is properly withheld under Exemption 5. *See Gavin v. SEC,* 2007 WL 2454156 (D. Minn. August 23, 2007) (communications between SEC and DOJ regarding information from SEC investigation protected under Exemption 5 by work product protection and deliberative process privilege).

and subpoenas on the J drive that do not correspond to any final versions in its paper files are drafts and withheld them under Exemption 5.  Initially, it is settled law that the deliberative process privilege "covers recommendations, *draft documents*, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (emphasis added); *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (citing *Coastal States* for the proposition that "Exemption 5 protects 'draft documents'").[19]  The attorney work product doctrine also protects drafts that, like the ones here, were written in anticipation of litigation.  *See Simmons, Inc. v. Bombadier, Inc.*, 221 F.R.D. 4 (D.D.C. 2004). The documents at issue are drafts that come within these protections because they are not the final, signed versions evidencing that they were actually sent outside of the Commission.  Until action is taken to make a document final and send it outside the Commission, it comes within the deliberative process privilege and the attorney work-product doctrine.  Thus, the Commission properly withheld the draft documents.

### 3. The Commission Properly Redacted the Identities of Individuals Under Exemption 7(C)

The Commission has redacted names and personal identifying information from the documents it produced from the Senate production and has also withheld three documents in their entirety under Exemption 7(C) because names and personal identifying information is the

---

[19]    *See also Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (holding "two draft letters" reflected deliberative process and were properly exempt from disclosure under FOIA Exemption 5); *Pies*, 668 F.2d at 1353-54 (draft regulations shielded from disclosure under Exemption 5's deliberative process privilege); *Russell v. Dep't of Air Force,* 682 F.2d 1045 (D.C. Cir. 1982) (draft report shielded from disclosure under Exemption 5's deliberative process privilege).

only information of substance in the documents. Those redactions do not include the names of current and former Commission employees who testified before the Senate (Linda Thomsen, Paul Berger, Mark Kreitman, Robert Hanson, Eric Ribelin or Gary Aguirre) or the names of Arthur Samberg or John Mack. Thus, the Commission used the same approach as it used for the Exemption 6 redactions discussed above. However, as with the Exemption 6 redactions, Aguirre contends that no names should be redacted. That position is not tenable, especially as names in investigative files are entitled to even greater protection under Exemption 7(C) than names in other files protected by Exemption 6. *See Dep't of Air Force v. Rose*, 425 U.S. 362, 378 n.16 (1976) (explaining that Exemption 7(C) requires only an "unwarranted invasion of personal privacy" while Exemption 6 requires a "clearly unwarranted invasion of personal privacy").

Exemption 7(C) protects "records or information compiled for law enforcement purposes" if their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C). There is no question, and Aguirre has not suggested to the contrary, that the information withheld under this exemption was collected for law enforcement purposes. The dispositive issue, therefore, is whether disclosure of the records could reasonably be expected to result in an "unwarranted invasion of personal privacy." That analysis requires a balancing of privacy interests and public interest similar to the balancing under Exemption 6 described above. *Beck*, 997 at 1491.

Courts have extended broad protections under Exemption 7(C) to information contained in law enforcement records, in recognition of the "'strong interest' . . . 'in not being associated unwarrantedly with alleged criminal activity.'" *Fitzgibbon v. CIA,* 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984)). Exemption 7(C) recognizes the stigma potentially associated with law enforcement investigations and affords witnesses,

34

suspects, and investigators broad privacy rights. *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 862 (1981). The Supreme Court has held "as a categorical matter" that the release of law enforcement records containing information about a private citizen "can reasonably be expected to invade that citizen's privacy." *Reporters Comm.*, 489 U.S. at 780. The Court has gone on to state that "the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Id.* at 774; *see also Carpenter v. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006) ("The central purpose of the FOIA is to reveal government action, not to expose the actions of private third parties and their participation in law enforcement to the public.").

Courts have also made clear that Exemption 7(C) protects significant privacy interests of government staff. Government employees do not surrender all rights to personal privacy when they accept public appointment. *Bast v. FBI*, 665 F.2d 1251, 1255 (D.C. Cir. 1981); *see also Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978); *Mendoza*, 465 F. Supp. 2d at 12. The deletion of the names and identifying information of federal, state and local law enforcement personnel has been routinely upheld. *See Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984); *Lesar v. Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980).

Privacy interests of both third parties and government staff clearly exist even if information about an investigation (including the name of the individuals) has already been released. For example, in *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998), the D.C. Circuit held that, notwithstanding the fact that the press had reported that an Assistant United States Attorney had been investigated and punished, he retained a privacy interest "in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment"

and that "official confirmation of what has been reported in the press and the disclosure of additional details could reasonably be expected to constitute an unwarranted invasion of . . . personal privacy." *Id*. at 949. Indeed, courts have recognized that renewed publicity itself constitutes an invasion of personal privacy that Exemption 7(C ) was designed to avoid. *See, e.g., Bast v. Dep't of Justice*, 665 F.2d 1251, 1255 (D.C. Cir. 1981).

