UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY AGUIRRE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:06-cv-01260-ESH |
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) |
| Defendant. | ) ) |

**STATEMENT OF THE SECURITIES AND EXCHANGE COMMISSION
OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rules 7(h) and 56.1, the defendant United States Securities and Exchange Commission ("Commission") submits that there are no genuine issues as to the following material facts:

1. In a letter dated December 30, 2005, Gary Aguirre requested twenty-nine categories of documents from the Commission pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552a. Second Declaration of Melinda Hardy ("Hardy Decl."), Ex. 1 (Oct. 1, 2007).

2. In a letter dated March 21, 2006, Aguirre requested eleven additional categories of information pursuant to the FOIA and the Privacy Act. Hardy Decl., Ex. 2.

3. The Vaughn Index filed herewith (Hardy Decl., Ex. 14) identifies all documents that the Commission is withholding under an exemption listed in 5 U.S.C. 552(b) in full or in part, except the index does not list documents that were produced in part where the only redacted information is names, other personal identifying information such as addresses and phone numbers, and medical information that was redacted under Exemptions 6 and/or 7(C). The

documents listed on the Vaughn Index were withheld in their entirety unless the Index indicates otherwise. Hardy Decl. at ¶ 15.

**Correspondence Between Commission Staff and Office of Government Ethics Staff**

4. The Commission is withholding 54 pages responsive to items two through five of the December 30, 2005 request. Hardy Decl., Exhs. 5-7. The 54 pages are made up of three documents that concern a Commission regulation titled, "Regulation Concerning Conduct of Members and Employees of the Securities and Exchange Commission" (the "Conduct Regulation"). **Document 1** is a February 14, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) with proposed revisions to the Conduct Regulation to address comments the Commission had previously received from Rick and an 18-page revised version of the Conduct Regulation; **Document 2** is a February 28, 2000 fax consisting of a one-page memo to Stuart Rick (OGE) from Audrey Bredhoff (SEC) that outlines proposed revisions to the Conduct Regulation and a 17-page revised version of the Conduct Regulation; and **Document 3** is an April 14, 2000 fax titled "SEC 4-14-00 Revised Draft and Responses to OGE's 3/17/00 Comments" that consists of one cover page describing Commission comments and a 16-page "attached revised draft" of the Conduct Regulation. Declaration of William Lenox ("Lenox Decl.") at ¶ 3 (Jan. 8, 2007).

5. The Commission searched its files for responsive records and found no additional documents other than the documents listed above in paragraph 4. Lenox Decl. at ¶ 7.

6. The three withheld documents concern draft revisions to the Conduct Regulation that were considered by the staffs of the Commission and OGE. Commission staff created the records at issue in advance of any decision to revise this rule. The documents reflect individual staff views on whether and how possible revisions to the Conduct Regulation should be

formulated and contain staff comments and opinions. The documents thus reflect advice to the agency decisionmakers on possible changes to the Conduct Regulation. Lenox Decl. at ¶ 4.

7. The documents do not reference Mr. Aguirre. Lenox Decl. at ¶ 4.

8. The proposed changes to the Conduct Regulation were not publicly disclosed, and no final decision on these changes was ever made. To date, the changes to the Conduct Regulation continue to be contemplated and deliberated by the Commission staff, and these draft documents continue to be integral to those discussions. Lenox Decl. at ¶ 5.

### Redactions from Documents Regarding Personnel Actions

9. The Commission released to Aguirre certain handwritten notes and internal emails concerning personnel actions. Hardy Decl., Ex. 10. These documents were redacted to withhold names, e-mail addresses, phone numbers, and addresses of Commission staff and of third parties. *Id.* The following names were not redacted: Linda Thomsen, Paul Berger, Mark Kreitman, Robert Hanson, Eric Ribelin, Gary Aguirre, Arthur Samberg, and John Mack. Hardy Decl. at ¶ 27.

10. The Commission redacted the names and other information to protect individuals' privacy interests because there has been significant media coverage of Aguirre's allegations regarding the termination of his employment, and disclosure of the names and identifying information in the documents the Commission is now releasing would subject individuals named in the documents to unwanted and distracting inquiries from the news media or others. Hardy Decl., Ex. 10.

11. The redacted documents do not come within any of the Commission's systems of records. Declaration of Celia Winter ("Winter Decl.") at ¶ 3 (Jan. 8, 2007).

