# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| GARY AGUIRRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  1:06-cv-01260-ESH |
| ) | |
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM OF THE SECURITIES AND EXCHANGE COMMISSION IN OPPOSITION TO AGUIRRE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO AGUIRRE'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

The Securities and Exchange Commission ("Commission") files this memorandum in further support of its motion for summary judgment and in opposition to plaintiff Gary Aguirre's cross-motion for summary judgment.

In the Commission's October 1, 2007 memorandum in support of its motion for summary judgment ("Opening Memorandum"), the Commission demonstrated that its responses to Aguirre's Freedom of Information Act ("FOIA") and Privacy Act requests were complete and proper.  Aguirre's memorandum in support of his cross-motion for summary judgment and in opposition to the Commission's motion ("Aguirre Opposition") contests only two issues raised in the Opening Memorandum:  the withholding of names and personal identifying information under Exemption 6 (*see* Opening Mem. § I.B.1) and the withholding of names and personal identifying information under Exemption 7(C) (*see* Opening Mem. § I.C.3).[1]

---

[1] Aguirre has clearly indicated he is not challenging the withholding of the following documents:  (1) documents responsive to items 2 through 5 of the December 30, 2005

In the Opening Memorandum, the Commission also stated that it would address issues raised by the confidential treatment requests of various persons who provided documents and testimony in the Commission's investigation after the completion of that process.  In December 2007, the Commission decided the confidential treatment appeals and determined to withhold all materials at issue on appeal under Exemption 3, 5 U.S.C. 552(b)(3).  The Commission has also found that portions of the documents could be withheld under Exemptions 7(C) and 4, 5 U.S.C. 552(b)(7)(C), (4).  *See* Third Declaration of Melinda Hardy ("Third Hardy Decl."), Exs. 1-4 (Jan. 14, 2008) (filed herewith).

The Aguirre Opposition also raises two issues that Aguirre had not previously informed the Commission he would raise in the summary judgment process:  (1) whether the Commission must provide Aguirre with what he calls his "original Enforcement Personnel File" and (2) whether the Commission conducted an adequate search for records responsive to items seven through twelve of Aguirre's December 30, 2005 FOIA request.[2]

request (Aguirre Opp. at 6-7) (*see* Opening Mem. § I.A.); (2) compensation committee spreadsheets (Plaintiff's Response to Defendant's Statement of Material Facts Not in Genuine Dispute ("Aguirre's Stmt. of Facts") ¶¶ 12-18) (*see* Opening Mem. § I.B.2); and (3) investigative files from the Inspector General's ongoing inquiry (Aguirre's Stmt. of Facts ¶¶ 19-20) (*see* Opening Mem. § I.B.3).  The absence of any discussion of the following matters shows that Aguirre is not contesting the Commission's position: (1) the Commission did not waive the protection of FOIA exemptions by producing documents to the Senate (Opening Mem. § I.C.1); (2) the Commission properly withheld draft documents (*id.* § I.C.2); (3) the Commission properly withheld documents regarding Paul Berger leaving the Commission (*id.* § I.C.4); (4) the Commission does not need to describe non-responsive documents in detail (*id.* § I.C.5); and (4) the Privacy Act does not require disclosure of additional documents (*id.* § II).

[2]    On August 9, 2007, the Court ordered Aguirre to "identify the specific withholdings that he plans to contest," and in correspondence dated August 24, 2007, counsel for the Commission asked counsel for Aguirre to notify the Commission of "any additional issues you believe are raised by this case."  Third Hardy Decl., Ex. 5.  Aguirre did not

This memorandum addresses all the contested issues in this case: (1) Commission staff conducted an adequate search for documents responsive to items seven through twelve of Aguirre's December 30, 2005 FOIA request and provided those documents to Aguirre, including documents from his Employee Performance File; (2) the Commission properly withheld information obtained during its Pequot investigation under Exemption 3 because Section 210(b) of the Investment Advisers Act – one of the acts under which the investigation was conducted – qualifies as an Exemption 3 statute and applies to the withheld information; (3) the Commission properly withheld under Exemption 7(C): (a) names and/or personal identifying information of actual and potential witnesses, (b) names and/or personal identifying information of Commission staff, and (c) other personal information, including medical and personal financial information; (4) the Commission properly withheld names and/or personal identifying information from personnel and other files under Exemption 6; and (5) the Commission properly withheld confidential commercial and financial information under Exemption 4.

As this memorandum and the Opening Memorandum establish, there are no genuine issues of material fact relating to these issues, and summary judgment in favor of the Commission is proper.[3]

---

raise these two issues in response to the Court Order or the Commission's correspondence or otherwise indicate that he would seek summary judgment on those issues before he filed his Opposition. *See* Second Hardy Decl., Ex. 13.

[3]  Aguirre has not identified any issues of material fact in responding to the Commission's statement of material facts not in genuine dispute. To the extent Aguirre denies any of the Commission's facts, he either fails to provide any evidence to support his denials or disputes issues that are not material to this case. Similarly, while the Commission has denied facts in Aguirre's statement of supplemental facts, those denials are denials of legal issues, denials of immaterial facts, or denials where Aguirre has presented no evidence to support his contentions.

I.    **THE COMMISSION CONDUCTED A PROPER SEARCH FOR DOCUMENTS RESPONSIVE TO ITEMS SEVEN THROUGH TWELVE OF AGUIRRE'S DECEMBER 30, 2005 REQUEST.**

Because Aguirre has raised a new issue regarding the adequacy of the Commission's search for documents relating to certain aspects of his employment at the Commission, the Commission is now providing documentation to establish that it conducted a proper and adequate search. *See* Declaration of Brenda Fuller ("Fuller Decl.") (Jan. 14, 2007) (filed herewith). As a general rule, under the FOIA an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To prove the adequacy of its search, an agency relies upon its declarations, which should be "relatively detailed, nonconclusory, and submitted in good faith." *Pollack v. Bureau of Prisons*, 879 F.2d 406, 409 (8th Cir. 1989). As set forth in the Fuller Declaration, the search undertaken by the Commission was reasonably calculated to uncover all relevant documents, and the FOIA Office staff followed appropriate procedures in the search for documents responsive to Aguirre's request. *See* Fuller Decl. ¶¶ 3-5. The FOIA Office queried all appropriate offices within the Commission in the search for responsive documents: the Office of the General Counsel, the Office of the Chairman, the Office of Human Resources, the Division of Enforcement, the Office of Equal Employment Opportunity, and the Office of the Inspector General. *See id.* ¶¶ 3-4. All of those offices provided documents responsive to Aguirre's request, which were processed by the FOIA Office for release to Aguirre. *Id.* ¶ 5.

