# Exhibit 1

## to Third Hardy Declaration

*SEC v. Aguirre*, 06-cv-01260 (D.D.C.)



OFFICE OF THE
GENERAL COUNSEL

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

December 18, 2007

Audrey Strauss, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

Matt T. Morley, Esq.
Brian T. Sumner, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004

Re:    Confidential Treatment Request Appeals of Fried, Frank, Harris, Shriver &
       Jacobson LLP, Freedom of Information Act Request No. 06-00014-FOPA

Dear Ms. Strauss, Messrs. Morley and Sumner:

On behalf of the Commission, pursuant to delegated authority, I have considered your appeal from the Freedom of Information Act ("FOIA") Officer's determination to release portions of five testimony transcripts and exhibits accompanying three of those transcripts. The FOIA Officer's action resulted from FOIA Request No. 06-00014-FOPA, filed by Gary Aguirre. You have asserted that the transcripts and exhibits should be withheld from disclosure in their entirety pursuant to Exemptions 3, 4 and 7(C) of the FOIA. As discussed below, the decision of the FOIA Officer is affirmed in part and reversed in part, and your confidential treatment request is granted because the documents come within Exemption 3. In addition, Exemptions 4 and 7(C) protect the documents in part, as explained further below.

## I.    Exemption 3

Exemption 3 authorizes the withholding of matters "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. 552(b)(3). A statute comes within Exemption 3 if it satisfies just one of the three tests contained in the exemption. *Association of Retired R.R. Workers, Inc. v. U.S. R.R. Retirement Bd.*, 830 F.2d 331, 334 (D.C. Cir. 1987). Thus, if a statute satisfies the second part of subsection (B) by identifying "particular types of matters to be withheld," it comes within Exemption 3 even if it authorizes the agency to disclose information in certain circumstances. *See, e.g., Times Publishing Co. v. U.S. Dep't of Commerce*, 236 F.3d 1286 (11th Cir. 2001); *Medina-Hincapie v.*

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 2

*Dep't of State*, 700 F.2d 737 (D.C. Cir. 1983); *Iron and Sears v. Dann*, 606 F.2d 1215 (D.C. Cir. 1979).

      You argue that Section 210(b) of the Investment Advisers Act, 15 U.S.C. 80b-10(b), is an Exemption 3 statute and that all the investigative transcripts and exhibits can be withheld under Exemption 3. Section 210(b), in relevant part, provides:

> Subject to the provisions of subsections (c) and (d) of section 80b-9 of this title and section 78x(c) of this title, the Commission, or any member, officer, or employee thereof, shall not make public the fact that any examination or investigation under this subchapter is being conducted, or the results of or any facts ascertained during any such examination or investigation; and no member, officer, or employee of the Commission shall disclose to any person other than a member, officer, or employee of the Commission any information obtained as a result of any such examination or investigation except with the approval of the Commission.

Thus, Section 210(b) limits disclosure of two different categories of documents. The first clause of the statute refers to "the fact that any examination or investigation under this subchapter is being conducted, or the results of or any facts ascertained during any such examination or investigation." The second clause refers to "any information obtained as a result of any such examination or investigation."

      The second clause of Section 210(b) appears most applicable here as the transcripts and exhibits at issue contain information obtained in an investigation under the Investment Advisers Act. Thus, it is necessary to determine whether the second clause satisfies any of the three tests in Exemption 3. I have determined that it satisfies the "particular types" test in Exemption 3(B) because the clause prohibits disclosure of documents in two specific circumstances in which the Commission gathers information: investigations or examinations of investment advisers. Section 210(b) is also comparable to many other statutes that courts have found meet the "particular types" test in Exemption 3(B) even though they use "rather all-embracing language" to describe the protected class of documents. *Seymour v. Barabba*, 559 F.2d 806, 808 (D.C. Cir. 1977) (statute protecting "the information furnished under the provisions of this Title [federal census laws]" refers to a "particular type of matter to be withheld"). *See also Central Intelligence Agency v. Sims*, 471 U.S. 159, 167-68 (1985) (statute requiring CIA "to protect 'intelligence sources and methods,' clearly 'refers to particular types of matters'"); *Times Publishing*, 236 F.3d at 1289 (statute regarding "information obtained for the purpose of consideration of, or concerning, [export] license applications under this Act" is an Exemption 3 statute); *Medina-Hincapie*, 700 F.2d at 742 (statute regarding records "pertaining to the issuance or refusal of visas or permits to enter the United States" is an Exemption 3 statute); *Iron and Sears*, 606 F.2d at 1220 (statute regarding patent applications and information concerning them is

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 3

an Exemption 3 statute).

