# Exhibit 35

## to Second Aguirre Declaration

*Aguirre v. SEC*, 06-cv-01260 (D.D.C.)

Contributions of Gary Aguirre to Staff Investigations and Litigation

*In the Matter of Trading Certain Securities (HO 9818)*
I was assigned this matter on September 9, 2004, two days after I started with the Commission. It was then titled "Trading in the Securities of Elite Information Group, Inc and focused on trading by Pequot Capital Management ("PCM") in Elite's common stock shortly before its acquisition in 2003. My contributions are best summarized by describing separately the steps I took before and after the Commission issued its formal order on January 6, 2005.

*Pre-formal order* During the period from September 9, 2004, through January 6, 2005, when the Commission issued its formal order, I took the following steps to advance the investigation:
1) Obtained and reviewed files from OCIE relating to its 2003 examination of Pequot Capital Management ("PCM") and documents generated during the Commissions 2002 hedge fund study relating to PCM;
2) Obtained and studied the PCM trade blotter for the period of August 1, 2002, through July 31, 2003;
3) Obtained copies of thirteen SRO referrals relating to PCM's timely trading in advance of public announcements;
4) Interviewed SRO staff members regarding their referrals of PCM trading matters to the Division of Enforcement, including meetings and numerous discussions with staff of the New York Stock Exchange regarding trading by PCM specifically and hedge funds generally;
5) Obtained chronologies and other information from 1) the issuers whose securities had been timely traded by PCM and 2) other key parties;
6) Obtained and studied documents produced by PCM pursuant to a our request for information, including PCM's trade blotter covering trading activity from January 1, 2001, through November 30, 2004;
7) Studied the documents obtained from Lexis-Nexis and other sources regarding the history of PCM and its principals;
8) Discussed the matter on several occasions with the David Essseks of the Office of the United States Attorney for the Southern District of New York;
9) Developed the factual and legal theory for including possible violations of Section 204A of the Investment Advisers Act of 1940 in the formal order memorandum;
10) Drafted a formal order memorandum and proposed formal order that was submitted to the Commission on December 17, 2004;

*Post formal order* Since the issuance of the formal order, I have served subpoenas on forty four entities or individuals, including 18 individuals affiliated with PCM. As a consequence, staff now has a database of approximately 3.8 million e-mails and other documents relating to PCM trading. I have also taken testimony from the

following individuals:
1) The CEO and CFO of Blue Coat Systems, Inc ("Blue Coat");
2) PCM's CEO in two sessions;
3) PCM's Chief Technology Officer;
4) PCM's Compliance Officer;
5) One of PCM's portfolio managers;
6) Three employees of On Site E-Discovery regarding PCM's e-mail production.

My contributions to this investigation include the following results:
1) The production of approximately 3.8 million documents relevant to this investigation;
2) Evidence of possible insider trading that produced $18.5 million in profits by PCM's CEO in connection with the acquisition of by General Electric of Heller Financial;
3) Interest by the United States Attorney of the Southern District of New York in possible criminal violations by PCM's CEO in connection with two separate insider trading matters;
4) Evidence of insider trading by another PCM portfolio manager, Stephen Orlov, in the securities of Blue Coat.

Additionally, under the guidance of my branch chief, I am handling the day to day matters that arise in this case, including all contacts by phone or letter with approximately fifty attorneys whose law firms or general counsel offices represent the parties affected by this investigation.

***Fannie Mae Investigation*** (HO 9729) My work on this matter related to the FAS 91 issues, in particular how Fannie Mae used "catch ups" as a means of smoothing its earnings flow. After obtaining guidance from Peter Rosario regarding FAS 91, and studying its principles, I conducted searches on Iconect and eventually found the Fannie Mae forms containing the formula that Fannie used each quarter in smoothing its earnings. I prepared an Excel worksheet summarizing my work as well as a memo ("Counting the cookies in the FAS 91 jar?") that was circulated among staff when I was transferred to Mark Kreitman's section.

***SEC v. Lucent Technologies Inc.*** My involvement was limited to assisting Trial Counsel in the preparation of a memorandum of points and authorities in response to a Rule 12(b)(6) motion.

***General Electric ("GE")-Intrumentarium FCPA Internal Investigation*** I was the staff attorney on this matter from September 24, 2004, through January 18, 2005, when I was transferred to Mark Kreitam's section. I evaluated and critiqued the internal investigation conducted by O'Melveny & Meyers of possible violations of the FCPA by GE and one of its subsidiaries in connection with medical equipment that was provided by the GE subsidiary to the Government of Costa Rica.