# Exhibit 39

## to Second Aguirre Declaration

*Aguirre v. SEC*, 06-cv-01260 (D.D.C.)

**Privileged & Confidential Attorney Client Material, Attorney Work Product & Law Enforcement Privileged Material**

**Memorandum**

TO:     Files

FROM:   Walter G. Ricciardi, Deputy Director, Division of Enforcement   *WR*

RE:     Status of Pequot Capital Management Investigation

DATE:   June 15, 2006

In order to ascertain the current status of the Enforcement investigation into possible insider trading by Pequot Capital Management, I interviewed the Enforcement staff responsible for the investigation: Mark Kreitman, the Assistant Director, Robert Hanson, the Branch Chief, and James Eichner, the Senior Counsel. Prior to May 24, 2006, I had no involvement in any aspect of this investigation. Prior to October 2005, my only role at the Commission was as the District Administrator of the Boston office, and I was not in the chain of command with regard to this investigation.

The staff informed me that Pequot Capital Management is a large hedge fund and is run by Art Samberg. According to the staff, there are two components of the investigation that appear to involve possible insider trading.

First, in 2001 Pequot purchased approximately $44 million in Heller Financial stock and sold short approximately $37 million in General Electric stock shortly before a public announcement that GE would acquire Heller. The staff told me that they have taken the testimony of Mr. Samberg and have identified numerous individuals who may have had information regarding the acquisition prior to its public announcement and may have been in communication with Mr. Samberg prior to Pequot's transactions.

Second, in April of 2001, Pequot invested in Microsoft shortly before a favorable announcement. The staff informed me that Pequot agreed to hire an individual from Microsoft shortly before the investment, and the individual stayed in touch with his Microsoft colleagues after he joined Pequot. After Pequot invested in Microsoft, good news was announced, and its stock increased in value, Mr. Samberg sent an email message to the former Microsoft employee complimenting him on his performance. The staff is currently spending its time on this aspect of the investigation. In addition, the staff met in March with counsel for Pequot and Mr. Samberg. Their counsel contends that information regarding the Microsoft developments were out in the market place. The staff obtained the testimony on Thursday, June 1 from two Goldman Sachs employees with regard to the Pequot investment in Microsoft.

I asked the staff whether there are any current plans to take the testimony of John Mack. The staff indicated that they have no current plans to take Mr. Mack's testimony. Instead, the

staff plans to concentrate their resources on more promising leads. The staff explained to me that Mr. Mack and Mr. Samberg are very good friends, and Mr. Mack is an investor in Pequot. Mr. Mack joined CS First Boston shortly after Pequot began purchasing stock in Heller, and CSFB advised on the deal. Mr. Mack spoke to Mr. Samberg on the Friday before the Monday when Pequot purchased Heller stock, but Mr. Mack and Mr. Samberg are "buddies" and communicate frequently. The staff indicated that they have received approximately 4-5 million email messages related to the investigation, and there is no further evidence pointing to Mr. Mack as a possible source of the information to Mr. Sandberg. In addition, there is no evidence that Mr. Mack had notice of the transaction at the time Pequot began purchasing the shares of Heller. The staff expressed their belief that it would be premature to take Mr. Mack's testimony at this time because they do not have any evidence to confront him with that suggests he passed confidential information to Mr. Samberg, and the staff would prefer "to have their ducks in a row" and not "go in and wing it."