# Exhibit 45

## to Second Aguirre Declaration

*Aguirre v. SEC*, 06-cv-01260 (D.D.C.)

From: Aguirre, Gary J.
Sent: Monday, May 09, 2005 4:54 PM
To: Florschutz, Lesley
Cc: Kreitman, Mark J.; Hanson, Robert
Subject: Request for Contract Paralegal

Hi Leslie:

By this e-mail, I request that a contract paralegal be appointed to this matter. I summarize below the multiple factors which I believe justify such action. In this matter, Staff is investigating 18 possible insider trading matters--all referred by SROs after they conducted their own investigations. The trading under investigation was done by one of the largest hedge funds in the US. The case is evolving into one of the largest insider trading investigations in recent years.

The volume of electronic and hard copy documents being produced in this matter ranks as one of the largest in recent Commission history. I have currently subpoenaed electronic and hard copy production from 21 parties to the investigation. Cumulatively, they have produced approximately one million hard copy and electronic pages. At this point, I expect over four million documents to be produced in this matter. Those documents must be reviewed and organized to be a factor in this investigation.

In its letter of April 29 (attached), the law firm representing the hedge fund, just one party to the investigation, states that it is now producing 80,000 electronic records and 300,000 pages per week. The letter goes on to state that it has 5 partners, 15 associates, 4 paralegals and 35 contract attorneys working on this matter, a total of 59 attorneys and paralegals from one law firm. According to the letter, the contract attorneys are working 6 days a week, 10 hours a day reviewing documents.

In addition to the law firm representing the hedge fund, there are 6 other major law firms representing the hedge fund's employees. All of these law firms have produced or are in the process of producing voluminous additional electronic and hard copy documents. Each of the law firms has several attorneys and, we believe, additional paralegals working on this matter.

In addition to the hedge fund and its employees, there are 17 other parties producing documents. These parties include some of the largest corporations, e.g. General Electric, in the US and are naturally represented by some of the largest law firms. Last week alone, I received 12 boxes of documents and 24 CDs of electronic documents, over 100,000 documents. I was unable to review these documents since I was in New York taking testimony. Further, almost all are "rolling productions" pursuant to currently outstanding subpoenas and thus the document production will continue during the next 3 months. Over the next 10 days, I will be issuing additional subpoenas to new parties calling for the production of documents. Hence, the document production per week will likely increase.

As with other insider trading cases, it is necessary to establish contact between the suspected tippers and tippees. Finding telephone contacts at critical dates and times is one of the traditional ways of establishing the link. In this case, we are dealing with 21 institutions and thus the task of reviewing phone records is an enormous one.

In addition to the above factors, the organization of documents in this matter is critical because I am working with staff members outside of my branch and outside the Division of Enforcement, which include OEA, OC, IM, IT and Market Surveillance. Other staff members must have access to these documents and hence they must be organized in a way that they are accessible to others.

I am the only full time staff member assigned by my AD to this matter. I have requested the assistance of our assigned paralegal, but she is backlogged with other matters. A senior staff member from a different section of Enforcement has provided some assistance with document review, but he will not be available in two months. As of today, I understand another attorney will be working with me on this matter.

My other responsibilities in the case prevent me from dedicating my full time to the review of documents. Among these responsibilities are the following:

- initiating and responding to all correspondence, including investigative correspondence, with the 24 law firms involved in this matter;
- preparing for and taking the numerous testimonies of the employees of the parties to this investigation;
- working with our IT staff to correct the frequent deficiencies in the electronic data submitted by the parties to this investigation;
- preparing status reports to my superiors at the Commission;
- communicating with and coordinating the investigation with staff members from other offices and divisions of the Commission, including Market Surveillance, OEA, IM, OC and IT.

Time period: I would expect the time period to be approximately 4 months. We would of course prefer that someone begin as soon as possible. We expect that the voluminous hard copy and electronic document production will continue over the next 3 months, and it would likely take an additional month to organize and review those documents after the last delivery.

Thank you for considering this request.

Gary J. Aguirre
Senior Counsel
Division of Enforcement
Securities and Exchange Commission
Phone: ▮▮▮▮▮▮
Fax: ▮▮▮▮▮▮
mailto: ▮▮▮▮▮▮