UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GARY AGUIRRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06-cv-01260-ESH |
| ) | |
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**MOTION OF THE SECURITIES AND EXCHANGE COMMISSION
FOR LEAVE TO FILE SURREPLY TO AGUIRRE'S REPLY
SUPPORTING HIS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(d), the defendant Securities and Exchange Commission ("Commission") hereby respectfully requests leave to file the accompanying surreply to Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Aguirre Reply"), filed March 24, 2008. Aguirre, through counsel, opposes this motion.

In support of its motion, the Commission notes that the Aguirre Reply raises new arguments.[1] As Aguirre anticipated in requesting the briefing schedule the Court accepted, the

---

[1] *See Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (C.A.D.C. 2003) ("The district court routinely grants [motions for leave to file surreply] when a party is 'unable to contest matters presented to the court for the first time' in the last scheduled pleading."), *citing Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C. 2001); *see also U.S. ex rel. Purcell v. MWI Corp.*, 520 F. Supp. 2d 158, 166-67 (D.D.C. 2007) (Considering government's surreply appropriate where defendant's reply presents new issue).

Commission was not able to raise issues relating to documents subject to confidential treatment appeals until it filed its opposition to Aguirre's summary judgment motion. *See* Plaintiff's Status Report and Proposed Briefing Schedule at 2 (Aug. 8, 2007) ("The SEC's argument could easily be briefed as part of its opposition to Plaintiff's summary judgment motion."). It is appropriate to allow the Commission to file a reply relating to issues it was not able to raise earlier. Allowing this surreply is entirely consistent with granting Aguirre's request for 20 additional pages for his reply brief.

The Commission's short surreply would address three issues. The first concerns plaintiff's allegations that the Commission's assertion of Exemption 3 of the FOIA, 5 U.S.C. 552(b)(3), is procedurally, legally and factually flawed. The second concerns his mischaracterization of the purpose of withholding information under Exemption 4 of the FOIA, 5 U.S.C. 552(b)(4). Finally, the Commission's surreply briefly addresses plaintiff's mistaken conflation of two separate issues related to the adequacy of the Commission's search for records.

For the foregoing reasons, the Commission respectfully requests that it be permitted to file its response to plaintiff's reply brief. A proposed order is attached.

Respectfully submitted,

  /s/ Melinda Hardy

MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission

100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5140
(202) 772-9263 (fax)

March 31, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
)
GARY AGUIRRE,                      )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   Case No.  1:06-cv-01260-ESH
                                   )
SECURITIES AND EXCHANGE            )
COMMISSION,                        )
                                   )
        Defendant.                 )
_____)

**SURREPLY OF THE SECURITIES AND EXCHANGE COMMISSION
TO AGUIRRE'S REPLY SUPPORTING HIS MOTION FOR SUMMARY JUDGMENT**

The Securities and Exchange Commission ("Commission") files this memorandum in further support of its motion for summary judgment and in opposition to plaintiff Gary Aguirre's cross-motion for summary judgment.  This surreply addresses two issues that Aguirre addressed for the first time in his March 24, 2008 memorandum entitled Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Aguirre Reply").  It also briefly addresses issues related to the adequacy of the Commission's search for records since the Aguirre Reply confuses the issues before this Court by improperly conflating two separate issues.

**I.    The Commission Is Properly Withholding Information it Obtained as a Result of an Investigation under the Investment Advisers Act under Exemption 3.**

As the Commission explained in the Memorandum of the Securities and Exchange Commission in Opposition to Aguirre's Cross-Motion for Summary Judgment and Reply to

Aguirre's Opposition to its Motion for Summary Judgment ("SEC Opposition"), the Commission determined in response to appeals in the confidential treatment process that it could withhold documents from the Pequot investigation under Exemption 3 of the FOIA, 5 U.S.C. 552(b)(3). Aguirre's contention that the Commission's position is procedurally, legally, and factually flawed is meritless.

The Commission raised Exemption 3 properly and in a timely manner because it notified Aguirre of its decisions in the confidential treatment appeals when they were issued and shortly thereafter presented the issue in the SEC Opposition. Moreover, in its Opening Memorandum (at 7), the Commission explained that it could not address any of the documents subject to the confidential treatment process until the appeals were complete. Although the Commission had sought a briefing schedule that would allow it to resolve the confidential treatment appeals before filing its summary judgment brief, Aguirre rejected such a schedule. *See* Plaintiff's Status Report and Proposed Briefing Schedule at 2 (Aug. 8, 2007) ("The SEC's argument could easily be briefed as part of its opposition to Plaintiff's summary judgment motion.").

