UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Gary Aguirre, | ) | |
|     Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 06-1260 (ESH) |
| Securities and Exchange Commission, | ) ) ) ) | |
|     Defendant. | ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MEMORANDUM
IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

**I
INTRODUCTION**

Plaintiff will not oppose a brief stay of the Memorandum Opinion and Order (Order) to the extent it compels the Securities and Exchange Commission (SEC) to release records of the Pequot investigation (Exemption 3, 4 and 7(C)). Plaintiff requests the court to impose the condition the SEC will seek no further stays before it files a notice of appeal. The Court has discretion to impose conditions upon the stay. *People for the Am. Way Found. v. United States Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007). Accordingly, plaintiff will not *at this time* address the SEC's grounds for seeking a stay of the Order's terms relating to the release of the Pequot investigative records.[1] Plaintiff cannot, however, agree to even a short stay of the Order's terms requiring the SEC to search for and release records relating to his employment and discharge. Any stay of these terms would subject plaintiff to a very real risk of irreparable harm.

---

[1] Plaintiff does not concede any of the factual or legal contentions urged by the SEC in seeking the stay of the order's terms compelling the release of records relating to the Pequot investigation. Plaintiff explicitly reserves the right to dispute these contentions and any other basis for a stay if and when the SEC decides to seek appellate review.

In seeking a stay, the SEC has the obligation "to justify the court's exercise of such an extraordinary remedy." *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d at 978 (D.C. Cir. 1985). As the SEC states in its moving papers, the court must consider the following four factors in deciding whether to stay its Order:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Cuomo* at 974 (citing *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)). As discussed below, these factors uniformly call for the denial of the SEC's application for a stay of the Order to the extent it would delay the release of records relating to plaintiff's employment and discharge.

## II
## THE SEC HAS NO MERITORIOUS GROUNDS FOR CONTENDING THE COURT ERRED BY THE TERMS OF THE ORDER RELATING TO RECORDS CONCERNING PLAINTIFF'S EMPLOYMENT AND DISCHARGE

The Order contains two separate rulings dealing with plaintiff's request for records relating to his employment and discharge. The Order directs the SEC to "conduct another search, or in the alternative, to prove that its prior searches meet the *Oglesby* standard."[2] The court also concluded the SEC could not redact the names of SEC employees from records relating to plaintiff's employment or discharge under Exemption 6. The SEC's application for a stay requires it to make some showing it has a meritorious appeal on these two issues.

Not even the thinnest grounds exist for appealing either issue. Indeed, the SEC makes no claim that any basis exists for appealing the term of the Order requiring the SEC's search to "meet the *Oglesby* standard." The word "search" does not even appear in the SEC's moving papers. Hence, the SEC may not stay a term of an Order when it tacitly concedes no grounds

---

[2] Order p. 45.

exist for an appeal. Likewise, by definition, only plaintiff has a privacy interest in records relating to *his* employment and discharge and thus Exemption 6 has no application.[3] As the court observed, "The redacted information does not fall within Exemption 6." In sum, the SEC failed to articulate a viable theory for appellate review of the Order's terms relating to records concerning plaintiff's employment and discharge. On this ground alone, its motion must be denied.

### III
### A STAY OF THE ORDER'S TERM REQUIRING RELEASE OF RECORDS RELATING TO PLAINTIFF'S EMPLOYMENT AND DISCHARGE MAY CAUSE HIM IRREPRABLE INJURY

While the SEC seeks to delay its release of records relating to plaintiff's employment and discharge, the time periods are drawing to close for plaintiff to make any effective use of these records in relation to his claims against the SEC. First, the three-year statute of limitations for a willful violation of the Age Discrimination in Employment Act (ADEA) will run on September 1, 2008,[4] the third anniversary of the date on which the SEC notified plaintiff of his discharge. Unfortunately, plaintiff has reason to believe the SEC may be withholding records which may shed light on this issue. Further, those records would come within the scope of the Order.