While the defendant bears the burden of establishing that the balance tips in favor of privacy, it is plaintiffs' burden to support its claim that disclosure of withheld information advances the public interest. *King v. Dep't of Justice*, 830 F.2d 210, 234 (D.C. Cir. 1987). There is no such public interest here. As explained above in our discussion of Exemption 6, the only relevant public interest is in information about an agency's conduct, and the release of names and identifying information rarely furthers that purpose. *See, supra*, at 15-19. It certainly does not further that purpose here as the Commission has provided the substance of the responsive documents and has not redacted the names of the Commission employees Aguirre alleges gave favored treatment or of the two main individuals he alleges received favored treatment. *See* Hardy Decl. at ¶ 27.

Thus, the Commission properly withheld names and personal identifying information under Exemption 7(C) as release of specific names would not further the right of the public to know what the government is up to, but rather can only jeopardize the privacy interests of those whose names have been in some fashion incorporated into the Commission's documents in this matter.

    **4.    The Commission Is Properly Withholding Documents Regarding Paul Berger Leaving the Commission.**

The documents from the Senate production that are not responsive to Aguirre's FOIA

request include forty pages of documents regarding Paul Berger leaving the Commission.

Aguirre has contended that these documents are responsive to his FOIA request even though

they contain no information about the Pequot investigation and do not relate to Aguirre's merit

pay increase, evaluation, performance, or termination.  Hardy Decl., Ex. 13. at 3.  In an effort to

resolve the dispute, the Commission has provided Aguirre with the non-exempt portions of the

documents regarding Berger leaving the Commission.  Aguirre is not entitled to any additional

documents in this category both because they are not responsive to his FOIA request and

because the withheld documents were properly withheld under Exemptions 6 and 7(C).[20]

Clearly, Aguirre cannot obtain through this litigation documents he has not requested.

*See Gillin v. IRS*, 980 F.2d 819, 822-23 & n. 3 (1st Cir. 1992) (FOIA requester not entitled to

documents he sought during litigation where he had not made clear request for documents before

litigation).  Because Aguirre's FOIA requests do not refer to Berger's resignation in any way

(*see* Complaint ¶¶ 37, 40) and because the documents do not contain any of the information

Aguirre seeks in his FOIA requests, they are beyond the scope of this case.

In any event, the Commission has properly withheld and redacted the documents under

Exemptions 6 and 7(C).  First, the Commission properly redacted names and personal

identifying information from the 13 pages it produced for the reasons discussed above regarding

analogous redactions under Exemptions 6 and 7(C).  Second, the Commission properly withheld

27 pages in their entirety because those e-mails were personal messages between various

Commission employees that do not relate to the agency's conduct.  Some parts of some of those

e-mails contain rumors regarding when Berger might resign from the Commission and where he

---

[20]    The withheld documents are Doc. Nos. 1, 101-111, and 113-116  on the Vaughn Index.

might work following any resignation, but there is no public interest in obtaining those rumors or the personal discussions accompanying those rumors. Those rumors provide no insight on how the Commission was carrying out its functions.

> **5.    The Commission Is Not Obligated to Provide Aguirre with a Detailed Analysis of Documents Which are Not Responsive to his Requests.**

Aguirre has questioned the Commission's determination that many documents in the Senate production are not responsive to the FOIA requests at issue here and has sought a great deal of information about those documents. Although the Commission has provided Aguirre with much information about the non-responsive documents and has provided several categories of non-responsive documents that he has requested, Aguirre continues to seek additional information. Hardy Decl., Ex. 13 at 2. The Commission, however, does not have an obligation to provide a detailed description of the non-responsive documents.

In questioning whether the Commission has properly provided responsive information, Aguirre is contesting the adequacy of the Commission's search for documents. To prove the adequacy of its search, an agency relies upon its declarations, which should be "relatively detailed, nonconclusory, and submitted in good faith." *Pollack v. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989). While the initial burden rests with an agency to demonstrate the adequacy of its search, once that obligation is satisfied, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 67 n.13 (D.C. Cir. 1990). It is well established that "[a]gency affidavits enjoy a presumption of good faith that withstands purely speculative claims about the existence

and discoverability of other documents." *Chamberlain v. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997).