**Compensation Committee Spreadsheets**

12. The Commission is withholding provisional versions of compensation committee spreadsheets in their entirety. The Commission released columns in the final spreadsheet showing how many steps employees received – without personal identifying information. Hardy Decl., Exh. 10.

13. In 2005, under the Commission's Performance Management Process, a compensation committee composed of Senior Officers from the Division of Enforcement was responsible for considering employee contributions and assessing the accomplishments of employees. The committee's process culminated in a recommendation to the Director of the Division as to the number of steps each employee should receive as merit pay. Declaration of Susan Markel ("Markel Decl.") at ¶ 2 (Jan. 8, 2007).

14. In the course of preparing for the meeting of the compensation committee and during that meeting, the members of the compensation committee used a spreadsheet that listed all the non-supervisory employees in the Division, along with information identifying their supervisors, their position, their current grade and step, and for recent employees the date they started employment at the Commission. Gary Aguirre is listed on that spreadsheet. Markel Decl. at ¶ 3.

15. The spreadsheet includes a column showing whether each employee's supervisor had provided a summary of the employee's contributions as well as columns showing the recommendations that each employee's immediate supervisor had made regarding the employee's contributions. Markel Decl. at ¶ 4.

16. The spreadsheet also shows the number of steps each employee received in 2004 and has columns for the recommendations of the compensation committee. For all but the final version of the spreadsheet approved by the Director of the Division, those columns reflect the

deliberations of the compensation committee. The spreadsheet also contains statistics at the end that show how many employees received different numbers of steps, and that information could be broken down by supervisor. The statistics aided the committee's deliberations as it sought an appropriate distribution of steps. Markel Decl. at ¶ 5.

17. Also, some of the drafts have some rows highlighted to show employees that warranted some extra attention. Mr. Aguirre's name is not highlighted in any of the spreadsheets. Markel Decl. at ¶ 7.

18. The spreadsheets do not come within any of the Commission's systems of records. The SF-50s for each employee, not the spreadsheet, contain the Commission's formal record of the merit pay awarded to each employee. Winter Decl. at ¶ 4.

### OIG Investigative Files

19. On July 6, 2006, the Inspector General reopened an investigation into allegations made by Aguirre in letters to the Commission dated September 2, 2005 and October 11, 2005. This investigation remains open. The records in the Inspector General's investigatory files were compiled for law enforcement purposes and disclosure of those records could reasonably be expected to interfere with the ongoing investigatory proceedings. Second Declaration of Mary Beth Sullivan ("Sullivan Decl.") at ¶ 5 (Oct. 1, 2007).

20. The OIG investigatory files can be categorized as follows:

**A. Internal Memoranda and Work Product Prepared by OIG Staff.** This category includes OIG memoranda, attorney notes, investigative plans, legal research and internal OIG communications. A major portion of this category is comprised of notes taken by OIG staff during witness interviews and memoranda prepared based on those notes. Release of this information would reveal the nature, scope, direction, focus, or strategy of the ongoing OIG

investigation. Revelation of this type of information would provide other potential witnesses and subjects of the investigation with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.A.

    **B. Evidentiary Materials Gathered by the OIG.** OIG staff have gathered numerous documents during the investigation. Some of these documents were produced by witnesses in response to OIG requests. From these documents, a person could learn what information OIG investigative staff requested or obtained from a particular witness, the identities of witnesses, and what information each witness might possess. Release of these records would reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.B.

    **C. Internal SEC - OIG Communications.** This category includes communications (including electronic mail) between OIG staff and SEC staff regarding interviews and document requests. From these documents, a person could learn whom the OIG staff interviewed, what documents the OIG investigative staff requested from various sources, and what information those sources might possess. Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts. For example, potential subjects of the

investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.C.

D. **OIG - Third-Party Communications.** This category includes communications (including electronic mail) between OIG staff and sources outside the Commission regarding interviews, document requests and matters pertinent to the ongoing investigation. From these documents, a person could learn what documents the OIG investigative staff requested from various sources, and what information those sources might possess. Release of these records could reveal the nature, scope, direction, focus, or strategy of the OIG's investigation. Revelation of this type of information would provide other potential witnesses with information that could help them interfere with the OIG's ongoing investigatory efforts, including the identification of individuals and potential witnesses who possess information relative to the investigation. Potential subjects of the investigation could obtain the documents and then shape their testimony, or the testimony of others, to fit those facts. Sullivan Decl. at ¶ 7.D.