Once an agency demonstrates the adequacy of its search, the agency's position can be rebutted "only by showing that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Hypothetical assertions are insufficient to raise a

4

material question of fact with respect to the adequacy of an agency's search. *Oglesby v. U.S.*
*Dep't of Army*, 920 F.2d 57, 67 n.13 (D.C. Cir. 1990). It is well established that "[a]gency
affidavits enjoy a presumption of good faith that withstands purely speculative claims about the
existence and discoverability of other documents." *Chamberlain v. U.S. Dep't of Justice*, 957 F.
Supp. 292, 294 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997). Also, an agency's inability
to locate every responsive record does not undermine an otherwise reasonable search. *Iturralde*
*v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

      Aguirre appears to have three concerns regarding the search undertaken by the
Commission in this case. First, he alleges that the Commission's Office of the General Counsel
("OGC") has a conflict of interest that affects the Commission's ability to conduct an adequate
search. Aguirre Opp. at 39-42. That contention is baseless. Initially, as the Fuller Declaration
establishes, the FOIA Office, not OGC, requested documents from various offices and gathered
the documents responsive to items seven through twelve of Aguirre's December 30, 2005
request. In any event, Aguirre does not identify any conflict. He claims only that (1) one or more
senior officials in OGC at one point were recused from working on the Senate inquiry for
prudential or government ethics considerations; (2) Chairman Cox provided an alternative
contact person after Senator Grassley instructed his staff not to deal with Richard Humes
(without finding that any ethics considerations prevented Humes from working on the matter);
and (3) OGC staff have represented the Commission in all of the Commission's matters relating
to Aguirre, including ones in which Aguirre alleges wrongdoing occurred. Aguirre Opp. at 39-
40. These vague allegations in no way suggest that any Commission attorney has violated Rule
1.7 of the District of Columbia Rules of Professional Conduct or any other ethics rule.

Aguirre's second concern is that he believes there are documents that exist but were not produced. Aguirre apparently believes he should have received additional documents from both the Commissioners and OGC. His vague speculations are far from adequate to show that the Commission failed to conduct a proper search in good faith. Indeed, his ramblings show at most that Aguirre believes his FOIA request is far broader than the FOIA Office reasonably interpreted it to be. Aguirre seems to interpret his FOIA request as seeking all documents mentioning his termination. His actual requests regarding his termination were limited to documents "generated in carrying out" his termination and communications relating to his termination to or from nine specific people. Those requests are as follows:

> All records relating to the SEC's termination of Aguirre's employment, including (but not limited) to electronic or hard copy documents to or from his supervisors, transmittal letters, memorandums, emails, notes or memorandums of any meeting during which such possibility was discussed, and all other documents generated in carrying out such termination.

> All records relating to the SEC's termination of Aguirre's employment to or from Christopher Cox, Linda Thomsen, Paul Berger, James Clarkson, Richard Humes, Deborah Balducchi, Mark Kreitman, Robert Hanson, Richard Grime, and Charles Cain.

Complaint ¶ 37(11), (12). Nothing in these requests indicates that Aguirre sought every document that mentioned or described his claims regarding his termination without providing any further information.[4] The focus is on documents that explain the termination or address the need for or propriety of it. Memoranda from the Office of the Inspector General ("OIG") to the

---

[4]    A request that sought every document mentioning Aguirre's termination likely would not have been deemed to contain a reasonable description of the matter sought, as required by the FOIA. *See* 5 U.S.C. 552(a)(3)(A)(ii); 17 C.F.R. 200.80(a)(4); *Marks v. United States (Dep't of Justice)*, 578 F.2d 261, 263 (9th Cir. 1978) ("broad, sweeping requests lacking specificity are not permissible").

Commission discussing either the OIG's subpoena enforcement against Aguirre [5] or the OIG's production of documents to the Senate are not responsive to Aguirre's request because those memoranda do not relate to carrying out the termination and only briefly describe Aguirre's allegations and the OIG investigation.  Third Hardy Decl. ¶ 8.[6]

Similarly, Aguirre provides no reason to believe that any additional documents exist in OGC or in any other offices.  He has already received numerous e-mails that include comments from OGC staff, and he has not pointed to anything in those e-mails that indicate that OGC staff generated additional documents covered by his request.  While he points to a comment about an investigation prior to Aguirre's departure in an e-mail from an employee in the Commission's Office of Information Technology (Aguirre Opp. at 44-45), he has provided no basis to believe that if such an investigation occurred it had any connection to his termination.[7]  In sum, Aguirre has provided no basis to question the good faith of Commission staff in responding to his FOIA request.  *See Bay Area Lawyer's Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1295 (N.D. Ca. 1992) ("Plaintiff's incredulity at the fact that no responsive documents were uncovered in response to one aspect of its search request does not constitute evidence of unreasonableness or bad faith.").

---

[5]    Contrary to Aguirre's claims, the Commission did not have to approve the subpoena enforcement action (*United States v. Aguirre*, No. 1:06 MS 485 (D.D.C.)).

[6]    If memoranda from OIG to the Commission were deemed responsive, the Commission would withhold the memoranda under Exemption 5, 5 U.S.C. 552(b)(5), because they are protected by the deliberative process privilege.

[7]    The OGC attorney that Aguirre appears to believe was conducting an investigation, Juanita Hernandez, represented the Commission in connection with Aguirre's claims that the Commission discriminated against Aguirre when it did not hire him for 23 positions. *See* Senate Report at 55, 446-49 (cited in full in footnote 16, *infra*).

7

Aguirre's third concern regarding the adequacy of the search appears to be that he purportedly was not provided what he calls his original "Enforcement Personnel File." Aguirre Opp. at 37. The Commission, however, does not maintain any files called Enforcement Personnel Files. Declaration of Charles Staiger ("Staiger Decl.") ¶ 3 (Jan. 11, 2007) (filed herewith). Aguirre may be referring to his Employee Performance File ("EPF"), but he has already received the original of that file. *Id.* ¶ 7.

Aguirre has provided no reason to doubt prior representations by the Commission staff informing him that he already has the original EPF. The Enforcement Division does not retain, nor is it required to retain, a copy of an employee's EPF indefinitely. The relevant policy is set forth in the Commission's Personnel Operating Policies and Procedures ("POPPS") Manual (SEC Manual 6-1). *See* Staiger Decl., Ex. A. Specifically, the policy governing Employee Performance Files, SECR 6-9, ¶ 11.c, states that "the contents of each folder will be destroyed . . . no later than 30 days after the employee has been separated."[8] As a courtesy to former employees, the Enforcement Division mails the EPF to each employee after separation from the Commission. Staiger Decl. ¶ 6. In this case, Aguirre was given his original EPF on or about September 22, 2005. *Id.* ¶ 7. On October 5, 2005, Commission staff sent Aguirre additional documents that had not been placed in his EPF before September 22, 2005. *Id.* ¶ 10. Aguirre's alternate theories as to the disposition of his EPF are preposterous and without merit.[9]

---

[8]    The POPPS Manual also states that the EPF remains valid only for "the duration of the employee's tenure with the Commission." SECR 6-9 ¶ 7.c.

[9]    Aguirre's Declaration, filed with his Opposition, shows that Aguirre's argument may be based on confusion between his EPF and his Official Personnel File, or OPF, which is maintained by the Office of Human Resources during an employee's tenure with the Commission and which is not destroyed after an employee leaves employment with the

## II.    THE COMMISSION HAS PROPERLY WITHHELD AND REDACTED DOCUMENTS UNDER THE FREEDOM OF INFORMATION ACT.

### A.    The Commission Is Properly Withholding Information it Obtained as a Result of an Investigation under the Investment Advisers Act under Exemption 3.

#### 1.    The Commission Has Determined That All Responsive Documents Subject to a Confidential Treatment Request Can Be Withheld under Exemption 3.