Therefore, I find that Exemption 3 protects all of the transcripts and exhibits at issue.

**II.     Exemption 7(C)**

**A.     Overview of Exemption 7(C)**

Exemption 7(C) protects "records or information compiled for law enforcement purposes" if their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(7)(C). Thus, if records are compiled for law enforcement purposes, FOIA does not require disclosure if disclosure could reasonably be expected to result in an "unwarranted invasion of personal privacy." That analysis requires a balancing of privacy interests and the public interest. *See, e.g., National Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) ("The term 'unwarranted' requires us to balance the family's privacy interest against the public interest in disclosure.").

Exemption 7(C) recognizes the stigma potentially associated with law enforcement investigations and affords witnesses, suspects, and investigators broad privacy rights. *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 862 (D.C. Cir. 1981); *see also Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (recognizing the "'strong interest' . . . 'in not being associated unwarrantedly with alleged criminal activity'"). The Supreme Court has held "as a categorical matter" that the release of law enforcement records containing information about a private citizen "can reasonably be expected to invade that citizen's privacy." *U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 780 (1989). The Court has gone on to state that "the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed." *Id.* at 774; *see also Carpenter v. Dep't of Justice*, 470 F.3d 434, 438 (1st Cir. 2006) ("The central purpose of the FOIA is to reveal government action, not to expose the actions of private third parties and their participation in law enforcement to the public."). Thus, Exemption 7(C) provides broad protection for the names of individuals and other identifying information in records compiled in a law enforcement file.

Courts have also recognized privacy interests in other matters about individuals including, for example, medical information, allegations of wrongdoing that were never prosecuted, and employment record and evaluation history. *See, e.g., Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990); *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981). However, "[i]nformation relating to business judgments and relationships does not qualify for exemption. . . . This is so even if disclosure might tarnish someone's professional reputation." *Washington Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100 (D.C. Cir. 1988);

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 4

*see also Center to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 981 F. Supp. 2d 20, 23-24 (D.D.C. 1997) (Exemption 7(C) does not apply to "[i]nformation relating to business judgments and relationships" when the information does not implicate any business actor in a crime.").

Privacy interests may exist even if some information related to the matter at issue has already been released. For example, in *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998), the D.C. Circuit held that, notwithstanding the fact that the press had reported that an Assistant United States Attorney had been investigated and punished, he retained a privacy interest "in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment" and that "official confirmation of what has been reported in the press and the disclosure of additional details could reasonably be expected to constitute an unwarranted invasion of . . . personal privacy." *Id.* at 949. However, where the specific information at issue is "freely available" to the public, there is not a privacy interest. *See Reporters Committee*, 489 U.S. at 763-64 (defining "private" as "intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public").

In balancing public and private interests, the public interest served by the release of information must be "the preservation of 'the citizens' right to be informed about what their government is up to.'" *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) (quoting *Reporters Comm.*, 489 U.S. at 773). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose; thus the public has no cognizable interest in the release of such information." *Id.* Names and identifying information rarely further that purpose. *See id.* ("The identity of one or two individual relatively low-level government wrongdoers, released in isolation, does not provide information about the agency's own conduct."). Courts that have balanced privacy interests and public interests have routinely recognized that agencies can withhold names and identifying information.[1] Courts have also recognized that where a FOIA requester seeks information about alleged government misconduct, the requester cannot rely on mere speculation to establish public interest. *Favish*, 541 U.S. at 174.

---

[1] *See, e.g., Safecard Services, Inc. v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (holding under Exemption 7(C) that usually names and addresses of private individuals in investigative files can be withheld); *National Assoc. of Retired Fed. Employees*, 879 F.2d at 875-79 (protecting names and addresses of federal retirees under Exemption 6); *American Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179, 192-93 (D.D.C. 2006) (protecting names and identifying data under Exemptions 6 and 7(C)); *Miller v. Dep't of the Navy*, 383 F. Supp. 2d 5, 13-15 (D.D.C. 2005) (protecting personal identifying information about investigators, the subject of the investigation, and witnesses in connection with an Inspector General report under Exemption 6); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 52-53 (D.D.C. 2003) (protecting names and identifying data under Exemptions 6 and 7(C)).