The Commission's Vaughn Index, filed with the Commission's Opening Memorandum, properly reflects the Commission's determinations. It notes the documents for which confidential treatment was pending, and the SEC Opposition (at 9-10) provides an updated index showing which documents (or portions of documents) are withheld under Exemption 3.

While it is true that the Commission did not file a new statement of material facts relating to the Exemption 3 claim, Aguirre has not contended that the absence of such a statement has caused any confusion or has in any way affected his ability to address the issues – and he has addressed all the facts raised by the Commission's Exemption 3 decision. Nonetheless to assure

the record is clear, a supplemental statement of material facts is attached.

In addition to following appropriate procedures, the Commission has properly determined that Section 210(b) of the Investment Advisers Act is an Exemption 3 statute because it identifies "particular types of matters to be withheld." In its Opposition (at 10-11), the Commission, relying on a case from the D.C. Circuit, explained that a statute comes within Exemption 3 if it satisfies just one of the three tests contained in Exemption 3. Thus, if a statute identifies "particular types of matters to be withheld," as required by one prong of Exemption 3(B), the statute does not need to satisfy Exemption 3(A) or the prong of Exemption 3(B) that applies to statutes that "establish[] particular criteria for withholding." *Chong v. U.S. Drug Enf. Admin.*, 929 F.2d 729, 733, 734 (D.C. Cir. 1991) ("Because subsection (B)'s limiting conditions are phrased in the disjunctive, a statute need satisfy only one of the cited conditions to qualify under Exemption 3"); *Association of Retired R.R. Workers v. U.S. Railroad Retirement Bd.*, 830 F.2d 331, 334 (D.C. Cir. 1987) ("Subsection (B) is in turn divided into two disjunctive parts"); *Public Citizen v. Mineta*, 444 F. Supp. 2d 12, 16 (D.D.C. 2006) ("there are three possible ways for a statute to qualify under Exemption 3, although having been listed in the disjunctive, it is only required that a statute satisfy one condition to qualify under Exemption 3").[2]

Although binding precedent that the Commission cited makes clear that statutes that identify "particular types of matters to be withheld" come within Exemption 3(B) even if they do not provide criteria governing when an agency should withhold information, Aguirre bases his

---

[2]The Supreme Court has not expressly addressed this issue, but in deciding that a statute was an Exemption 3 statute, it said simply that the statute "clearly 'refers to particular types of matters,' 5 U.S.C. 552(b)(3)(B), and thus qualifies as a withholding statute under Exemption 3." *CIA v. Sims*, 471 U.S. 159, 167 (1985). The Court did not address whether the statute at issue "establishes particular criteria for withholding."

argument that Section 210(b) is not an Exemption 3 statute on a case from the Ninth Circuit that reaches a contrary conclusion. In *Church of Scientology of California v. U.S. Postal Service*, 633 F.2d 1327, 1330 (9th Cir. 1980), the government claimed that the statute at issue identified "particular types of matters to be withheld." The Ninth Circuit said that to address that claim "a court must analyze, as it does under subsection (A), the amount of discretion left to the agency." *Id.*[3] The Ninth Circuit then said that the statute "permits the Postal Service total discretion to give or restrict any or all of its investigatory files. Thus, it is of no moment that [the statute] narrows the range of documents to investigatory files 'complied for law enforcement purposes.'" *Id.* at 1333. Because the Ninth Circuit found it irrelevant that the statute identified "particular types of matters to be withheld" and focused only on the issue of discretion, its decision is inconsistent with the law in this circuit and is not controlling in this case.

Aguirre's efforts to distinguish the cases cited by the Commission are similarly unavailing because Aguirre, like the Ninth Circuit, looks at whether the statutes guide an agency's decision to disclose and does not consider whether the statutes identify "particular types of matters to be withheld." Review of the cases using the principles established by the D.C.

---

[3]The Ninth Circuit also said that "a court must consider the underlying congressional intent to exempt material from the FOIA." *Id.* at 1330. While it is not clear what the Ninth Circuit would look to determine "the underlying congressional intent," a recent case from this Court explains the need to focus on the language of the withholding statute to apply Exemption 3:

> A court, when reading and interpreting the statute, "must find a congressional purpose to exempt matters from disclosure in the actual words of statute (or at least in the legislative history of FOIA) – not in the legislative history of the claimed withholding statute.