On a different plane, the SEC's new inspector general, David Kotz (Kotz), has informed the Senate Judiciary and Finance Committees that he is personally handling the "re-investigation" by the Office of the Inspector General (OIG) of plaintiff's allegations that he was improperly discharged. On February 13, 2008, he wrote:

> With regard the particulars of the Aguirre matter, given that the OIG's re-investigation of Mr. Aguirre's claims would necessarily include many of the same issues raised in Mr. Aguirre's litigations, I certainly expect the results of the OIG

---

[3] *Id.* at 29-30, 33-34.
[4] There is a three-year statute of limitations for a "bypass" action arising out of a willful violation of the ADEA. *Rossiter v. Potter*, 357 F.3d 26, 35 (1st Cir. 2004).

      re-investigation would inform the Agency as to how it should proceed in the litigations.[5]

With his February 13, 2008, letter, Kotz also informed the Senate that he expected the "re-investigation" of plaintiff's allegations to be concluded by the end of May 2008, but it now appears the end of June 2008 is more likely.[6] Plaintiff intends to provide Kotz with all probative documents obtained through this action. Plaintiff respectfully submits the most likely way to obtain full disclosure from the SEC is through appropriate orders from this court.

    Further, the Plaintiff has a pending case against the SEC before the Merit Systems Protection Board. Plaintiff expects the case to be dismissed without prejudice and refiled by the administrative judge automatically in August of this year. Any new and relevant facts gleaned from the records produced by the SEC will be incorporated into the allegations of the MSPB case.

    Finally, a major publisher has approached plaintiff to author a book on the Pequot case and his discharge. The book would likely deal with the broader issue how the SEC's deference to investment banks has put the nation's capital markets at risk. Both the media[7] and Congress[8] have linked the SEC's closure of a promising investigation of Bear Stearns in relation to mortgage-related securities to the SEC's closure of a promising investigation of Pequot. The common factor in issue: did the SEC give a favor to a major investment bank? If so, the favor to

---

[5] See Ex. 55 to the declaration of Gary J. Aguirre dated May 19, 2008 (Fourth Aguirre Decl.); February 13, 2008, letter from H. David Kotz, Inspector General of the SEC, to Senator Charles E. Grassley, Ranking Member of the Senate Finance Committee, with copies to Senator Arlen Specter, Ranking Member, Senate Committee on the Judiciary, Christopher Cox, SEC Chairman, Paul S. Atkins, SEC Commissioner, and Kathleen L. Casey, SEC Commissioner.

[6] *Id.*; Fourth Aguirre Decl., ¶3

[7] Maya Jackson Randall, *US Senator Seeks Probe into SEC Handling of Bear Case*, Dow Jones International News, April 2, 2008; David Weidner, *Cox's SEC Watched as Wall Street Burned,* MarketWatch, April 29, 2008.

[8] *Id.*

Bear Stearns may well have cost the public a $55 billion commitment from the Federal Reserve[9] to avoid a global meltdown of the capital markets.[10] This of course means the public interest weighs heavily in favor of a prompt release of these records. Plaintiff will address the public interest in greater detail if the SEC seeks a lengthier stay in connection with an appeal.

The SEC has all but conceded it is withholding some records relating to plaintiff's employment and discharge. In two briefs, the SEC repeatedly argued plaintiff only sought records which relate to "carrying out the termination" and "to or from nine specific people."[11] The most cursory review of plaintiff's requests for records relating to his employment and discharge establish the SEC's contention is patently false.[12] For example paragraph 8 of

---

[9] Kara Scannell and Sudeep Reddy, *Officials Say They Sought to Avoid Bear Bailout* The Wall St. Journal, April 4, 2008, at A-1.

[10] Greg Robb, *Fed, Treasury Defend Bailout of Bear Stearns,* Dow Jones Business News, April 4, 2008.

[11] SEC Surreply at 9; SEC Supplemental Facts, V; The SEC's opposition memorandum, filed on January 14, 2008, p. 6.