Here, in addition to the substantial correspondence the Commission has provided explaining its search, Hardy Decl., Ex. 15, 17-19, the Commission has now submitted a declaration stating that Commission staff have reviewed the Senate production and the OIG Senate production (which the parties agreed defined the scope of the request) and have determined that all documents that have not been produced or listed on the Vaughn Index are either documents that are duplicates of produced documents or documents that are not responsive to Aguirre's FOIA requests (as modified in this litigation) because they were not produced to the Senate Committees in response to category one of their August 2, 2006 letter and do not relate to Aguirre's merit pay increase, evaluation, performance, or termination. Hardy Decl. at ¶ 26. Aguirre has no basis for contending that that representation is not made in good faith and consequently has no basis for contesting the adequacy of the search.

## II.    THE PRIVACY ACT DOES NOT REQUIRE DISCLOSURE OF ANY ADDITIONAL DOCUMENTS.

In addition to his claims under the FOIA, Aguirre has claimed in his Complaint that the documents he seeks were improperly withheld under the Privacy Act. *See* Complaint ¶ 37. As discussed below, the Privacy Act does not apply to the records withheld, and accordingly, Aguirre's Privacy Act claims should be dismissed.

The Privacy Act allows an individual to gain access to certain records "pertaining to him" if they are maintained by an agency in a system of records from which information is retrieved by the name of the individual or some identifying number or symbol assigned to the individual. 5 U.S.C. 552a(d)(1). The Privacy Act defines "record" as:

> any item, collection, or grouping of information **about an individual** that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. 552a(a)(4) (emphasis added). To prove a violation of the Privacy Act, a plaintiff "must first establish that the requested information was a record pertaining to him within the meaning of the Act." *Lapka v. Chertoff*, 2006 WL 3095668, at *6 (N.D. Ill., Oct. 30, 2006).

### A. The Privacy Act Does Not Apply to the Documents Responsive to Items Two Through Five of the December 30, 2005 Request.

The Privacy Act does not apply to the communications between Commission staff and OGE staff regarding the Conduct Regulation because the OGE records pertain to the subject of a proposed change in rulemaking and do not pertain to a person, nor are they maintained or retrievable by a personal identifier. *See* 5 U.S.C. 552a (a)(4), (5); *Tobey v. NLRB*, 40 F.3d 469 (D.C. Cir. 1994) (to qualify as a "record" under the Privacy Act, any information must be "about" an individual and contain the individual's name or other personal identifier).

### B. The Privacy Act Does Not Apply to Documents With Redacted Identifying Information or to Compensation Committee Spreadsheets.

The Commission has provided to Aguirre the documents from his personnel files to which he is entitled under the Privacy Act without redactions. The Commission, however, properly redacted other items – primarily e-mails among Commission staff – that were not in personnel files regarding Aguirre. The documents produced in redacted form were not maintained in, nor were they retrieved from, a system of records within the meaning of the Privacy Act. Declaration of Celia Winter ("Winter Decl.") at ¶ 3. Thus, they are not subject to the Privacy Act's access provisions. *See McCready v. Nicholson*, 465 F.3d 1, 9, 13 (D.C. Cir.

2006).  Similarly, the compensation committee spreadsheets were not maintained in, nor

retrieved from, a system of records within the meaning of the Privacy Act.  Winter Decl. at ¶ 4.

Even assuming *arguendo* that the documents could be considered Privacy Act records,

the Privacy Act does not require release of the redacted personal information concerning other

Commission employees.  *See Dayton Newspapers, Inc. v. Dep't of Air Force,* 35 F. Supp. 2d

1033, 1035 (S.D. Ohio 1998) (claimants' names, social security numbers, home addresses,

home/work telephone numbers and place of employment properly redacted pursuant to FOIA

Exemption 6 and the Privacy Act); *In re B & H Towing*, 2006 WL 1728044, * 12-13 (S.D.W.Va.

June 23, 2006) (United States may redact private personal information in responding to

interrogatory for information pertaining to Army Corps of Engineers' supervisors leave

information).

Moreover, under the Privacy Act, a person is entitled to access only to records

"pertaining to him," 5 U.S.C. 552a(d)(1), and the compensation committee spreadsheets are not

documents "pertaining to" Aguirre.  As described in more detail below, the mere fact that

records contain a person's name do not mean that they pertain to that person and must be

released under the Privacy Act.  *See Tobey*, 40 F.3d at 471.

## C.    The Commission Properly Withheld the Investigative Files of the Inspector General.

### 1.    The OIG investigative files are not records pertaining to Aguirre to which Aguirre is entitled to access under the Privacy Act.