**Documents Produced to the Senate**

21. On October 11, 2006, Aguirre and the Commission agreed "to define the records sought under item 6 of Mr. Aguirre's December 30, 2005 request and his entire March 21, 2006 request as those that the agency has produced or will produce to the Judiciary and Finance Committees under category one on page 2 of the August 2, 2006 letter of Senators Grassley and Specter." Hardy Decl., Ex. 11.

22. The August 2, 2006 letter to which this agreement refers contains the following request as category 1:

> All documents created by SEC or SEC/OIG staff related to the investigation of Pequot Capital Management (PCM) including but not limited to all communications or records of communications in any form, such as email, sent or received by any of the following individuals:
>
> > a. Gary Aguirre
> > b. Eric Ribelin
> > c. Mark Kreitman
> > d. Robert Hanson
> > e. Linda Thomsen
> > f. Paul Berger
> > g. Joseph Cella
> > h. James Eichner

Hardy Decl., Ex. 12.

23. The Commission's Office of Legislative Affairs and Office of Inspector General both provided sets of documents to the Senate (respectively "Senate production" and "OIG Senate production"). Hardy Decl. at ¶ 21.

24. Each time the Office of Legislative Affairs or the Office of Inspector General provided documents, they included or referenced the following language (or substantially similar language):

> We understand that, absent extraordinary circumstances, it is not the practice of Congressional committees to make public disclosure of sensitive, nonpublic material without prior consultation with the responsible agency. Because the records we are providing include such sensitive, nonpublic information, we respectfully request that the Committees on Finance, the Judiciary, and Banking, Housing and Urban Affairs, and any subcommittees that have access to the documents, follow that practice in this instance.

Declaration of Matthew Shimkus ("Shimkus Decl.") at ¶ 2 (Sept. 28, 2007; Sullivan Decl. at ¶ 11.

25. The Senate Committees communicated with the Commission regarding redactions before making documents from the Senate production or the OIG Senate production public. Shimkus Decl. at ¶ 3; Hardy Decl. at ¶ 28.

26. Commission staff have searched paper files from the Pequot investigation for final versions of correspondence and subpoenas and have provided those final versions to Aguirre. The Pequot files did not contain final versions of all drafts that had been produced to the Senate. Hardy Decl. at ¶ 23. Without final versions from the paper files, it is not possible to determine what drafts are substantively the same as a final version. Declaration of Robert Hanson ("Hanson Decl.") at ¶ 4 (Sept. 28, 2007).

27. The Commission decided to release documents from the Senate production with the names, e-mail addresses, phone numbers, street addresses, social security numbers, and medical information of Commission staff and of third parties redacted. Hardy Decl., Ex. 17. In redacting documents, Commission staff did not redact the names of current or former Commission staff who testified before the Senate (Linda Thomsen, Paul Berger, Mark Kreitman, Robert Hanson, Eric Ribelin, ane Gary Aguirre) or the names of Arthur Samberg and John Mack. Hardy Decl. at ¶ 27.

28. The Commission withheld names, identifying information, and other personal information to protect privacy interests of third parties because there has been significant media coverage of Aguirre's allegations regarding the termination of his employment, and disclosure of the names and identifying information in the documents the Commission is now releasing would subject individuals named in the documents to unwanted and distracting inquiries from the media and others. Hardy Decl., Ex. 17.

29. All of the documents that the Commission has not provided to Aguirre from the Senate production or the OIG Senate production are documents that (1) are duplicates of documents that were produced; (2) were not produced to the Senate Committees in response to

category one of the August 2, 2006 letter; or (3) do not relate to Aguirre's merit pay increase, evaluation, performance, or termination.  Hardy Decl. at ¶ 21-22, 25-26.

30.  The Senate production is not organized or indexed so that documents can be retrieved by the names of individuals, and the production does not come within a larger system organized by the name of individuals.  Hardy Decl. at ¶ 24.

                              Respectfully submitted,

                              _____/s/_____

                              MELINDA HARDY, D.C. Bar No. 431906
                              Assistant General Counsel

                              NOELLE FRANGIPANE
                              Senior Counsel

                              Securities and Exchange Commission
                              100 F Street, N.E.
                              Washington, D.C. 20549-9612
                              (202) 551-5140
October 1, 2007                      (202) 772-9263 (fax)