In its Opening Memorandum (at 7), the Commission explained that several documents responsive to Aguirre's FOIA request were subject to confidential treatment appeals and that the Commission would not address any of the documents subject to the confidential treatment process (including those for which no appeal was pending) until the appeals were complete. The appeals have been decided and the Commission has determined that documents obtained as a result of an investigation under the Investment Advisers Act come within Exemption 3. Third Hardy Decl., Exs. 1-4. The chart below identifies the documents protected by Exemption 3.

| Doc. No. | Bates Nos. | Type of Document | Page Count | Document History |
|---|---|---|---|---|
| 2 & 40 | SEC 1820-1984; SEC 2680-2845 | Mack transcripts (corrected and original versions) | 331 | Withheld in whole following confidential treatment ("CT") appeal. See 3rd Hardy Decl., Ex. 2. |
| 37-38 | SEC 2321-2487 | Previously withheld portions of 2 transcripts | 167 | Previously produced in part; some information withheld under 7(C). |

---

Commission. *See* Aguirre Decl. ¶¶ 10-16, 22-30. Also, while copies of documents found in Aguirre's EPF were provided to the Senate, this does not mean that the Commission retained his EPF. It merely means that copies of those documents were also maintained in other Commission files. *See* Staiger Decl. ¶ 8.

| Doc. No. | Bates Nos. | Type of Document | Page Count | Document History |
|---|---|---|---|---|
| 39 & 69 | SEC 2488-2679; SEC 3254-3388 | 2 transcripts | 327 | Withheld in whole following CT appeal.  See 3rd Hardy Decl., Ex. 1. |
| 68 | SEC 3157-3253 | Transcript | 97 | Withheld in whole following CT appeal.  See 3rd Hardy Decl., Ex. 3. |
| 70 & 112 | SEC 3389; SEC 5002 | Correspondence about Morgan Stanley document production | 2 | Withheld in whole following CT appeal.  See 3rd Hardy Decl., Ex. 4. |
| 71 | SEC 3390-3415 | Morgan Stanley e-mails | 26 | Previously withheld in entirety under 7(C). |
| 73-89 | SEC 3713-3770 | Exhibits to Mack transcript | 58 | Previously withheld in entirety under 7(C) or for further CT processing. |
| 260 | SEC 7203-8006 | Samberg transcripts and exhibits[10] | 804 | Withheld in whole following CT appeal.  See 3rd Hardy Decl., Ex. 1. |

**2.    Exemption 3 Applies to the Documents Subject to a Confidential Treatment Request Because They Are Protected by Section 210(b) of the Investment Advisers Act, Which Is an Exemption 3 Statute.**

Exemption 3 authorizes the withholding of matters "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. 552(b)(3).  A statute comes within Exemption 3 if it satisfies just one of the three tests contained in the exemption.  *Association of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd.*, 830

---

[10]    Two exhibits (the Commission's form 1662 and a subpoena to Arthur Samberg) are documents from the Commission that would not come within Exemption 3.  Both documents have already been provided to Aguirre in the Senate Production.  The subpoena is at SEC 2946, and the form 1662  is at SEC 2187-91 (and many other places).

F.2d 331, 334 (D.C. Cir. 1987). Thus, if a statute satisfies the second part of subsection (B) by

identifying "particular types of matters to be withheld," it comes within Exemption 3 even if it

authorizes the agency to disclose information in certain circumstances. *See, e.g.,Times*

*Publishing Co. v. U.S. Dep't of Commerce*, 236 F.3d 1286 (11ᵗʰ Cir. 2001); *Medina-Hincapie v.*

*Dep't of State*, 700 F.2d 737 (D.C. Cir. 1983); *Iron & Sears v. Dann*, 606 F.2d 1215 (D.C. Cir.

1979).

Section 210(b) of the Investment Advisers Act, 15 U.S.C. 80b-10(b), is an Exemption 3

statute because it identifies "particular types of matters to be withheld." Section 210(b), in

relevant part, provides:

> [N]o member, officer, or employee of the Commission shall disclose to any
> person other than a member, officer, or employee of the Commission any
> information obtained as a result of any . . . examination or investigation [under
> this subchapter] except with the approval of the Commission.

Thus, Section 210(b) limits disclosure of "any information obtained as a result of any

examination or investigation" under the Investment Advisers Act ("Advisers Act").[11]

Section 210(b) is comparable to many other statutes that courts have found meet the

"particular types" test in Exemption 3(B) even though they use "rather all-embracing language"

to describe the protected class of documents. *Seymour v. Barabba*, 559 F.2d 806, 808 (D.C. Cir.

1977) (statute protecting "the information furnished under the provisions of this Title [federal

census laws]" refers to a "particular type of matter to be withheld"). *See also CIA v. Sims*, 471

U.S. 159, 167-68 (1985) (statute requiring CIA "to protect 'intelligence sources and methods,'

---

[11]    Section 210(b)'s reference to "this subchapter" pertains to the Investment Advisers Act,
15 U.S.C. 80b-1 to 80b-21. In the United States Code, Subchapter II of Chapter 2D of
Title 15 includes 15 U.S.C. 80b-1 to 80b-21. *See also* 15 U.S.C. 80b-20 ("This
subchapter may be cited as the "Investment Advisers Act of 1940.").

clearly 'refers to particular types of matters'"); *Times Publishing*, 236 F.3d at 1289 (statute

regarding "information obtained for the purpose of consideration of, or concerning, [export]

license applications under this Act" is an Exemption 3 statute); *Medina-Hincapie*, 700 F.2d at

742 (statute regarding records "pertaining to the issuance or refusal of visas or permits to enter

the United States" is an Exemption 3 statute); *Iron and Sears*, 606 F.2d at 1220 (statute regarding

patent applications and information concerning them is an Exemption 3 statute).

     The information at issue here clearly comes within Section 210(b) – and consequently

within Exemption 3. The investigation of Pequot, a registered investment adviser,[12] is an

investigation under the Advisers Act because the Commission order instituting the investigation

specifically states:

> The Commission, having considered the information provided by the staff, and
> deeming such acts and practices, if true, to be in possible violation of . . . Section
> 204A of the Advisers Act, finds it necessary and appropriate and hereby:
>
> **ORDERS**, pursuant to . . . Section 209(a) of the Advisers Act, that a private
> investigation be conducted to determine whether the aforesaid persons or any
> other persons have engaged in, are engaging in, or are about to engage in any of
> the aforesaid acts or practices, or acts or practices of similar purport or object.

Third Hardy Decl., Ex. 6 at 3.[13] Also, the documents the Commission is withholding were

---

[12]    For registration information, see
www.adviserinfo.sec.gov/IAPD/Content/ViewForm/ADV/Sections/iapd_ADVIdentifying
InfoSection.aspx.

[13]    Section 204A, 15 U.S.C. 80b-4a, provides, in relevant part:

> Every investment adviser subject to section 80b-4 of this title shall establish,
> maintain, and enforce written policies and procedures reasonably designed, taking
> into consideration the nature of such investment adviser's business, to prevent the
> misuse in violation of this chapter or the Securities Exchange Act of 1934, or the
> rules or regulations thereunder, of material, nonpublic information by such
> investment adviser or any person associated with such investment adviser.

obtained as a result of that investigation.  The documents at issue are all transcripts from testimony taken in the course of the investigation, documents provided to the Commission in the course of the investigation, or documents that the Commission staff gathered in furtherance of the investigation.

For these reasons, the Commission is properly withholding the documents listed above under Exemption 3.

**B.    The Commission Has Properly Withheld Information under Exemption 7(C).**

As outlined in the Opening Memorandum (at 33-36), Exemption 7(C) protects individuals from an unwarranted invasion of personal privacy when information regarding them is contained in documents compiled for law enforcement purposes.  The Commission is withholding three categories of information under Exemption 7(C):  (a) names and/or personal identifying information of actual and potential witnesses, (b) names and/or personal identifying information of Commission staff, and (c) other personal information, including medical and personal financial information.  The Commission addressed the basis for the first two categories

---

Section 209(a), 15 U.S.C. 80b-9(a), provides:

> Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this subchapter or of any rule or regulation prescribed under the authority thereof, have been or are about to be violated by any person, it may in its discretion require, and in any event shall permit, such person to file with it a statement in writing, under oath or otherwise, as to all the facts and circumstances relevant to such violation, and may otherwise investigate all such facts and circumstances.