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 5

**B.     Application of the Foregoing Legal Principles**

There is no question that the transcripts and exhibits at issue here were compiled for law enforcement purposes. Therefore, I must determine what information is subject to a privacy interest and then, for that information, balance the relevant privacy and public interests to determine whether disclosure of the records could reasonably be expected to result in an "unwarranted invasion of personal privacy."

**1.     Privacy Interests**

In light of the law described above, I have made the following determinations about what information in the transcripts and exhibits are subject to a privacy interest.

**a.     Documents and Information Already Publicly Available**

Three of the transcripts at issue contain testimony from Arthur Samberg. Some pages of those transcripts have been made public in a report entitled "The Firing of an SEC Attorney and the Investigation of Pequot Capital Management" prepared by the minority staffs of the Senate Committees on Finance and on the Judiciary and released in August 2007 ("Senate Report").[2] Some additional transcript pages and some exhibits to the transcripts have been made public in the record of a December 5, 2006 hearing before the Senate Committee on the Judiciary.[3] Because the Senate Report and the December 5 hearing are, in the words of *Reporters Committee*, "freely available," were discussed in articles in major newspapers, and are recent, the pages that have been made public are not private within the meaning of Exemption 7(C) and consequently cannot be withheld under that exemption. The Senate Report contains pages 1-2, 7, 12, 14, 40, 43-44, 47-48, 64-68, 70, and 72 from Mr. Samberg's May 3, 2005 transcript and pages 1 and 66-96 from Mr. Samberg's June 7, 2005 transcript. The hearing record contains pages 98-99 and 135 l.9 to 138 l.4 from Mr. Samberg's June 7, 2005 transcript and exhibits 20, 23, and 27 from that testimony. The hearing record also contains portions of exhibits 103, 108, 109, 111, 112, 120, 121 and all of exhibits 113, 114, and 115 from Mr. Samberg's January 23, 2006 transcript.

The Senate Report also contains additional information from the Commission's investigation, including, among other things, facts relating to Mr. Samberg's role in purchasing and selling shares of Heller Financial and General Electric and relating to Mr. Samberg's

---

[2]  The report is at www.finance.senate.gov/sitepages/leg/LEG%202007/36960.pdf.

[3]  The record is at
http://frwebgate.access.gpo.gov/cgi-bin/useftp.cgi?IPaddress=162.140.64.184&filename=35458.
pdf&directory=/diska/wais/data/109_senate_hearings.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 6

friendship with John Mack. The Senate Report clearly reports that Commission staff investigated whether Mr. Mack had inside information; whether, if he had any such information, he passed it to Mr. Samberg; and whether Mr. Samberg traded on the basis of any information he received from Mr. Mack. *See, e.g.,* Senate Report at 15-16, 24-26, 41-44, 47 & Exhs. 1, 17, 19, 21, 22, 35, 55.[4] In light of these disclosures, Mr. Samberg no longer has a privacy interest we can protect in not being associated with a law enforcement matter or in the specific facts disclosed in the Senate Report. Although you have claimed that Mr. Samberg still has a privacy interest related to his reputation because the transcript contains "leading, speculative, and argumentative questions, including loaded questions that had no basis in fact" (Appeal at 14[5]), none of the questions you point to accuses Mr. Samberg of any violations of the law, and the transcripts do not indicate that the Commission was investigating any potential violations other than those described in the Senate Report. For these reasons, Exemption 7(C) does not provide a basis to withhold Mr. Samberg's identity, the focus of the Commission's investigation, or other matters specifically disclosed in the Senate Report.[6]

> **b.     Identities of Witnesses and Others that Have Not Been Made Public**

Two of the transcripts at issue contain testimony from persons whose names are not mentioned in any significant manner in the Senate Report and have not, based on our research, appeared in the publicity surrounding the Senate Report and the investigation that preceded it. Thus, those two persons have a privacy interest in their identity and in not being associated with a law enforcement investigation. I have determined that release of any significant substantive information from the transcripts could reveal the identity of these two persons and consequently, they have a privacy interest in the entire transcripts.