*Public Citizen*, 444 F. Supp. 2d at 17.

4

Circuit shows that the cases fully support a determination that Section 210(b) is an Exemption 3 statute. Indeed, they show that Aguirre's concern that "potentially massive" amounts of information could be withheld under Section 210(b) is irrelevant as the statutes in those cases clearly cover "massive" amounts of information.

In *Seymour v. Barabba*, 559 F.2d 806, 807-08 (D.C. Cir. 1977), the court considered information gathered by the Bureau of the Census and a statute that applied generally to "the information furnished under the provisions of this Title." Despite that "rather all-embracing language," the Court held that the statute "refers to the particular type of matter to be withheld."

In *CIA v. Sims*, 471 U.S. 159, 167 (1985), the Supreme Court considered a CIA statute that protected "intelligence sources and methods." It found that the statute "refers to particular types of matters" even though "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence." *Id.* at 169-70.

In *Times Publishing Co. v. U.S. Dep't of Commerce*, 236 F.3d 1286, 1289 (11th Cir. 2001), the court considered export licensing information and a statute that protected "information obtained for the purpose of consideration of, or concerning, license applications under this Act." This statute, like Section 210(b), applies to all "information obtained" in connection with a significant regulatory function.

In *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 740, 742 (D.C. Cir. 1983), the court considered a statute that protected records "pertaining to the issuance or refusal of visas or permits to enter the United States" and held that "'[t]his category of information is sufficiently delimited to fit within the statutory [Exemption 3(B)] language'" without regard to the fact that

5

the statute necessarily covers a vast and varied amount of information.

In *Irons and Sears v. Dann*, 606 F.2d 1215, 1220 (D.C. Cir. 1979), the court held that a statute concerning patent applications and information concerning them "refers to particular types of matters to be withheld." Aguirre's contention that the statute involved "a relatively narrow scope" has no explanation or factual basis. *See* Aguirre Reply at 12. It bears noting that the U.S. Patent and Trademark Office reported that in 2006, there were 452,633 patent applications. *See* www.uspto.gov/go/taf/us_stat.pdf. In comparison, in FY2007 the Commission initiated a total of 776 investigations (many of which were not under the Advisers Act) and conducted 1,379 examinations of investment advisers. *See* www.sec.gov/about/secpar/secpar2007.pdf (at pages 25, 28).

Aguirre's final argument regarding Exemption 3 is that even though the Commission's formal order authorizing the investigation specifically states that it is an investigation pursuant to the Advisers Act and even though Pequot is an investment adviser registered under the Advisers Act, the investigation was not actually under the Advisers Act. While Aguirre is correct that the investigation was also under the Exchange Act and potential violations of the Exchange Act were a focus of the investigation, those facts do not take the investigation outside of the Advisers Act. If the Commission staff had found evidence of insider trading by Pequot, the Commission would have considered whether to seek any relief under the Advisers Act.

**II.     The Commission Properly Withheld Confidential Commercial and Financial Information under Exemption 4**

In response to requests from confidential treatment requesters, the Commission also decided to withhold portions of four transcripts that contain commercial and/or financial

6

information that satisfies the requirements of Exemption 4. In particular, the Commission redacted information from transcripts because it determined that witnesses would be more forthcoming in testimony if detailed commercial and financial information that was not otherwise available to the Commission staff were protected. Third Hardy Decl., Ex. 1 at 12.

Aguirre's response to this determination is to attack a different conclusion than the Commission reached. Aguirre repeatedly suggests that the Commission has contended that witnesses will provide misleading or untruthful testimony unless they can testify in secret. Aguirre Reply at 37-38. That is not the Commission's concern. The issue is whether witnesses will provide details that they were under no compulsion to provide if they believe that regardless of the outcome of the investigation all details could be made public. Protecting such information under Exemption 4 serves to protect Commission processes without interfering with the purposes of the FOIA because the balancing test applicable to the analysis assures that if there is a circumstance where it is in the public interest to disclose the commercial or financial information, it can be disclosed. *See Washington Post Co. v. U.S. Dep't of Health and Human Services*, 690 F.2d 252, 269 (D.C. Cir. 1982).