[12] The introductory language from Plaintiff's December 30, 2005, letter, and the specific requests which are included in this litigation read:

> In accordance with the applicable provisions of the Freedom of Information Act and the Privacy Act, I hereby request access to and copies of the documents, records, and files relating to, concerning, or the subject of my applications for employment to the Securities and Exchange Commission ("SEC") during the period from May 2003 through July 2004, my employment by the SEC from September 7, 2004, through September 2, 2005, the SEC's decision to terminate my employment effective September 2, 2005, and my obligations during and after my employment regarding nonpublic information.
>
> The records specified below are believed to be in the possession of the SEC's Division of Employment, Office of the General Counsel, Office of Equal Employment Opportunity, Office of Human Resources, Office of Information Technology, and the SEC staff and officials identified below…
>
> 7) All records relating to Aguirre's merit pay increase for the 2004 through 2005 evaluation period, including (but not limited to) electronic or hard copy documents to or from his supervisors, electronic or hard copy documents to or from the committee members who authorized Aguirre's merit pay increase, transmittal letters, memorandums, emails, notes of the compensation committee, and all other documents generated in implementing such merit pay increase;
>
> 8) All records containing information regarding Aguirre's evaluation or performance as an employee or the purported reasons for the termination of his employment including (but not limited to) employee performance files, personnel security files, compensation review files, personnel discipline files, personnel termination files, or any other file;
>
> 9) All records including (but not limited to) employee performance files, personnel security files, compensation review files, personnel discipline files, personnel termination files, or any other file containing information regarding Aguirre's performance as an employee or the purported causes of his termination;
>
> 10) All written or electronic communications or record of any communications relating to Aguirre's merit pay increase for the 2004 through 2005 evaluation period to or from Christopher Cox, Linda

plaintiff's request sought "All records containing information regarding Aguirre's evaluation or performance as an employee or the purported reasons for the termination …"[13] Why would the SEC so grossly understate the scope of the records it claimed plaintiff sought? One explanation comes to mind: the SEC has only produced the records which fall within its redrafted version of plaintiff's requests. The SEC's counsel seemed to concede this point when she explained why certain records were produced to the Senate but not to plaintiff: "[T]he OIG's production of documents to the Senate [is] not responsive to Aguirre's request because those memoranda *do not relate to carrying out the termination* and only briefly describe Aguirre's allegations and the OIG investigation (emphasis added)."[14] Again, plaintiff's requests are not limited to records "carrying out the termination."[15]

But there is more disturbing evidence that the SEC may have selectively withheld critical documents called for by plaintiff's FOIA requests. There is now credible evidence before this court that a highly probative document, something close to a "smoking gun" in plaintiff's EEOC case, vanished from plaintiff's personnel file after the SEC attorney handling the EEOC case took possession of that same file.

After his discharge, an administrative officer with the SEC's Office of Human Resources, Derek Childress (Childress) permitted plaintiff to review his Official Personnel File (OPF) on

---

Thomsen, Paul Berger, James Clarkson, Richard Humes, Deborah Balducchi, Mark Kreitman, Robert Hanson, Richard Grime, Charles Cain or any other SEC staff member of official;

11) All records relating to the SEC's termination of Aguirre's employment, including (but not limited) to electronic or hard copy documents to or from his supervisors, transmittal letters, memorandums, emails, notes or memorandums of any meeting during which such possibility was discussed, and all other documents generated in carrying out such termination;

12) All records relating to the SEC's termination of Aguirre's employment to or from Christopher Cox, Linda Thomsen, Paul Berger, James Clarkson, Richard Humes, Deborah Balducchi, Mark Kreitman, Robert Hanson, Richard Grime, and Charles Cain…

[13] *Id.*
[14] SEC's Surreply at 15.
[15] *Supra*, ft. 12.

September 20, 2005.[16] On that day, the file contained a memorandum signed by Steven Cutler (Cutler Memo), the then Director of Enforcement, discussing in some detail "Mr. Aguirre's outstanding legal credentials."[17] Childress provided plaintiff with a copy of the Cutler Memo on September 20, 2005.[18] No one from any other office or division of the SEC was involved when plaintiff reviewed his OPF that day.