The OIG investigative files are not records "pertaining to" Aguirre within the meaning of

the Privacy Act, so Aguirre is not entitled to them under the Privacy Act.  The fact that the OIG

files contain Aguirre's name does not make them "records" pertaining to him to which Aguirre is

entitled access under the Privacy Act.  Not every document or piece of information that contains

an individual's name, that can be retrieved using an individual's name, or that relates to an individual in some way is a "record" for purposes of the Privacy Act. *Tobey*, 40 F.3d at 471; *Lapka*, 2006 WL 3095668, at *6. To qualify as a "record" to which an individual is entitled access under the Privacy Act, the record must both contain the individual's name or identifier and be "about" the individual. *Id.* at 471; *see also Logan v. Dep't of Veterans Aff.*, 357 F. Supp. 2d 149, 154 (D.D.C. 2004); *Fisher v. NIH*, 934 F. Supp. 464, 468 (D.D.C. 1996). As courts have explained, "the Privacy Act protects information that is 'about' an individual, not that which simply 'applies to' him. The latter category is a broad one, encompassing virtually all data that relates to an individual; the former, however, includes only information that actually describes the individual in some way." *Fisher*, 934 F. Supp. at 47; *see also Tobey*, 40 F.3d at 472.

The OIG investigative files do not pertain to Aguirre within the meaning of the Act because Aguirre himself is not the subject of the OIG investigation, but a person who complained about the conduct of others. Sullivan Decl. at ¶ 3. "Under the Privacy Act, records that are generated in response to a complaint are not records about the complainant but rather are considered records about the accused." *Lapka*, 2006 WL 3095668, at *7 (citing *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1448-49 (9th Cir. 1985)) (letter written by employee to government agency complaining of a dispute with management over his performance was not "about" the employee and therefore was not a "record" to which the employee was entitled access under the Privacy Act); *see also Logan*, 357 F. Supp. 2d at 154 (report related to internal investigation of supervisor "pertained to" supervisor, not to plaintiff). Under this standard, the OIG investigative records are "about" those whom Aguirre accused of misconduct, not "about" Aguirre.

That the OIG records at issue are not "about" Aguirre is confirmed by the Commission's

42

Systems of Records Notice concerning Inspector General investigative files. That Notice identifies the categories of individuals covered by that system of records as follows: "This system of records contains records on individuals who are or have been subjects of the Office of Inspector General's investigations or inquiries relating to programs and operations of the Commission." 55 Fed. Reg. 31230-03, 31231 (June 1, 2006). Because Aguirre was not a subject of an investigation, but a source, the OIG investigative files are not in a system of records that pertains to him.

> **2.    The system of records maintained by the OIG that contains investigative files is exempt from the access provisions of the Privacy Act.**

Even if the OIG investigative files pertained to Aguirre within the meaning of the Privacy Act, Aguirre is not entitled to access them because OIG investigative files are properly exempt from the access provisions of the Act pursuant to SEC regulation.

Under the Privacy Act, "[t]he head of any agency may promulgate rules" exempting "investigatory material compiled for law enforcement purposes." 5 U.S.C. 552a(k)(2). Pursuant to this section of the Privacy Act, the Commission has promulgated a rule that exempts "the system of records maintained by the Office of the Inspector General of the Commission that contains the Investigative Files" from the access and other provisions of the Act. *See* 17 C.F.R. 200.313(b)(1). As discussed above in connection with Exemption 7(A) of the FOIA, the OIG files are "investigatory material compiled for law enforcement purposes." Thus, they are properly exempted under Commission regulation. *See Gowan v. Dep't of Air Force*, 148 F.3d 1182, 1188-89 (10th Cir. 1998) (upholding exemption for inspector general records). Because the OIG files are properly exempt from the access provisions of the Privacy Act, Aguirre does not have a cause of action to require the Commission to disclose the files to him. *Id.* "Where, as

here, an agency has properly exempted its records, the agency no longer has any obligation to disclose those records . . . ."  *Nolan v. Dep't of Justice*, 973 F.2d 843, 848-49 (10th Cir. 1992); *see also Doe v. FBI*, 936 F.2d 1346, 1352 (D.C. Cir. 1991).

>   **D.    The Privacy Act Does Not Apply to the Documents from the Senate Production or from the OIG Senate Production.**

The documents in the Senate production in this case are not in a Privacy Act system of records and are, therefore, not subject to the Privacy Act.  The documents at issue were collected by various agency personnel in response to the Senate request.  A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  The Senate production is not in such a group of records and does not consist of such a group by itself.  It is not organized or indexed so that documents can be retrieved by the names of individuals.  Hardy Decl. at ¶ 24.  Also, it does not come within a larger system organized by the name of individuals.  *Id*.

The documents in the OIG Senate production may be in a system of records because the OIG has kept them with its files for its ongoing investigation (Sullivan Decl. at ¶10), but, as discussed *supra* at 42-43, the files for that investigation are not records "about" Aguirre within the meaning of the Privacy Act.  Also, OIG investigative files are exempt from the access provisions of the Privacy Act pursuant to SEC regulation.  *See*, *supra*, at 43-44.  Thus, Aguirre cannot obtain the OIG Senate production under the Privacy Act.

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the Court grant

summary judgment for the defendant in this matter.

Respectfully submitted,

_____

MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5142
October 1, 2007                     (202) 772-9263 (fax)