Although the Commission's order states that the investigation is also instituted under the Securities Exchange Act of 1934, that fact does not make it any less an investigation under the Advisers Act.  Nothing in Section 210(b) suggests that the investigation must be only, or even primarily, under the Advisers Act.

in its Opening Memorandum, and those redactions exist in both documents subject to

confidential treatment requests and other documents that relate to the Pequot investigation.  Most

of the redactions cover only names and information such as home addresses, phone numbers, e-

mail addresses, and employment positions.  However, the Commission is withholding three

transcripts for which it granted confidential treatment in their entirety because release of any

significant substantive information from the transcripts could reveal the identity of the witnesses,

and, based on our research, their names have not been made public in connection with the Pequot

investigation.  Third Hardy Decl., Exs. 1 & 3.  Redactions in the third category – other personal

information – are primarily in the documents subject to confidential treatment requests and are

discussed further below.[14]

     The Commission's withholdings under Exemption 7(C) are proper because all the

documents and information withheld under the exemption were compiled for law enforcement

purposes and are subject to privacy interests that are not outweighed by any public interest.

Aguirre devotes many pages of his Opposition to attempting to describe a public interest in the

information he seeks, but he fails to show that the privacy interests in the withheld information

are overcome by any public interest in the specific information at issue here.

> **1.    Individuals Have a Privacy Interest in the Documents and Information the Commission Is Withholding.**

     A fundamental weakness in Aguirre's arguments is that he fails to recognize the

importance of protecting the privacy of individuals whose lives are touched by law enforcement

investigations, especially when the investigations do not result in any allegations or findings of

---

[14]    As stated above, the Commission is also withholding transcripts and other documents subject to confidential treatment requests in their entirety under Exemption 3.

wrongdoing.  Courts that have balanced privacy interests and public interests have routinely

recognized that "Exemption 7(C) takes particular note of the 'strong interest' of individuals,

whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with

alleged criminal activity.'" *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)

(quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984)).[15]

Courts have also recognized the importance of protecting other personal information such

as medical information and personal financial information.  *See, e.g., Bast v. U.S. Dep't of

Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (withholding medical information); *Atkinson v.

FDIC*, 1980 WL 355660 at *3 (D.D.C. Feb. 13, 1980) ("The documents plaintiff has requested

contain financial information concerning persons other than the plaintiff.  This is the sort of

personal financial information that has traditionally been held to be private."); *Providence

Journal Co. v. FBI*, 460 F. Supp. 778, 785 (D.R.I. 1978) ("While corporations have no privacy,

personal financial information is protected, including information about small businesses when

the individual and corporation are identical."), *rev'd on other grounds*, 602 F.2d 1010 (1st Cir.

1979).  Privacy interests can include any matters that relate either to "intimate details of

---

[15]    *See also Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding
under Exemption 7(C) that usually names and addresses of private individuals in
investigative files can be withheld); *National Assoc. of Retired Fed. Employees v.
Horner*, 879 F.2d 873, 875-79 (D.C. Cir. 1989) (protecting names and addresses of
federal retirees under Exemption 6); *American Civil Liberties Union v. FBI*, 429 F. Supp.
2d 179, 192-93 (D.D.C. 2006) (protecting names and identifying data under Exemptions
6 and 7(C)); *Miller v. Dep't of the Navy*, 383 F. Supp. 2d 5, 13-15 (D.D.C. 2005)
(protecting personal identifying information about investigators, the subject of the
investigation, and witnesses in connection with an Inspector General report under
Exemption 6), *rev'd on other grounds*, 476 F.3d 936 (D.C. Cir. 2007); *Edmonds v. FBI*,
272 F. Supp. 2d 35, 52-53 (D.D.C. 2003) (protecting names and identifying data under
Exemptions 6 and 7(C)).

[individuals'] lives" or "embarrassing disclosures." *Rural Housing Alliance v. U.S. Dep't of Agriculture*, 498 F.2d 73, 77 (D.C. Cir. 1973) (describing scope of Exemption 6). To protect privacy interests, the Commission has redacted personal information such as medical information, complaints about job performance, information pertaining to personal finances, information that reveals personal views or opinions that could be deemed embarrassing, and information strictly about individuals' personal and family life. Third Hardy Decl. ¶ 9 & Ex. 2.

Aguirre's Opposition repeatedly fails to recognize these important privacy interests. For example, in discussing names redacted from two transcripts, Aguirre states "[t]here is little if any privacy interest at stake of the individuals whose names were mentioned." Aguirre Opp. at 30. However, Aguirre seems to believe the transcripts may name someone who may have provided inside information to Mack, a possible violation of the law, *id.* at 29-30, and individuals clearly have a privacy interest where they are suspected of – but not charged with – wrongdoing. Aguirre also suggests that because the transcripts at issue were related to the witnesses' employment, they could not contain personal information. *Id.* at 30. That suggestion is at odds with Aguirre's complaint earlier on the same page that the Commission withheld one witness's response to a question about the witness's personal investment in GE. The Commission withheld the witness's response to that question and to follow-up questions on the grounds that an individual has a privacy interest in personal financial information. Fuller Decl. ¶ 6. Aguirre does not provide any reason to doubt such a privacy interest exists.

Aguirre also fails to recognize any privacy interests held by Commission staff whose names have been withheld in documents produced by the Commission. He suggests that since some Commission staff members have provided testimony to Congress in non-public sessions

16

and their names are contained in a report prepared by the staffs of two Senate committees ("Senate Report") they no longer have a privacy interest.[16]  Courts, however, have recognized that the public availability of some information about a person does not end a person's privacy interest in all related information.  If the specific information at issue is not "freely available" to the public, a privacy interest still exists.  *See U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 763-64 (1989).  Also, privacy interests may exist even if some information related to the matter at issue has already been released.  For example, in *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998), the D.C. Circuit held that, notwithstanding the fact that the press had reported that an Assistant United States Attorney had been investigated and punished, he retained a privacy interest "in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment."

Certainly, Commission staff who have not provided public testimony have a significant privacy interest in withheld information for two reasons.  First, although, as Aguirre contends (at 35), transcripts of their non-public testimony before the Senate staff are available for review, such availability does not make the transcripts "freely available."  To review the transcripts a person must go to the offices of the Senate Committee on Finance, and removal or copying of the documents is not permitted.  Declaration of Jonathan W. Burks ¶ 2 (Jan. 10, 2008) (filed herewith).  Second, the fact that names are disclosed in the Senate Report does not eliminate the staff's privacy interests in other information.  Staff have a privacy interest not only in the fact

---

[16]  *See* "The Firing of an SEC Attorney and the Investigation of Pequot Capital Management" prepared by the minority staffs of the Senate Committees on Finance and on the Judiciary and released in August 2007.  The report is at www.finance.senate.gov/sitepages/leg/LEG%202007/36960.pdf.

that they worked on the investigation, but also in the extent of their involvement and in how they carried out their responsibilities. The Commission's decision to provide information to Congress that would normally have been kept non-public does not deprive Commission staff, particularly those who have not provided public testimony or been at the heart of Aguirre's allegations of wrongdoing, of their privacy interests. *See Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241, 250-51 (D.D.C. 2005) ("The privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives.'" (citation omitted)).