I have also determined that individuals who are either not mentioned at all in the Senate Report or mentioned only briefly have a privacy interest in not being identified and associated with a law enforcement investigation. That interest extends to the names and descriptions of

---

[4] Also, one former and two current members of the Commission's staff testified before the Senate Committee on the Judiciary and provided some information about the Pequot investigation on December 5, 2006. That testimony and other information provided by the staff members is in the hearing record.

[5] "Appeal" refers to your September 20, 2007 Submission on Behalf of Pequot Capital Management, Inc., Arthur J. Samberg, Individual D, and Individual E.

[6] Information in the Senate Report also prevents much of the information in the January 23, 2006 Samberg transcript from being deemed private. *See, e.g.,* Senate Report at 20-21, 28-29, 44-45 & Ex. 13.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 7

them and of their responsibilities that could lead to their identification.

        **c.**    **Information other than Identities and Association with Law Enforcement Investigation**

    Individuals have a privacy interest in other personal information such as medical information, complaints about their job performance, and personal finances. However, most of the information you seek to protect concerns business judgments and relationships. As explained above, that information is not recognized as information in which individuals have a privacy interest and cannot be withheld under Exemption 7(C). Thus, testimony regarding Pequot's business practices, policies, or structure; the securities Pequot purchased; investment strategies for Pequot; financial information about Pequot and its funds; or the witnesses' business relationships cannot be withheld under Exemption 7(C).

    **2.**    **Public Interest**

    For all the information identified above as being subject to a privacy interest, it is necessary to balance the privacy interest with the public interest in disclosure of the information. Mr. Aguirre has alleged that there is a public interest in disclosure of the information he seeks because he alleges that the records he seeks "will demonstrate that the most senior SEC officials violated these mandates [relating to impartiality in enforcement of the securities laws] by giving favored, special and thus unlawful treatment to an individual . . . who has powerful political connections, in an SEC investigation of significant importance to the nation's capital markets." Complaint ¶ 6, *Aguirre v. SEC*, No. 06-CV-1260 (D.D.C.). Assuming *arguendo* there is a public interest, that possible public interest does not outweigh any of the privacy interests I have found because the information involved does not pertain to whether Mr. Mack received any special treatment. Congress included transcripts and exhibits (or excerpts thereof) pertaining to whether Mr. Mack received special treatment in the Senate Report, and I have determined that it is not necessary to release any additional information in which individuals have a legitimate privacy interest. Thus, I find that in balancing the privacy interests identified above and the public interest, all private information should be withheld.

    In conclusion, I find that Exemption 7(C) protects the transcripts of the two witnesses other than Mr. Samberg in their entirety. I further find that the portions of the Samberg transcripts and exhibits attached hereto that are marked in yellow are being withheld under Exemption 7(C).[7]

---

    [7] The portions of those transcripts marked with brackets show the FOIA Officers redactions. As discussed below, the portions marked in pink are Exemption 4 redactions.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 8

## III.    Exemption 4

Exemption 4 authorizes agencies to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. 552(b)(4). Thus, the exemption applies to two types of information: (1) trade secrets and (2) other commercial or financial information. Exemption 4, however, does not apply to any information that is already publicly available. *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987).

### A.    Overview of Exemption 4

If documents contain trade secrets, they are exempt from disclosure, and no further analysis is necessary. *Public Citizen Health Research Group v. Food and Drug Admin.*, 704 F.2d 1280, 1286 (D.C. Cir. 1983). For purposes of FOIA, a trade secret is "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." *Id.* at 1288. That definition requires "a direct relationship between the information at issue and the productive process." *Id.*

If the documents at issue contain commercial or financial information but not trade secrets, an agency can withhold them only upon a showing of confidentiality. *Id.* at 1286. The terms "commercial" and "financial" "should be given their ordinary meanings"; the terms are not limited to "records that actually reveal basic commercial operations." *Id.* at 1290. "Information is commercial if it relates to commerce, trade, or profit." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir. 1987). If commercial or financial information is provided to an agency under compulsion, as the information at issue here was, it is deemed confidential "if disclosure would be likely either (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *McDonnell Douglas Corp. v. Nat'l Aeronautics and Space Admin.*, 180 F.3d 303, 305 (D.C. Cir. 1999).