### III. THE COMMISSION CONDUCTED AN ADEQUATE SEARCH FOR DOCUMENTS.

Aguirre's discussion of the adequacy of the search confuses two separate issues in the case – and two separate records searches. *See* Aguirre Reply at 40-41. In its Opening Memorandum (at 38-39), the Commission addressed its search of documents from the Senate Production – that is, documents that were produced to the Senate Judiciary and Finance Committees in response to category one of the August 2, 2006 letter to the Commission, which

7

sought documents from the Pequot investigation. Aguirre did not address that issue in his Opposition. Rather, his Opposition appeared to raise the new issue of whether the Commission had conducted an adequate search for his employment records when it searched for records responsive to items seven through twelve of Aguirre's December 30, 2005 request, in which Aguirre sought documents pertaining to certain aspects of his employment with the Commission. Aguirre Opposition at 42-45. As a result of that search, the Commission's FOIA Office provided an initial production in October 2006, and the Commission's Office of the General Counsel provided additional documents in January and February 2007.[4] Because Aguirre had not previously questioned the adequacy of that search in any of the letters he and his counsel sent to Commission counsel regarding documents from the Senate Production, the Commission did not address it until it filed its Opposition.[5]

It is not clear to what extent Aguirre continues to object to the adequacy of the Commission's search for employment records. Aguirre does not identify any office that should have been queried but was not.[6] *See Manchester v. FBI*, No. 96-0137, 2005 WL 3275802, at *3

---

[4]The Aguirre Reply (at 43) refers to involvement of the staff of the Office of the General Counsel ("OGC") in the search for documents as something suspicious or problematic. Aguirre, however, provides no reason why the FOIA Office should not consult with or obtain information and documents from OGC. At the time of the search for Aguirre's employment records, Aguirre had filed his complaint in this action, and OGC was gathering information for the Senate Production.

[5]The Commission did not argue that Aguirre had waived his adequacy of the search argument. It simply explained why the Commission had not previously addressed the issue.

[6]Aguirre cites to a declaration filed by Commission FOIA staff in another case, *LaRoche v. SEC* and contends that because the Commission's Office of Information Technology ("OIT") was queried in that case, it should have been queried for Aguirre's request. The *LaRoche* case, however, is not apposite, as the plaintiff in that case sought the creation of an electronic database. That OIT was queried by the FOIA Office in *LaRoche* was natural. There was no reason for the

(D.D.C. Aug. 9, 2005) (concluding that a "speculative allegation as to the existence of [a record] does not cast doubt on the adequacy of" the search); *see also Weisberg v. DOJ*, 745 F.2d 1476, 1486-87 (D.C. Cir. 1984) (mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them). Aguirre's sole issue appears to be that the Commission did not interpret his request to include all documents that mentioned the termination of his employment, even if they did not relate to carrying out the termination. Aguirre Reply at 43-44.[7] The Commission, however, interpreted Aguirre's requests in a reasonable manner. A search for every document that ever mentioned a personnel action relating to Aguirre would be unreasonable (*see* SEC Opposition at 6 n. 4), and Aguirre's requests show that he was seeking information that revealed why actions were taken and who was involved in taking them. The Commission provided that information.

## CONCLUSION

For the foregoing reasons and for the reasons stated in the Commission's Opening Memorandum and Opposition, the Commission respectfully requests that the Court grant summary judgment for the Commission and deny Aguirre's request for summary judgment in this matter.

---

FOIA Office to query OIT in searching for plaintiff's *personnel* records. The FOIA Office's standard procedure is to query offices that could have responsive documents. Fuller Decl. ¶ 3.

[7]Aguirre incorrectly interpreted the Commission's discussion of requests relating to his termination to somehow mean that the Commission did not recognize his requests also related to Aguirre's merit pay increase, evaluation, and performance. The Commission discussed the requests related to Aguirre's performance because those were the issues Aguirre focused on in his Opposition (at 43-45). As Aguirre is aware, the Commission has provided numerous documents about the other personnel issues.