The Cutler Memo would have been the most powerful evidence in plaintiff's EEOC case where the SEC contends it had passed over plaintiff's job applications twenty-two times because his qualifications were inferior to those of countless other attorneys the SEC hired over a one-year period. By the time plaintiff obtained a copy of the Cutler Memo, the SEC's motion for summary judgment had been submitted by both parties to the administrative judge. The administrative judge granted the motion without discovery. Plaintiff was unable to use the Cutler Memo in the EEOC proceeding until he filed his appeal on September 28, 2006.[19] It became the centerpiece of the appeal.[20]

Soon after plaintiff obtained a copy of the Cutler Memo, it vanished from plaintiff's OPF. It was never produced to the Senate, though the Senate sought all of plaintiff's employment records. It was never produced in response to plaintiff's FOIA requests, though those requests clearly requested the release of all records in plaintiff's files.[21] A copy should have been filed in

---

[16] See Fourth Aguirre Decl., ¶7.
[17] *Id*., ¶6 and Ex. 58 (Cutler Memo).
[18] *Id*., ¶7.
[19] Plaintiff's appeal in the EEOC case boils down to a single issue: the administrative judge erroneously denied all discovery before granting the SEC's summary judgment motion. The Cutler Memo demonstrates why that ruling was in error. See Fourth Aguirre Decl. ¶8, and Ex. 60.
[20] *Id.*
[21] *Supra* ft. 12.

plaintiff's other personnel file, his Employee Performance File,[22] but it also disappeared from that file.[23]

But there is a clue that helps solve the mystery of the vanishing Cutler Memo. An internal SEC document records the fact that the attorney representing the SEC in plaintiff's EEO case, Juanita Hernandez (Hernandez), took possession of plaintiff's OPF on October 14, 2005,[24] just three weeks after plaintiff found the Cutler Memo in the same file. And that is when the Cuter Memo vanished from plaintiff's OPF.

Incidentally, the SEC receipt form recording the fact Hernandez took possession of plaintiff's OPF on October 14, 2005, also vanished from the OPF.[25] The receipt (Ex. 56) was among the records the SEC produced to the Senate.[26] The SEC, however, did not include the receipt in its FOIA production to plaintiff,[27] despite the fact that plaintiff's requests clearly sought all records in all of his personnel files.[28] Plaintiff first learned of Ex. 56 earlier this year when he found a copy among thousands of pages of documents the SEC produced in the pending MSPB case in December 2007. The SEC objected to plaintiff's use of Ex. 56 during the summary judgment proceedings on the theory that it was provided to plaintiff pursuant to a protective order.[29] For

---

[22] According to the SEC POPS manual, the supporting documentation for a personnel action, should be included in the Employment Personnel File. Declaration of Charles Staiger, dated January 11, 2008, Exhibit A, p. 9. The Cutler Memo was the "supporting documentation" for the SEC's personnel action hiring plaintiff as a "superior qualifications appointment." 5 CFR 531.212(b)(1) provides that an "agency may determine that a candidate has superior qualifications based on the level, type, or quality of the candidate's skills or competencies demonstrated or obtained through experience and/or education, the quality of the candidate's accomplishments compared to others in the field, or other factors that support a superior qualifications determination."

[23] First Aguirre Decl., ¶¶ 10 and 30.

[24] See document titled "Hand Receipt For Official Personnel Folder (OPF) Taken Out of the Office of Administrative And Personnel Management." See Fourth Aguirre Decl. ¶4, and Ex. 56.

[25] *Id.*

[26] *Id.*; Ex. 56 bears an SEC bate stamp used for records the SEC provided Senate investigators.

[27] See Fourth Aguirre Decl., ¶4 and Ex. 56.

[28] *Supra*, ft. 12. In her letter of March 13, 2008 (Ex. 42), Ms. Hardy offers an explanation for the SEC's failure to release Exhibit 57.