Although Aguirre minimizes – or ignores – individuals' privacy interests, he makes clear that he intends to use any documents he obtains in a manner that will invade individuals' privacy interests:

> I expect to use records obtained through this proceeding in further comments before Congress, in talks at financial conferences, and in connection with my plans to write on the same subjects for public dissemination. I intend to make the records available to the media as requested.

Aguirre Decl. ¶ 34.

## 2.    Aguirre Has Not Identified a Public Interest that Outweighs the Privacy Interests the Commission Is Protecting.

As the information described above is subject to a privacy interest, it is necessary to balance the privacy interest with the public interest in disclosure of the information. In his Complaint, Aguirre alleged that there is a public interest in disclosure of the personal information he seeks because, as he alleged, those records "will demonstrate that the most senior SEC officials violated these mandates [relating to impartiality in enforcement of the securities laws]

18

by giving favored, special and thus unlawful treatment to an individual . . . who has powerful
political connections, in an SEC investigation of significant importance to the nation's capital
markets."  Complaint ¶ 6.  Aguirre quotes this allegation in his Opposition (at 12), and it appears
to continue to summarize his public interest argument.  Although the wide-ranging and rambling
discussions of public interest in Aguirre's Opposition make it difficult to decipher the specific
contours of information that he alleges would be in the public interest to reveal, he seems to
focus on the following issues:  (1) whether Aguirre's supervisors decided to give John Mack
preferential treatment (Opp. at 10); (2) whether any other offices at the Commission gave Mack
preferential treatment or covered up any preferential treatment that Aguirre asserts was given
(Opp. at 11); (3) whether the Commission terminated Aguirre's employment because he
suggested Mack was receiving preferential treatment (Opp. at 11-12); and (4) whether the
investigation of Pequot ended because of misconduct or poor management (Opp. at 13-14).[17]

As Aguirre makes clear throughout his Opposition, the Senate Report addresses these
same issues and contains numerous documents the Senate staff found relevant to these issues.
Additional documents from the investigation by the Senate committees are available in the record
of a December 5, 2006 public hearing.[18]  The Commission has also provided numerous

---

[17]    The public interest served by the release of information subject to a privacy interest must
be "the preservation of 'the citizens' right to be informed about what their government is
up to.'"  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting
*Reporters Comm.*, 489 U.S. at 773).  "Information that 'reveals little or nothing about an
agency's own conduct' does not further the statutory purpose; thus the public has no
cognizable interest in the release of such information."  *Id.*

[18]    The record is at
http://frwebgate.access.gpo.gov/cgi-bin/useftp.cgi?IPaddress=162.140.64.184&filename=
35458.pdf&directory=/diska/wais/data/109_senate_hearings.

documents relating to the issues Aguirre claims are in the public interest. The additional documents and information that the Commission is withholding are at most tangentially related to the public interests Aguirre claims exist, and the privacy interests of individuals outweigh those interests.[19] Consideration of the four categories of information that Aguirre contends should not be withheld under Exemption 7(C) makes clear that Aguirre has not identified a public interest that can overcome the privacy interests the Commission is protecting. *See* Aguirre Opp. at 24-36.

>        **a.    Aguirre has not identified a public interest in information withheld from transcripts.**

Aguirre's first two categories relate to nine transcripts of investigative testimony. Aguirre has received two of those transcripts with 7(C) information redacted. The other seven transcripts are being withheld in their entirety under Exemption 3, as explained above. However, the Commission has also determined that three of those transcripts can also be withheld in their entirety under Exemption 7(C) and that the remaining four can be withheld in part under Exemption 7(C).[20] In the six transcripts withheld in part under Exemption 7(C), the Commission has redacted (1) names and identifying information of individuals who are either not mentioned at all in the Senate Report or mentioned only briefly and (2) other personal information. The three transcripts withheld in their entirety under Exemption 7(C) contain testimony from persons

---

[19]    Because the privacy interests outweigh public interests for all the information at issue, it is not necessary to consider whether Aguirre has produced evidence sufficient to justify obtaining documents on a claim of government misconduct. *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004).

[20]    Those four transcripts contain testimony from Arthur Samberg (three transcripts) and John Mack (one transcript).

whose names are not mentioned in any significant manner in the Senate Report and have not, based on our research, appeared in the publicity surrounding the Senate Report and the investigation that preceded it. Third Hardy Decl., Ex. 1 at 6, Ex. 3 at 5. It is necessary to withhold the transcripts in their entirety to protect the identity of these persons. *Id*.

Aguirre does not provide any public interest that would justify obtaining the withheld information. Personal information about the witnesses and people identified by the witnesses simply does not have any direct or clear connection to whether the Commission gave Mack preferential treatment or otherwise improperly conducted its investigation. The only reason Aguirre gives for wanting the redacted portions of the two transcripts the Commission has disclosed in part is that he wants to determine whether the witnesses identified people that he believes the Commission should have questioned. Aguirre Opp. at 29. Aguirre, however, does not need specific names to determine how the Commission conducted its investigation because the Senate Report contains a great deal of detail about whom Mack talked to and what the Commission did with that information. Senate Report at 40-43. Aguirre does not explain why he needs anything more than what is in the Senate Report.[21]

---

[21]    The transcripts Aguirre has received also indicate that the redacted portions of those transcripts will not provide information about potential tippers. For example, the disclosed portion of one transcript (SEC 2481-82) contains the following exchange:

Q.    Do you know whether any of the Credit Suisse representatives from Switzerland with whom Mr. Mack contacted in 2001 before he began work with CS First Boston were aware of the fact that CS First Boston was working on the GE/Heller transaction?

A.    I'm not aware that any Credit Suisse individuals, blah-blah-blah, no, I'm not aware of that.

Q.    Given your knowledge of CS First Boston and CS Group, how likely do you think

The three transcripts withheld in their entirety are also irrelevant to the public interest. They do not contain any information about Samberg's financial dealings with Mack (Third Hardy Decl. ¶ 10), and Aguirre has provided no reason to believe that anything in those transcripts would suggest that Commission staff engaged in any misconduct.

> **b.**      **Aguirre has not identified a public interest in the itinerary or the calendars.**

The third category Aguirre seeks is a travel itinerary and calendars that Aguirre believes may have information about meetings between Mack and officials of Credit Suisse or of Credit Suisse First Boston. Initially, the Commission has determined that it cannot withhold most of the itinerary (Doc. No. 74) under Exemption 7(C) because most of the information from the itinerary is in the Senate Report. Third Hardy Decl., Ex. 2 at 7.[22]

Thus, the calendars (Doc. No. 73) are the only documents at issue. Aguirre does not and cannot dispute that Mack has a clear privacy interest in his personal calendars. Aguirre's only basis for seeking to overcome that privacy interest is that entries in the calendar may "shed light on the magnitude of the SEC's failure to diligently investigate Mack." Aguirre Opp. at 28. That entirely speculative assertion in no way overcomes Mack's privacy interest. First, as Aguirre recognizes by relying heavily on the Senate Report, two Senate committees have already looked

---

               it is that those individuals would have been aware of that transaction?

A.      Zero.

Q.      Do you know whether any of those people had access to information regarding pending deals that CS First Boston was involved in?

A.      No access.

[22]      The Commission is still withholding the itinerary in its entirety under Exemption 3.

carefully at all the documents at issue here and have focused on the issue of whether the

Commission diligently investigated Mack, including whether the Commission should have

questioned additional persons.  The Senate Report does not discuss or include the calendars,

indicating that the Senate committees did not find any new or significant information in them.