To prove substantial harm to a competitive position, it is not necessary to provide complex economic analysis or to establish actual harm. *Nat'l Parks and Conservation Assoc. v. Kleppe*, 547 F.2d 673, 679-81, 683 (D.C. Cir. 1976). However, "[c]onclusory and generalized allegations are indeed unacceptable as a means of sustaining the burden of nondisclosure under the FOIA, since such allegations necessarily elude the beneficial scrutiny of adversary proceedings, prevent adequate appellate review and generally frustrate the fair assertion of rights under the Act." *Id.* at 680. Also, the relevant harm is "harm flowing from the affirmative use of proprietary information *by competitors*," not "any injury to competitive position, as might flow from customer or employee disgruntlement or from the embarrassing publicity attendant upon public revelations." *Public Citizen*, 704 F.2d at 1291 n.30.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 9

    In considering whether disclosure would impair the government's ability to obtain necessary information, Courts have recognized that the impairment prong may apply even when a person was required to submit the information at issue because potential disclosure under the FOIA could affect the quality of information provided in the future. *See, e.g., Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 878 (D.C. Cir. 1992). To decide whether an impairment is sufficient to warrant withholding information, it is necessary to balance the impairment and the public interest in the information: "A minor impairment cannot overcome the disclosure mandate of FOIA. Rather, the question must be whether the impairment is significant enough to justify withholding the information." *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 690 F.2d 252, 269 (D.C. Cir. 1982). In weighing the public interest, the relevant interest is whether "through disclosure 'the public would learn something directly about the workings of the *Government*.'" *Public Citizen Health Research Group v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) (emphasis in original) (quoting *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).[8] Thus, "the public interest side of the balance is not a function of the identity of the requester . . . or of any potential negative consequences disclosure may have for the public . . . nor likewise of any collateral benefits of disclosure." *Id.* (citations omitted).

    Although competitive harm and impairment of government functions are the most common ways to establish confidentiality, courts have recognized that they are not the only ways and, in particular, have recognized that Exemption 4 may protect the government's interest in administrative efficiency and effectiveness. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879 (D.C. Cir. 1992) (*en banc*); *9 to 5 Organization for Women Office Workers v. Board of Governors of the Federal Reserve System*, 721 F.2d 1, 9-10 (1st Cir. 1983).

    If information satisfies the requirements of Exemption 4, then not only does the FOIA allow an agency to withhold the information, but the Trade Secrets Act, 18 U.S.C. 1905,[9] which

─────────────────

    [8] Although *Public Citizen* concerns the competitive harm prong of the confidentiality test, it is equally applicable to the impairment prong. *See Public Citizen Health Research Group v. National Institutes of Health*, 209 F. Supp. 2d 37, 46 (D.D.C. 2002) (applying balancing to both prongs of test).

    [9] The Trade Secrets Act provides:

        Whoever, being an officer or employee of the United States or of any department or agency thereof . . . publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 10

is at least co-extensive with Exemption 4, generally requires that an agency withhold the
information. *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1151-52 (D.C. Cir. 1987). The
Trade Secrets Act, however, does not prohibit disclosure under the FOIA of information that is
not protected by Exemption 4 (or any other exemption) because the Trade Secrets Act allows
authorized disclosure of the information to which it applies, and for non-exempt information, the
FOIA is a statute that authorizes disclosure. *Id.* at 1152 n.139.

**B.      Application of the Foregoing Legal Principles**

**1.      Publicly Available Information**

Because Exemption 4 cannot apply to information in the public domain, I have
determined that the Commission cannot withhold the pages of Mr. Samberg's transcripts that the
Senate has already released. The Senate has released pages 1-2, 7, 12, 14, 40, 43-44, 47-48, 64-
68, 70, and 72 from the May 3, 2005 transcript. The Senate has released pages 1, 66-96, 98-99,
and 135 1.9 to 138 1.4 from the June 7, 2005 transcript.

**2.      Trade Secrets**

You have identified several categories of information that you contend are protected
under Exemption 4 and have indicated that large parts of the transcripts and exhibits should be
withheld. Indeed, you contend that everything you seek to withhold under Exemption 4 "must be
protected as trade secrets." Appeal at 37. Despite that broad claim, you do not show that the
information comes within the definition of "trade secrets" (quoted above) that courts have
adopted under the FOIA because none of the information at issue concerns the productive
process and most of the information is so vague and general as to bear no resemblance
whatsoever to a trade secret.