                                        Respectfully submitted,

                                         /s/ Melinda Hardy
                                        MELINDA HARDY, D.C. Bar No. 431906
                                        Assistant General Counsel

                                        NOELLE FRANGIPANE
                                        Senior Counsel

                                        Securities and Exchange Commission
                                        100 F Street, N.E.
                                        Washington, D.C. 20549-9612
                                        (202) 551-5140
March 31, 2008                       (202) 772-9263 (fax)

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY AGUIRRE,<br><br>      Plaintiff,<br><br>    v.<br><br>SECURITIES AND EXCHANGE COMMISSION,<br><br>      Defendant. | Case No. 1:06-cv-01260-ESH |

**SUPPLEMENTAL STATEMENT OF THE SECURITIES
AND EXCHANGE COMMISSION OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rules 7(h) and 56.1, the defendant United States Securities and Exchange Commission ("Commission") submits that there are no genuine issues as to the following material facts:

**Adequacy of the Search**

IV.    In the search for documents responsive to items seven through twelve of Aguirre's December 30, 2005 FOIA request, the Commission's FOIA Office queried all offices within the Commission that could have responsive documents: the Office of the General Counsel, the Office of the Chairman, the Office of Human Resources, the Division of Enforcement, the Office of Equal Employment Opportunity, and the Office of the Inspector General. Declaration of Brenda Fuller ("Fuller Decl.") ¶¶ 3-4 (Jan. 14, 2007). All of those offices provided documents

responsive to Aguirre's request, which were processed by the FOIA Office for release to Aguirre. *Id.* ¶ 5.

  V. Aguirre's requests regarding his termination were limited to documents "generated in carrying out" his termination and communications relating to his termination to or from nine specific people. Those requests are as follows:

> All records relating to the SEC's termination of Aguirre's employment, including (but not limited) to electronic or hard copy documents to or from his supervisors, transmittal letters, memorandums, emails, notes or memorandums of any meeting during which such possibility was discussed, and all other documents generated in carrying out such termination.
>
> All records relating to the SEC's termination of Aguirre's employment to or from Christopher Cox, Linda Thomsen, Paul Berger, James Clarkson, Richard Humes, Deborah Balducchi, Mark Kreitman, Robert Hanson, Richard Grime, and Charles Cain.

Complaint ¶ 37(11), (12).

  VI. Memoranda from the Commission's Office of the Inspector General ("OIG") to the Commission discussing either the OIG's subpoena enforcement against Aguirre or the OIG's production of documents to the Senate are not responsive to Aguirre's request because those memoranda do not relate to carrying out the termination and only briefly describe Aguirre's allegations and the OIG investigation. Third Hardy Decl. ¶ 8.[8]

  VII. The Commission does not maintain any files called Enforcement Personnel Files. Declaration of Charles Staiger ("Staiger Decl.") ¶ 3 (Jan. 11, 2007).

  VIII. Aguirre has received his Employee Performance File ("EPF"). *Id.* ¶ 7.

---

[8]If memoranda from OIG to the Commission were deemed responsive, the Commission would withhold the memoranda under Exemption 5, 5 U.S.C. 552(b)(5), because they are protected by the deliberative process privilege.

      IX.      The Commission's Enforcement Division does not retain, nor is it required to retain, a copy of an employee's EPF indefinitely. The relevant policy is set forth in the Commission's Personnel Operating Policies and Procedures ("POPPS") Manual (SEC Manual 6-1). *See* Staiger Decl., Ex. A. Specifically, the policy governing Employee Performance Files, SECR 6-9, ¶ 11.c, states that "the contents of each folder will be destroyed . . . no later than 30 days after the employee has been separated."

      X.      Aguirre was given his EPF on or about September 22, 2005. *Id*. ¶ 7. On October 5, 2005, Commission staff sent Aguirre additional documents that had not been placed in his EPF before September 22, 2005. *Id.* ¶ 10.

**Exemption 3**

      XI.      The Commission has determined that documents obtained as a result of an investigation under the Investment Advisers Act come within Exemption 3. Third Declaration of Melinda Hardy ("Third Hardy Decl."), Exs. 1-4 (Jan. 14, 2008). The chart below identifies documents from the investigation of Pequot Capital Management ("Pequot") protected by Exemption 3. *Id.*; Second Declaration of Melinda Hardy, Ex. 14 (Oct. 14, 2007).

| Doc. No. | Bates Nos. | Type of Document | Page Count | Document History |
|---|---|---|---|---|
| 2 & 40 | SEC 1820-1984; SEC 2680-2845 | Mack transcripts (corrected and original versions) | 331 | Withheld in whole following confidential treatment ("CT") appeal. See 3rd Hardy Decl., Ex. 2. |
| 37-38 | SEC 2321-2487 | Previously withheld portions of 2 transcripts | 167 | Previously produced in part; some information withheld under 7(C). |
| 39 & 69 | SEC 2488-2679; SEC 3254-3388 | 2 transcripts | 327 | Withheld in whole following CT appeal. See 3rd Hardy Decl., Ex. 1. |