[29] See Second Aguirre Decl., ¶14, and Exs. 40, 41, and 42. By her letter of March 13, 2008 (Ex. 42), Ms. Hardy informed plaintiff: "[W]e believe it would not be appropriate to identify the withheld portions because the protective order governing the production of documents in your MSPB case states that your MSPB and FOIA cases should be handled separately."

that reason, plaintiff did not offer Ex. 56 during those proceedings. The SEC withdrew its objection this week[30] when plaintiff informed its counsel he would seek an order releasing the record from the scope of the protective order.[31]

Other records suggest Hernandez played an active role in plaintiff's discharge. She directed plaintiff's supervisor to place a sham "supplementary" evaluation in plaintiff's personnel file to justify the decision to terminate his employment.[32] According to an SEC internal email, Hernandez "launched an investigation of [plaintiff] prior to his departure in Sept. 2005." The same email quotes Hernandez telling how her office "directed [Enforcement staff] to 'freeze' [plaintiff's] information technology assets" when he was given notice of termination.[33]

Hernandez's activities around the time of plaintiff's discharge do not relate to the allegations contained in plaintiff's EEOC case, which involve events occurring *before* plaintiff was hired.[34] Rather, Hernandez was investigating events after plaintiff was hired. In short, Hernandez activities appear to be linked to plaintiff's termination.  It would follow that her investigation likely includes records sought by plaintiff's multiple requests for documents relating to his performance and discharge. If so, the court's Order of April 28, 2008, directs the release of these documents to plaintiff.

Plaintiff does not suggest that Hernandez may be the only SEC employee who may have responsive records that have not been released. A similar analysis could be presented for other offices and divisions of the SEC which suggest that they may be holding responsive records

---

[30] See Fourth Aguirre decl., ¶5, and Ex. 57. By her email of May 16, 2008 (Ex. 57), Ms. Hardy informed plaintiff: "We have no objection to your using the document attached to your email.  In not objecting, we are not agreeing to any statements you have made regarding the Commission's obligation to produce the document.  I believe I previously explained to you why the document was not responsive to your FOIA request."
[31] *Id.*
[32] See First Aguirre Decl., ¶31(d), and Exs. 24 and 25.
[33] See Fourth Aguirre Decl., ¶9, and Ex. 59, which is available in a more legible form at page 839 of the Senate Report.
[34] See Fourth Aguirre Decl., ¶13

relating to his employment and discharge. The court's order requiring compliance with *Oglesby v. U.S. Dep't of Army*, 70 F.2d 1172, 1176 (D.C. Cir. 1996) provides a critical remedy. These terms should not be stayed at this critical juncture.

## IV
## THE SEC HAS HAD AMPLE TIME TO DECIDE WHETHER TO APPEAL AND THUS NO FURTHER EXTENSIONS OF THE STAY SHOULD BE GRANTED TO ALLOW THE SEC TO DECIDE WHETHER TO APPEAL

The SEC has failed to explain why it needs more time to decide whether to take an appeal. It argues that the extra time would allow "staff to prepare a recommendation and all members of the Commission to vote on the recommendation."[35] That process is far simpler than the SEC implies.

To begin with, it should not take the SEC's counsel much time to write up its recommendation to the commissioners. The SEC recently told Congress that this matter is *not* a complex case.[36] In February, the SEC's "designated agent" told the two Committees issuing the Senate report that "it is our understanding that there are only five issues that the court must resolve [in this case], *none of which appear to be very complex* (emphasis added)."[37] Further, the SEC's counsel has worked on this matter and the Senate investigation for the past two years. Thus, it should not require a lengthy period for the SEC counsel to prepare a memorandum to the Commission dealing with the pros and cons of taking an appeal.

The notion that more time is needed to allow "all members of the Commission to vote on the recommendation" overlooks the reality of the Commission's composition. Two of the five SEC commissioner posts are now vacant,[38] leaving only three commissioners. A third commissioner,

---

[35] SEC Memorandum in Support of Motion for Stay, p. 5.
[36] See Fourth Aguirre Decl., ¶2, and Ex. 55, p. 4, response to question 2.
[37] *Id*.
[38] *Id*.¶10.