Additionally, the calendars themselves will reveal virtually nothing about any of Aguirre's

allegations as to the conduct of Commission staff.  Mack's personal calendars will not reveal

why or how Commission staff made any decisions and will not even explain any interactions

between Mack and the staff, since the calendars are from 2001, four years before Aguirre

proposed to take Mack's testimony.  Because the information in the calendars will do little to

shed light on agency conduct and will at most serve an "incremental public interest," Aguirre

cannot overcome the privacy interests of Mack and others in the calenders.  *Safecard*, 926 F.2d at

1206 ("We now hold categorically that, unless the names and addresses of private individuals

appearing in files within the ambit of Exemption 7(C) *is necessary* in order to confirm or refute

compelling evidence that the agency is engaged in illegal activity, such information is exempt

from disclosure." (emphasis added)).

> **c.    Aguirre has not identified a relevant public interest in obtaining the names of Commission staff.**

The final category Aguirre seeks is the names of the members of the Commission staff

who conducted the investigation.  In the documents provided to Aguirre, the Commission has not

redacted the names of any of the Commission staff members who Aguirre has alleged gave Mack

preferential treatment and terminated Aguirre's employment.  Aguirre, however, contends that

information is not enough.  Aguirre attempts to show his need for additional names by discussing

documents described and contained in the Senate Report (with names included).  Aguirre Opp. at

32-34.  Aguirre does not point to any documents the Commission provided in a redacted form

that he cannot understand or interpret because of the redactions.[23]  Because he has not made any

showing of a public interest in redacted names or other identifying information, the privacy

interests of the individuals mandates withholding the information.

### C.    The Commission Has Properly Withheld Personal Information from Non-investigatory Files under Exemption 6.

The Opening Memorandum (at 15-19) describes and explains the Commission's

redactions under Exemption 6 to protect privacy interests in files that were not compiled in law

enforcement investigations (and consequently do not come within Exemption 7(C)).  Aguirre

objects that redacting names prevents him from knowing what office was involved in various

personnel actions relating to Aguirre and the level of the officials who were involved.  Aguirre

Opp. at 36-37.  Aguirre's concern rings hollow as he identifies by name various persons who he

contends were involved in carrying out the termination of his employment and does not identify

any documents or issues for which disclosure of additional names is in the public interest.[24]

---

[23]    Even if it were proper to simply assume that Aguirre's discussion of unredacted documents applied to redacted documents, his discussion proves nothing.  Aguirre contends that he needs to know the names of staff attorneys without any supervisory or policy making authority so that he can evaluate whether discrete actions like assigning tasks to one person rather than another were reasonable.  However, analysis of what staff attorney received what assignment is not related to Aguirre's contentions of preferential treatment or misconduct in any meaningful way and certainly not in a way that is sufficient to overcome the privacy interests of those individuals.

[24]    Aguirre has provided to the Court unredacted versions of several of the documents the Commission has provided.  We do now know the source of these documents and whether Aguirre has other unredacted documents that he can use in this matter.  (The Commission has recently provided Aguirre unredacted versions of all the documents it provided in response to his FOIA request in connection with other litigation, but it provided those

Because Aguirre has not shown any need at all for names of individuals – or even for information about what specific offices took what specific actions – the privacy interests of individuals clearly outweigh the public interest, and the Commission's Exemption 6 redactions are proper.

### D.    The Commission Properly Withheld Confidential Commercial and Financial Information under Exemption 4

The Commission is withholding under Exemption 4 portions of three transcripts of testimony from Samberg and portions of one other transcript.[25]  (Those transcripts are withheld in their entirety under Exemption 3.)  Exemption 4 authorizes agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. 552(b)(4).  Thus, the exemption applies to two types of information:  (1) trade secrets, and (2) other commercial or financial information.[26]

The Commission is withholding portions of the transcripts because it found that although the transcripts do not contain trade secrets, they do contain commercial and/or financial information that satisfies the requirements of Exemption 4.  The D.C. Circuit has said that the terms "commercial" and "financial" "should be given their ordinary meanings"; the terms are not limited to "records that actually reveal basic commercial operations."  *Public Citizen Health*

---

documents subject to a confidentiality agreement that limits his use of the documents to that litigation.)

[25]    The information withheld under Exemption 4 consists of approximately 524 lines from 4 transcripts.  Third Hardy Decl. ¶ 11.

[26]    If information satisfies the requirements of Exemption 4, then not only does the FOIA allow an agency to withhold the information, but the Trade Secrets Act, 18 U.S.C. 1905, which is at least co-extensive with Exemption 4, generally requires that an agency withhold the information.  *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1151-52 (D.C. Cir. 1987).

*Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983). "Information is commercial if it

relates to commerce, trade, or profit." *McClellan Ecological Seepage Situation v. Carlucci*, 835

F.2d 1282, 1285 (9th Cir. 1987). An agency can withhold commercial or financial information

upon a showing of confidentiality. *Public Citizen* at 1286. If commercial or financial

information is provided to an agency under compulsion, as the information at issue here was, it is

deemed confidential "if disclosure would be likely either (1) to impair the government's ability to

obtain necessary information in the future; or (2) to cause substantial harm to the competitive

position of the person from whom the information was obtained." *McDonnell Douglas Corp. v.

Nat'l Aeronautics and Space Admin.*, 180 F.3d 303, 305 (D.C. Cir. 1999).

    Here, the Commission is withholding information under the first prong of that test – the

impairment prong. The impairment prong may apply even when a person was required to submit

the information at issue because potential disclosure under the FOIA could affect the quality of

information provided in the future. *See, e.g., Critical Mass Energy Project v. Nuclear

Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992) (*en banc*). To decide whether an

impairment is sufficient to warrant withholding information, it is necessary to balance the

impairment and the public interest in the information. *Washington Post Co. v. U.S. Dep't of

Health and Human Services*, 690 F.2d 252, 269 (D.C. Cir. 1982). In weighing the public

interest, the relevant interest is whether "through disclosure 'the public would learn something

directly about the workings of the *Government*.'" *Public Citizen Health Research Group v. Food

& Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) (quoting *National Ass'n of Retired Fed.*

*Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).[27]  Thus, "the public interest side of

the balance is not a function of the identity of the requester . . . or of any potential negative

consequences disclosure may have for the public . . . nor likewise of any collateral benefits of

disclosure."  *Id.* (citations omitted).

Courts have also recognized that Exemption 4 may protect the government's interest in

administrative efficiency and effectiveness.  *Critical Mass*, 975 F.2d at 879; *9 to 5 Organization*

*for Women Office Workers v. Board of Governors of the Federal Reserve System*, 721 F.2d 1, 9-

10 (1st Cir. 1983).

Given the foregoing, the Commission redacted information from transcripts only where

the witnesses provided detailed information about a business's internal commercial or financial

matters and that information is not contained in other sources of information.  Third Hardy Decl.,

Ex. 1 at 12.  It is necessary to withhold those details in order to protect the Commission's ability

to obtain necessary information because witnesses can often choose to answer questions in

general terms and make it difficult for staff to learn details that may assist them in fully

understanding the business and circumstances they are investigating.  Declaration of Walter G.

Ricciardi ¶ 5 (Jan. 11, 2008) (filed herewith).  If the Commission cannot protect such

information, witnesses will be more likely to choose not to provide those details unless they are

directly asked for them – and the staff may not be aware that such details exist and thus may not

be in a position to directly request them.  *Id.* ¶ 4.  Further, small details that may not be material

in litigation may nonetheless be necessary as the staff determines the significance of information

---

[27]     Although *Public Citizen* concerns the competitive harm prong of the confidentiality test,
        it is equally applicable to the impairment prong.  *See Public Citizen Health Research*
        *Group v. National Institutes of Health*, 209 F. Supp. 2d 37, 46 (D.D.C. 2002).

it obtains and makes decisions about what further information to seek. *Id.* ¶ 5.