**3.      Commercial and Financial Information**

I agree that the type of information you seek to protect under Exemption 4 is commercial
or financial information that can come within Exemption 4 if it is confidential. Thus, for the
pages that have not already been made publicly available, it is necessary to determine whether it

_____

> or relates to the trade secrets, processes, operations, style of work, or apparatus, or
> to the identity, confidential statistical data, amount or source of any income,
> profits, losses, or expenditures of any person, firm, partnership, corporation, or
> association; or permits any income return or copy thereof or any book containing
> any abstract or particulars thereof to be seen or examined by any person except as
> provided by law; shall be fined under this title, or imprisoned not more than one
> year, or both; and shall be removed from office or employment.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 11

is confidential either because it would cause substantial harm to Pequot's competitive position or because it would impair the government's ability to obtain necessary information in the future. You contend that both prongs of the test for evaluating confidentiality are satisfied.

        a.     **Substantial Competitive Harm**

You contend that disclosure of the information you have identified would cause substantial competitive harm. You, however, provide only limited explanation of the harm that would arise. You state only that disclosure of the transcripts and exhibits would cause harm "by enabling competitors to reconstruct broader understandings of Pequot's investment strategies and internal operations" (Appeal at 32) and that Pequot's competitors could use the information in the documents "to develop a more comprehensive picture of how Pequot has been so successful over the years" (Appeal at 35). You do not provide any specific explanations of what competitors would do with any of the information you seek to protect.[10] Thus, you do not explain how competitors would use "broader understandings of Pequot's investment strategies and internal operations" or "a more comprehensive picture of how Pequot has been so successful" to cause substantial harm to Pequot's competitive position.

I would further note that any explanation of competitive harm would likely need to address not just how competitors could benefit from a broad understanding of Pequot's strategies and processes but how disclosure of specific information would cause competitive harm. For example, with respect to each of the examples in footnote 22 of your Appeal, I cannot determine how their disclosure would cause competitive harm. You have not shown that the information in those examples is known only to Pequot or reveals Pequot's strategies. It is far from evident that

---

    [10] The cases that you cite in support of your appeal consistently show that the person seeking to protect commercial information provided the agency with a clear and detailed explanation of competitive harm. *See, e.g., National Parks and Conservation Assoc. v. Kleppe,* 547 F.2d 673, 684 (D.C. Cir. 1976) ("Selective pricing, market concentration, expansion plans and possible take-over bids would be facilitated by knowledge of the financial information the Association seeks. Suppliers, contractors, labor unions and creditors, too, could use such information to bargain for higher prices, wages or interest rates, while the concessioner's unregulated competitors would not be similarly exposed."); *Judicial Watch v. Export-Import Bank,* 108 F. Supp. 2d 19, 31 (D.D.C. 2000) ("This information, combined with the total quantity of goods specified for that shipment, would allow a competitor to determine the prices of the goods, which could enable the competition to offer a lower bid for the contract than that being offered by the insured."); *BDM Corp. v. Small Business Admin.,* No. 80-1180, 1980 U.S. Dist. LEXIS 17833, at *5 (D.D.C. 1980) ("Requiring disclosure of such information . . . could seriously jeopardize Arcata's competitive position in terms of its professional status, credit ratings and ability to compete for contracts on an equal basis with other business firms in the future.").

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 12

details of an individual transaction that occurred years ago would reveal confidential strategies
and processes.

Your reference to a "mosaic" approach (Appeal at 34) does not overcome Pequot's failure
to establish information regarding competitive harm. While you correctly state that it is
necessary to consider all information that may be available in deciding the impact of disclosure,
you have not identified any publicly available information that may impact our analysis and have
not explained the impact of viewing publicly available information and the information you seek
to protect together. In contrast, in the case on which you rely, the court specifically identified the
publicly available information that could be reviewed in connection with the information at issue
in the case and explained how competitors could use the information together to take actions like
"arrogating another company's exclusive source of supply." *Gilda Industries v. United States
Customs & Border Protection Bureau*, 457 F. Supp. 2d 6, 11 (D.D.C. 2006).

Because you have not explained how disclosure is likely to result in competitive harm, we
cannot withhold any information on that basis.