| Doc. No. | Bates Nos. | Type of Document | Page Count | Document History |
|---|---|---|---|---|
| 68 | SEC 3157-3253 | Transcript | 97 | Withheld in whole following CT appeal. See 3rd Hardy Decl., Ex. 3. |
| 70 & 112 | SEC 3389; SEC 5002 | Correspondence about Morgan Stanley document production | 2 | Withheld in whole following CT appeal. See 3rd Hardy Decl., Ex. 4. |
| 71 | SEC 3390-3415 | Morgan Stanley e-mails | 26 | Previously withheld in entirety under 7(C). |
| 73-89 | SEC 3713-3770 | Exhibits to Mack transcript | 58 | Previously withheld in entirety under 7(C) or for further CT processing. |
| 260 | SEC 7203-8006 | Samberg transcripts and exhibits[9] | 804 | Withheld in whole following CT appeal. See 3rd Hardy Decl., Ex. 1. |

XII. Pequot is a registered investment adviser. *See* www.adviserinfo.sec.gov/IAPD/Content/ViewForm/ADV/Sections/iapd_ADVIdentifyingInfoSection.aspx.

XIII. The Commission order instituting the investigation of Pequot states that the investigation is under the Investment Advisers Act of 1940, 15 U.S.C. 80b-1 *et seq.*:

> The Commission, having considered the information provided by the staff, and deeming such acts and practices, if true, to be in possible violation of . . . Section 204A of the Advisers Act, finds it necessary and appropriate and hereby:
>
> **ORDERS**, pursuant to . . . Section 209(a) of the Advisers Act, that a private investigation be conducted to determine whether the aforesaid persons or any other persons have engaged in, are engaging in, or are about to engage in any of the aforesaid acts or practices, or acts or practices of similar purport or object.

Third Hardy Decl., Ex. 6 at 3.

---

[9] Two exhibits (the Commission's form 1662 and a subpoena to Arthur Samberg) are documents from the Commission that would not come within Exemption 3. Both documents have already been provided to Aguirre in the Senate Production. The subpoena is at SEC 2946, and the form 1662 is at SEC 2187-91 (and many other places).

**Exemption 4**

XIV.   The Commission is withholding under Exemption 4 portions of three transcripts of testimony from Samberg and portions of one other transcript.  Third Hardy Dec., Ex. 1.  The information withheld under Exemption 4 consists of approximately 524 lines from 4 transcripts.  Third Hardy Decl. ¶ 11.

XV.   The Commission withheld information from transcripts under Exemption 4 only where the witnesses provided detailed information about a business's internal commercial or financial matters and that information is not contained in other sources of information.  Third Hardy Decl., Ex. 1 at 12.  It is necessary to withhold those details in order to protect the Commission's ability to obtain necessary information because witnesses can often choose to answer questions in general terms and make it difficult for staff to learn details that may assist them in fully understanding the business and circumstances they are investigating.  Declaration of Walter G. Ricciardi ¶ 5 (Jan. 11, 2008).

XVI.   If the Commission cannot protect information like the information withheld here, witnesses will be more likely to choose not to provide those details unless they are directly asked for them – and the staff may not be aware that such details exist and thus may not be in a position to directly request them.  *Id.* ¶ 4.  Further, small details that may not be material in litigation may nonetheless be necessary as the staff determines the significance of information it obtains and makes decisions about what further information to seek.  *Id.* ¶ 5.

XVII.   Withholding information like the information withheld here protects administrative efficiency and effectiveness.  If witnesses are not forthcoming with details in testimony, taking testimony becomes a more burdensome process.  Investigators will face even

more reluctance than they already face in their efforts to obtain information, and if they do not obtain details that may help them understand all aspects of the information they receive, their investigations may be longer and less efficient.  *Id.*

XVIII.  The impact this case could have on the Commission is significant because commercial and financial information is central to most of its investigations.  *Id.* ¶ 7.  Also, hedge fund advisers are likely to be aware of this case, and as they tend to consider secrecy and privacy to be of the utmost importance, any decision requiring disclosure could have a strong impact on their willingness to provide information to the Commission.  *Id.* ¶ 6.

Respectfully submitted,

/s/   Melinda Hardy
MELINDA HARDY, D.C. Bar No. 431906
Assistant General Counsel

NOELLE FRANGIPANE
Senior Counsel

Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9612
(202) 551-5140
March 31, 2008                                    (202) 772-9263 (fax)