Kathleen Casey, has recused herself on this matter, now leaving only two commissioners.[39] The term of one of the two remaining commissioners, Paul Atkins, expires on June 5, 2008,[40] and his replacement is not in sight.[41] That would leave Chairman Christopher Cox alone "to vote" on whether he accepts the recommendation from the SEC's counsel. The Commission typically meets each week to conduct Commission business. Its next meeting is scheduled for May 21, 2008.[42] The SEC has not explained why this matter could not be decided at the upcoming meeting or the following one.

Significantly, the SEC attempted to delay the production of records to the Senate on the same theory—that it needed more time to consult with the Senate.[43] However, according to Senator Grassley, then Chairman of the Senate Finance Committee, the SEC's designated contact person, Associate General Counsel Richard Humes (Humes), was not "candid and forthcoming" with Senate investigators about how long it would take for the issue to be presented to the Commission and, in part on this basis, requested that Humes be removed as the SEC's liaison during the Senate investigation.[44] Chairman Cox agreed to do so.[45] The point: the SEC's claim

---

[39] *Id.*

[40] Marcy Gordon, *Atkins Leaving SEC After Term End*, Associated Press, May 6, 2008: "Paul Atkins, one of three Republican members of the Securities and Exchange Commission, announced Monday that he will leave the agency following the end of his term on June 5."

[41] *Id.*

[42] SEC upcoming events available at http://www.sec.gov/about/upcoming-events.htm.

[43] See letter from Associate General Counsel Richard M. Humes (Humes) to Nick Podsiadly (Podsiadly), Counsel for the U.S. Senate Committee on Finance, dated August 9, 2006. Humes told Podsiadly:

> As I stated in our conversation, because the Commission's investigation of Pequot Capital Management is active and ongoing, I cannot provide any documents or other information without Commission authorization. We will seek to present this matter to the Commission on August 29, 2006, ***which is the first available meeting where we can do so*** (emphasis added)."

*The Firing of an SEC Attorney and the Investigation of Pequot Capital Management, Senate Report No.110-28 (2007) at* 673 ("Senate Report"), available at
http://finance.senate.gov/sitepages/leg/LEG%202007/Leg%20110%20080307%20SEC.pdf.

[44] *Id.* See also, letter from Senator Charles E. Grassley, Chairman, Senate Finance Committee, to Christopher Cox, SEC Chairman, dated August 24, 2006. Senator Grassley informed Chairman Cox:

that it needs more time to obtain Commission approval comes straight from the Humes playbook.

Dated: May 19, 2008                              Respectfully Submitted,

_____/s/_____
Scott A. Hodes, D.C. Bar #430375
P.O. Box 42002
Washington, D.C. 20015
301-404-0502

_____/s/_____
Gary J. Aguirre, CA Bar#38927
402 West Broadway, Suite 400
San Diego, CA 92101
619-595-3197

Attorneys for Plaintiff

---

Mr. Humes has repeatedly represented in telephone conversation that the first opportunity for the Commission to meet and authorize compliance with our requests would be August 29th. He reiterated his claim in a letter to my staff dated August 22nd. In fact, however, according to the Commission's website, a meeting was announced on August 18th to be held today, August 24th. Mr. Humes never advised my staff or Senator Specter's staff of this scheduled meeting even in the face of repeated inquiries about potential ways to begin complying with our requests before the Commission's August 29th meeting. If Mr. Humes has been candid and forthcoming—as I would have expected of someone representing you in a good faith effort to fully cooperate with our inquiry—then he would have mentioned today's SEC meeting and at least discussed the possibility of presenting our requests for information to the Commission at that time." Senate Report at 681.

[45] See letter from SEC Chairman Christopher Cox to Senator Charles E. Grassley, Chairman, Senate Finance Committee: "In the meantime, since Mr. Humes is on a brief vacation in any event, Sam Forstein, Assistant General Counsel, will follow up with your staff on the further production of documents as well as the scheduling of interviews with relevant agency staff." Senate Report at 683. Humes never resumed his role as the SEC liaison with Senate Committee staff after Senator Grassley's letter of August 24, 2006. See also Fourth Aguirre Decl., ¶12.