Withholding those details also protects administrative efficiency and effectiveness. If witnesses are not forthcoming with details in testimony, taking testimony becomes a more burdensome process. Investigators will face even more reluctance than they already face in their efforts to obtain information, and if they do not obtain details that may help them understand all aspects of the information they receive, their investigations may be longer and less efficient. *Id.* The impact this case could have on the Commission is significant because commercial and financial information is central to most of its investigations. *Id.* ¶ 7. Also, hedge fund advisers, like Pequot, are likely to be aware of this case, and as they tend to consider secrecy and privacy to be of the utmost importance, any decision requiring disclosure could have a strong impact on their willingness to provide information to the Commission. *Id.* ¶ 6.

On the other side of the balance, there is no public interest in disclosing those details as they do not reveal anything about the workings of the Commission. That is, those details do not pertain to the issue in which Aguirre is interested, i.e., whether the Commission gave special treatment to John Mack or conducted a proper investigation. As Congress has already released the information that it has deemed appropriate to disclose, any further disclosures are not salient to the issue in which Aguirre has stated an interest.

## CONCLUSION

For the foregoing reasons and for the reasons stated in the Commission's Opening Memorandum, the Commission respectfully requests that the Court grant summary judgment for the Commission and deny Aguirre's request for summary judgment in this matter.

Respectfully submitted,


 /s/ Melinda Hardy
MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5140
January 14, 2007                         (202) 772-9263 (fax)

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY AGUIRRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.  1:06-cv-01260-ESH |
| | ) |
| SECURITIES AND EXCHANGE | ) |
| COMMISSION, | ) |
| | ) |
| Defendant. | ) |

## RESPONSE OF THE SECURITIES AND EXCHANGE COMMISSION
## TO AGUIRRE'S STATEMENT OF SUPPLEMENTAL FACTS

Pursuant to Local Rules 7(h) and 56.1, the defendant United States Securities and Exchange Commission ("Commission") submits the following responses to the Supplemental Facts contained in Plaintiff's Response to Defendant's Statement of Material Facts Not in Genuine Dispute:

1)    **The SEC has unreasonably delayed the release of seven transcripts described in its Vaughn index**

> The Commission understands this to be a heading reflecting a legal conclusion, not a fact that Aguirre contends is not in genuine dispute.  In any event, the Commission denies that it has unreasonably delayed the release of any transcripts.  The Commission released the transcripts when the process provided for in its confidential treatment regulations was complete.  *See* 17 C.F.R. 200.83(e); Defendant's Status Report and Proposed Briefing Schedule at 2-3 (filed Aug. 8, 2007; Document 21) (describing confidential treatment process for documents at issue).

a)    The SEC created a report, which it calls a case closing report, explaining its decision to close its insider trading and market manipulation investigation of Pequot Capital Management without filing an action against anyone.  Plaintiff's memorandum in support of Plaintiff's cross-motion for summary judgment and opposition to Defendant's motion for summary judgment ("Plaintiff's memorandum") cited the SEC's case closing report at p. 3.

> The Commission denies that it prepared a document to explain its decision to close the investigation of Pequot Capital Management.  Commission staff prepared a document called a Case Closing Recommendation that explained staff's reasons for recommending closure of the investigation.  The document entitled "Case Closing Report" shows that an official with authority to close investigations closed the case.  *See* www.sec.gov/news/testimony/2006/ts120506lct.pdf.

b)    The SEC released its case closing report, dated November 30, 2006, to the public on approximately December 4, 2006.  Plaintiff's memorandum cites Director Thomsen's testimony, to which the case closing report was attached, before the Senate Judiciary Committee at p. 23.

> Admitted.

c)    The case closing report describes nine transcripts among other evidence as support for its decision to close its insider trading investigation of Pequot Capital Management without filing an action against anyone.  Plaintiff's memorandum cited the SEC case closing report at p. 8.

> The Commission denies that the Case Closing Report contains any descriptions of evidence or explains the basis for the decision to close the investigation.  The Case Closing Recommendation refers to more than nine witnesses and provides some limited information about the testimony from those witnesses.  *See* www.sec.gov/news/testimony/2006/ts120506lct.pdf.

2

d)    The SEC has released only two of the nine transcripts identified in the case
      closing report.  With respect to the seven transcripts that have not been released,
      the Vaughn index contains only this statement:  "being processed for CT."  See
      Defendant's Vaughn Index items 39, 40, 68, 69, and 260, attached as Defendant's
      Ex. 14 to Second Declaration of Melinda Hardy.

      The Commission has completed processing the confidential treatment

      requests for all the documents listed on its Vaughn index.  The

      Commission is withholding seven transcripts in their entirety under

      Exemption 3 of the FOIA.  See Third Declaration of Melinda Hardy

      ("Third Hardy Decl."), Exs. 1-4 (Jan. 14, 2007).

e)    Section 200.83 of Title 17 of the Code of Federal Regulations contemplates a
      timely processing by the SEC of request for confidential treatment.

      17 C.F.R. 200.83 does not place any time limits on the Commission's

      consideration of confidential treatment substantiations.  The only relevant

      passage, section 200.83(e)(3), provides, "All appeals taken under this

      section will be considered by the General Counsel as expeditiously as

      circumstances permit."  Although section 200.83 provides time limits

      applicable to confidential treatment requesters, section 200.83(i) provides,

      "[a]ny time limit under this section may be extended in the discretion of

      the Commission, the Commission's General Counsel, or the

      Commission's Freedom of Information Act Officer for good cause

      shown."

f)    Any reasonable time period for compliance with 17 CFR § 200.83 has expired.

      Denied.  See 17 C.F.R. 200.83(e)(3), (i) and Defendant's Status Report

      and Proposed Briefing Schedule at 2-3 (filed Aug. 8, 2007; Document 21).

3

2)    **The public interest in disclosure of the names in the two CSFB transcripts outweighs any privacy interest under Exemption 7(C) in redacting those names.**

The Commission understands this to be a heading reflecting a legal conclusion, not a fact that Aguirre contends is not in genuine dispute. In any event, the Commission denies that the public interest outweighs any privacy interest for the reasons stated in the Memorandum of the Securities and Exchange Commission in Opposition to Aguirre's Cross-Motion for Summary Judgment and Reply to Aguirre's Opposition to its Motion for Summary Judgment ("SEC Opposition"), Section II.B.

a)    The Senate Judiciary Committee and the Senate Finance Committee conducted an intensive investigation for more than one year, including the review of approximately 10,000 pages of documents, the taking of more than 30 interviews, and the holding of two Senate Committee on the Judiciary hearings, and the publication of its report, *The Firing of an SEC Attorney and the Investigation of Pequot Capital Management*. Plaintiff's memorandum cited the Senate Report at p. 5.

The Commission admits that the Senate Report was published and that it states that the Senate Committees on Finance and Judiciary conducted an "extensive joint investigation" and reviewed the matters listed in this fact. The Commission further admits that the Committees conducted an investigation. The Commission, however, does not know how many documents were reviewed or interviews were taken in that investigation.

b)    The New York Times has published approximately 20 articles, commentaries, or editorials dealing with the SEC's investigation of Pequot Capital Management. Plaintiff's declaration refers to the New York Times articles at p. 17.

The Commission admits that the New York Times has published several pieces relating to the Commission's investigation of Pequot.