   **b.**  **Impairment of the Commission's Ability to Obtain Necessary
      Information in the Future**

You have contended that the impairment prong of the test for demonstrating
confidentiality is established for all the information you seek to protect. I have determined that
the extensive publicity regarding the Commission's investigation of Pequot is likely to make
persons from whom the Commission seeks information in its investigations more reluctant to be
forthcoming in responding to Commission subpoenas if they see that the Commission cannot
protect detailed commercial and financial information from disclosure under the FOIA. This
danger is especially palpable in connection with testimony subpoenas where witnesses can often
choose to answer questions in general terms and make it difficult for staff to learn details that
may assist them in fully understanding the business and circumstances they are investigating.
Small details that may not be material in litigation may nonetheless be necessary as the staff
determines the significance of information it obtains and makes decisions about what further
information to seek.

I find that redactions in the transcripts are proper where the witnesses provide detailed
information about commercial or financial matters. Failure to redact that information could
impair the quality of testimony in investigations. I also find that there is no public interest in
disclosing those details as they do not reveal anything about the workings of the Commission.
That is, those details do not pertain to matters relating to whether Mr. Mack received any special
treatment. As I stated above, Congress has already released the information that it has deemed
appropriate to disclose, and I have determined it is not necessary to make disclosures beyond
those made by Congress.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 13

In contrast, withholding the exhibits to the transcripts is not necessary because you have not provided any basis upon which I could conclude that anything but that all the exhibits were pre-existing documents that were provided pursuant to a valid subpoena and that the exhibits came squarely within the terms of subpoenas. Therefore, producing the exhibits in response to a FOIA request is not likely to impair the quality of information the Commission obtains in the future.

The information withheld under the impairment prong could also be withheld to protect administrative efficiency and effectiveness. If witnesses are not forthcoming with details in testimony, taking testimony becomes a more burdensome process because investigators will face even more reluctance than they already face in their efforts to obtain information and if they do not obtain details that may help them understand all aspects of the information they receive, their investigations may be longer and less efficient.

In conclusion, I find that the portions of the transcripts attached hereto that are marked in pink are being withheld under Exemption 4. I find that nothing in the exhibits to Mr. Samberg's transcripts can be withheld under Exemption 4.

## IV.    Documents for Which the FOIA Officer Granted Confidential Treatment

In light of my decisions above, I have reviewed the FOIA Officer's decision to withhold other documents for which you had requested confidential treatment to determine whether the FOIA Officer's decisions are consistent with the conclusions reached here. I have determined that all of the documents for which you have requested confidential treatment can be withheld in their entirety under Exemption 3. However, I have also determined that some documents that the FOIA Office determined could be withheld in their entirety under Exemptions 4 and 7(C) can only be withheld in part under Exemption 7(C). Those documents, which were used as exhibits in testimony Commission staff took from Mr. Mack, have the following bates numbers: SEC 3742, SEC 3759-63, SEC 3764, SEC 3766-67, SEC 3768, SEC 3769, and SEC 3770. While names, personal identifying information, phone numbers, and e-mail addresses can be redacted under Exemption 7(C) of the FOIA if they have not already been made public,[11] the remaining portions of the documents do not come within any exemption. These documents are attached hereto and are marked to show the information that can be redacted under Exemption 7(C). In reviewing these documents, I have considered the arguments contained in your Appeal. If, however, these documents raise any issues that were not in your Appeal, please notify me of those issues within ten calendar days.

---

[11] The Senate Report contains all of SEC 3742 and part of SEC 3764. The record of the December 5, 2006 hearing before the Senate Judiciary Committee contains part of SEC 3768 and all of SEC 3770.

Ms. Strauss, Messrs. Morley and Sumner
December 14, 2007
Page 14

## CONCLUSION

For the reasons explained above, the decision of the FOIA Officer is affirmed in part and reversed in part, and your confidential treatment request is granted.[12]  Because the documents at issue in this appeal are also at issue in Mr. Aguirre's ongoing FOIA litigation against the Commission, it may be necessary for you to provide declarations to support the Commission's decision to withhold documents.  If you do not provide necessary declarations or any other support the Commission may require, the Commission could be required to abandon reliance on some positions adopted above.  If you have any questions regarding this determination, please contact Melinda Hardy (202-551-5149) or Noelle Frangipane (202-551-5142).

For the Commission
by delegated authority,

Richard M. Humes
Associate General Counsel

Enclosures

cc (w/o enclosures):    Gary Aguirre
                        Scott Hodes

_____

[12]  I have considered all of your contentions.  I have rejected or sustained them to the extent that they are inconsistent or in accord with the views expressed in this decision.