4

c)      The Wall Street Journal has published about 20 articles, commentaries, or
        editorials dealing with this subject.  Plaintiff's declaration refers to The Wall
        Street Journal articles at p. 17.

        The Commission admits that the Wall Street Journal has published several

        pieces relating to the Commission's investigation of Pequot.

d)      Linda Thomsen, The Director of the Division of Enforcement, testified in her
        December 5, 2006, testimony before the Senate Judiciary Committee that
        the Commissioners approved the release of the SEC's case closing report to the
        public because of "public attention" to the SEC's handling of its investigation of
        Pequot Capital Management.  Plaintiff's memorandum cited Director Thomsen's
        testimony at p. 23.

        Ms. Thomsen stated as follows in her written testimony:  "Because of the

        public attention this case has received, the Commission has authorized the

        Division to make its closing memorandum available to the public, and it is

        attached to my testimony.  I think you will find it a useful summary of the

        many hours of hard work that went into this investigation."  *See*

        www.sec.gov/news/testimony/2006/ts120506lct.pdf.

e)      Hundreds of articles have been written in the electronic and print media over the
        past 18 months in connection with the SEC's handling of the Pequot investigation,
        in particular whether it gave John Mack preferential treatment, and Plaintiff's
        firing.  See Plaintiff's declaration at p. 16.

        The Commission admits that there have been many articles written over

        the past 18 months relating to the Commission's investigation of Pequot.

f)      The Senate Report focuses on whether the SEC gave preferential treatment to
        John Mack in connection with Pequot's trading in General Electric and Heller
        Financial and whether Plaintiff was fired for questioning that preferential
        treatment.  See Plaintiff's memorandum at footnote 3.

        The Senate Report speaks for itself.

g)      The allegation that the SEC gave favored or preferential treatment to John Mack
        would violate applicable federal regulations, adopted pursuant to federal code,

5

governing the conduct of the members and staff of the SEC.  Plaintiff's
memorandum cited the applicable federal regulations in footnote 52.

> This purported fact contains a legal conclusion.  Moreover, it is
>
> impossible to address that legal conclusion without more information
>
> about the precise "favored or preferential treatment" Mr. Mack is alleged
>
> to have received.

h)    SEC Chairman Christopher Cox stated that "the allegations of improper conduct
in this matter are utterly inconsistent with the mission and professionalism of the
agency…".  Plaintiff's memorandum cited Chairman Christopher Cox at p. 43.

> Admitted.

i)    The SEC denies it gave Mack preferential treatment by claiming it took the
testimony of those who could have informed Mack of the GE-Heller merger.
Plaintiff's memorandum cited the SEC claim at p. 26.

> The Commission admits it took testimony from two persons who were
>
> involved in recruiting Mack to work at CSFB but denies the remaining
>
> claims expressed and implied in this purported fact.

j)    The redacted portion of the CSFB transcripts will demonstrate the SEC took the
examinations of the wrong CSFB officials and has misstated core facts to the
public in the case closing report regarding the facts upon which it relied in
explaining its decision to close its investigation of John Mack in relation to
Pequot's trading in GE and Heller.  Plaintiff's memorandum at pp. 27-8.

> Denied.

k)    The names of the individuals, redacted from the CSFB transcripts, have been
disclosed in records released by the Senate.  Plaintiff's memorandum refers to the
Senate report and the CSFB transcripts at footnote 111.

> The Commission admits that some names redacted from the CSFB
>
> transcripts are contained in documents released by the Senate.  The

6

Commission denies that any of the names in footnote 111 of Plaintiff's

memorandum have been redacted from the CSFB transcripts.

3) **The public interest in disclosure of the Mack itinerary and calendar, to the extent it related to his contacts with Credit Suisse and CSFB officials, outweighs any privacy interest under Exemption 7(C) in withholding that information**

The Commission understands this to be a heading reflecting a legal

conclusion, not a fact that Aguirre contends is not in genuine dispute.  In

any event, the Commission denies that the public interest outweighs any

privacy interest for the reasons stated in the SEC Opposition, Section II.B.

a)    Plaintiff incorporates fact statements 2(a) through 2(i).

The Commission incorporates its responses to statements 2(a) through

2(i).

b)    The Mack calendar and itinerary will demonstrate the SEC took the examinations of the wrong CSFB officials and has misstated core facts to the public in its case closing report regarding the facts upon which it relied in explaining its decision to close its investigation of Mack in relation to Pequot's trading in GE and Heller. Plaintiff's memorandum refers to the Mack calendar and itinerary at p. 28.

Denied.

c)    The names of these third parties have been disclosed in records released by the Senate. Plaintiff's memorandum refers to the Senate report and the CSFB transcripts at footnote 111.

The Commission cannot respond because the fact statement does not

identify the "third parties" to which it refers.  The Commission denies that

any of the names in footnote 111 of Plaintiff's memorandum have been

redacted from the Mack calendars or itinerary.

4) **The public policy in releasing the names of Liban Jama and James Eichner and any senior Enforcement officials who worked in the Pequot investigation far outweighs the privacy interest in withholding those names.**

The Commission understands this to be a heading reflecting a legal conclusion, not a fact that Aguirre contends is not in genuine dispute.  In any event, the Commission denies that the public interest outweighs any privacy interest for the reasons stated in the SEC Opposition, Section II.B.

a) Plaintiff incorporates fact statements 2(a) through 2(i).

The Commission incorporates its responses to statements 2(a) through 2(i).

b) Plaintiff's memorandum at p. 30.

The Commission cannot respond because this statement does not contain any facts.

5) **The SEC should produce the original of Plaintiff's Enforcement Performance File.**

The Commission understands this to be a heading reflecting a legal conclusion, not a fact that Aguirre contends is not in genuine dispute.  In any event, the Commission denies that it has improperly withheld the documents Aguirre refers to as his Enforcement Performance File for the reasons stated in the SEC Opposition at 8.

a) Plaintiff's declaration paragraphs 10 through 29.

The Commission cannot respond because this statement does not contain any facts.

6) **The SEC has failed to conduct an adequate search for the records requested in requests 7 through 12 of Plaintiff's September 30, 2005, letter.**

The Commission understands this to be a heading reflecting a legal conclusion, not a fact that Aguirre contends is not in genuine dispute.  In

any event, the Commission denies that it has failed to conduct an adequate

search for any documents for the reasons stated in the SEC Opposition,

Section I.

a)    SEC has failed to describe in its moving papers how it conducted its search for
these records.

The Commission admits it has not provided a description of its search.

The Commission, however, denies the implication that it had an obligation

to provide such a description.  On August 9, 2007, the Court ordered

Aguirre to "identify the specific withholdings that he plans to contest,"

and in correspondence dated August 24, 2007, counsel for the

Commission asked counsel for Aguirre to notify the Commission of "any

additional issues you believe are raised by this case."  Third Hardy Decl.,

Ex. 5.  Aguirre did not raise concerns about the adequacy of the search in

response to those documents or otherwise raise that issue as one that the

Commission should address in its motion for summary judgment.

b)    The SEC has failed to release numerous records and also failed to describe those
records in its Vaughn index, which is further evidence of its inadequate search.
Plaintiff's memorandum at p. 42.

The Commission denies that it has withheld any documents responsive to

Aguirre's FOIA requests at issue in this case other than those listed on the

Vaughn Index or otherwise described in its papers supporting its motion

for summary judgment.

9

Respectfully submitted,

/s/ Melinda Hardy
MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5140
January 14, 2008                     (202) 772-9263 (fax)

10