# Exhibit 55

## to Fourth Aguirre Declaration

*Aguirre v. SEC*, 06-CV-1260 (D.D.C.)



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF
INSPECTOR GENERAL

February 13, 2008

**VIA HAND DELIVERY**

The Honorable Charles E. Grassley, Ranking Member
United States Senate Committee on Finance
135 Hart Senate Building
Washington, D.C. 20510-6200

        Re:    February 4, 2008 Letter

Dear Senator Grassley:

      Thank you for your February 4, 2008 letter. I appreciate all the support you and your staff have been providing me in connection with my new duties as Inspector General (IG) of the Securities and Exchange Commission (SEC.) I certainly appreciate the challenges that I have ahead of me and I wish to assure you that I have been and will continue to work diligently to restore confidence in the Office of Inspector General (OIG) at the SEC.

      I am also very aware of the allegations made by former SEC employee Gary Aguirre and the conclusions of the August 2007 Report prepared by the Minority Staff of the Committee on Finance, United States Senate and the Committee on the Judiciary, United States Senate (hereinafter referred to as the "Senate Report.") As I have advised your staff, I believe that bringing the Aguirre matter to closure is among the highest priorities of my new duties and responsibilities as IG. For this reason, on my first day of work as IG, I reached out via telephone to Mr. Aguirre to discuss both the allegations that were reviewed in the Senate Report, as well as new allegations he asked my office to investigate in a December 11, 2007 letter. Subsequently, on January 14, 2008, I flew to San Diego, met with Mr. Aguirre and took his testimony on the record regarding the allegations he raised in his December 11, 2007 letter and subsequent communications. As I have assured Mr. Aguirre, the OIG plans to conduct a full, thorough and comprehensive investigation of these new allegations. I will be happy to provide you a copy of the final Report of Investigation for this matter once it is completed.

      In addition to investigating these new allegations, I am planning to take over myself the re-investigation of the original claims raised by Mr. Aguirre, which were the subject of the Senate Report. As I have also advised your staff, while there has been a considerable amount of work conducted with respect to this re-investigation, substantial additional work is needed to complete the investigation and issue a final report. I concur wholeheartedly with your observation that given the wealth of information already collected regarding Mr. Aguirre's allegations, there is no need for years of additional and

02/13/2008   6:18PM

redundant fact-finding. As a consequence, I hope to gather all the relevant information from the necessary sources and synthesize that information into a comprehensive final report and recommendations in relatively short order. I have been speaking with your staff about the possibility of gaining access to copies of the full transcripts of interviews conducted in the Senate investigation and am finalizing the necessary arrangements to obtain these transcripts. I greatly appreciate the assistance your staff has been providing me in this matter as obtaining copies of the full transcripts utilized in the Senate investigation, particularly those of the subjects of the OIG investigation, would greatly assist me in concluding the re-investigation in a timely manner.

In addition to resolving the Aguirre matter, as you indicate in your February 4, 2008 letter and as I have advised your staff, I am putting into place a series of reforms in my office to ensure independence from SEC management and make certain that all investigations conducted by this office are thorough, fair and credible as recommended by the Senate report. Many of these reforms are already being implemented. Specifically, upon assuming the position of IG of the SEC, I issued the following directives prescribing changes in the office's investigative procedures:

- In all new investigations, the complainant shall be interviewed first and on the record whenever feasible and in light of the particular circumstances (e.g., except in the occasion of an anonymous complainant);

- All significant interviews of complainants, subjects and critical witnesses be conducted under oath and on the record with a full transcript;

- Investigators should give assurances of confidentiality to potential witnesses who have expressed reluctance to come forward in an official investigation;

- Perjury warnings (with language I drafted) shall be provided to subjects and/or witnesses being interviewed where there is any possibility or indication that full and truthful testimony might not be provided;

- Witnesses and/or subjects will not be allowed to have an SEC attorney represent them in an OIG investigation;

- Reports of Investigation will include specifics findings and recommendations, including whether the OIG believes disciplinary action should be taken;

- The OIG will request that management inform it of the disciplinary action taken in response to a Report of Investigation within 45 days of the issuance of the report and the OIG will follow-up with Management both prior to and at the 45-day mark.

02/13/2008   6:18PM

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 3 of 10

In addition, one of our investigators has recently been deputized by the U.S. Marshall
Service in order to increase the OIG's authority in pursuing criminal investigations. We
also are having official credentials issued to each investigator for use in investigations.
Finally, we will be hiring an additional investigator with significant experience in either
the 1801 or 1810 investigative series to add capacity and experience to our investigative
unit.

Since I have begun my duties approximately six weeks ago, we have already completed
eleven investigative reports or memoranda with specific findings relating to perjury
before a federal court, assault, disruptive and intimidating behavior in the workplace,
misuse of government resources in support of a personal business and misuse of
computer equipment and official time to access pornography on the Internet. We have
recommended disciplinary action in many, if not all, of these cases, up to and including
dismissal in several instances.

I have also implemented changes in the OIG's audit unit procedures. We are revising the
manner in which the OIG tracks audit recommendations and are hiring an Administrative
Support Assistant to implement a new tracking system for OIG recommendations.

We are also hiring a Supervisory Audit Manager to manage the audit unit and ensure the
OIG issues meaningful and forceful audit and inspection reports targeting significant
issues critical to the Agency and the public. We will be issuing at least five audit or
inspection reports within the next six weeks. These reports will include significant
recommendations concerning the lack of internal controls in an Agency benefits program,
the Agency's failure to comply with statutory timeframes set forth in the Securities
Exchange Act of 1934, deficiencies in the Agency's background investigation process,
the Agency's inability to create an inventory for certain IT equipment and inefficiencies
associated with an internal website. In one of these audits, we uncovered approximately
$130,000 in funds owed to the Agency, which has initiated collection efforts to recover
these moneys because of our audit. All of these reports will be described in the OIG's
upcoming Semiannual Report to Congress, which will be issued in April 2008.

In addition, the OIG has already begun a procurement process to retain an outside
contractor in an effort to revamp its process for receiving fraud, waste and abuse
complaints. This contractor will establish and operate an OIG hotline for the anonymous
reporting of complaints involving agency programs and operations, and misconduct by
agency employees or contractors. The contractor will establish and maintain both (1) a
toll-free number that can be called 24 hours a day, 365 days a year, to speak
anonymously, or in confidence, with a trained hotline operator, and (2) a web-based
system through which complaints may be made anonymously, or in confidence. \

We are also in the process of updating and redesigning both the OIG website and the
Semiannual Report to Congress.

With respect to the specific questions in your February 4, 2008 letter, we are providing
the following responses:

02/13/2008   6:18PM

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 4 of 10

1.    **When do you expect to provide a final report on the OIG's current investigation into Aguirre's allegations?**

Assuming we are able to obtain copies of the transcripts utilized in the Senate Report, I expect to be able to complete the re-investigation and issue a final report with recommendations within approximately three months, or by May 30, 2008 at the latest. I also expect to have the investigation into the additional allegations raised by Mr. Aguirre in his December 11, 2007 letter concluded in the same timeframe.

2.    **What is the status of continuing litigation and administrative proceedings related to Aguirre's allegations?**

As this question is directed to the Agency, I received the following response from the designated Agency representative:

*"At this time there are two matters. First, on February 20, 2007, Mr. Aguirre filed an appeal with the Merit Systems Protection Board ("MSPB"). Since filing the appeal, Mr. Aguirre has requested three dismissals without prejudice. Since the first dismissal occurred on April 25, 2007, the case has been open before the MSPB for only two short periods of time and is currently not pending. It is scheduled to be refiled on May 14, 2008. The parties have commenced discovery and have responded to requests for documents while the case has been dismissed, but are not currently engaged in any discovery because of Aguirre's health issues. The Commission has provided thousands of pages of documents to Mr. Aguirre.*

*"Second, on July 14, 2006, Mr. Aguirre filed a case against the Commission under the Freedom of Information Act ('FOIA'). Both parties have moved for summary judgment on all counts of the complaint, and Mr. Aguirre's final brief is currently due on March 21, 2008. The Commission has provided Mr. Aguirre with many documents in response to his FOIA requests, and it is our understanding that there are only five issues that the court must resolve, none of which appear to be very complex. We anticipate a ruling from the court resolving the case after briefing is completed."*

3.    **How long do you expect those proceedings to continue and at what cost to the taxpayer?**

As this question is directed to the Agency, I received the following response from the designated Agency representative:

*"It is difficult to predict how long the MSPB case will continue as that issue depends largely on Mr. Aguirre's health and the extent of discovery that Mr. Aguirre will seek. Commission staff handling the case expect that they will be able to complete the discovery they seek and be ready for a hearing promptly after the case is refiled in May. Similarly, we cannot estimate the time or resources that the case will require, though we anticipate that the extensive record developed by your staff will simplify discovery.*

02/13/2008   6:18PM

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 5 of 10

*"As stated above, Commission staff expects that the district court will issue a decision in the FOIA case after briefing is complete on the motions for summary judgment. It is likely that any future costs in the case will be minimal."*

4.      **Is the SEC engaged in any alternative dispute resolution negotiations pursuant to 5 U.S.C. § 527, such as arbitration or mediation in an effort to mitigate the costs to the taxpayers of protected litigation? If not, please explain why not.**

As this question is directed to the Agency, I received the following response from the designated Agency representative:

*"The Commission has not discussed with Mr. Aguirre the possibility of an alternative dispute resolution. The Commission believes that the MSPB is able to provide an efficient and relatively inexpensive resolution of this matter akin to what would be available in arbitration. Commission staff have not discussed mediation with Mr. Aguirre because the MSPB ALJ assigned to this case or other MSPB officials can mediate settlement at appropriate times. See www.mspb.gov/sites/mspb/mediationmain /default.aspx (describing the MSPB's Mediation Appeals Program).*

*The Commission staff has not discussed mediation or arbitration of the FOIA cases because the case involves legal issues that the staff believes can best be resolved by a court."*

5.      **Do you intend to make a recommendation to Chairman Cox regarding whether and how the SEC should proceed in defending itself in those proceedings?**

While it is not normally within the IG's jurisdictional purview to offer a recommendation to an Agency on how to defend ongoing litigation proceedings, I have offered my personal opinion to the Agency, including the Chairman's Office, and most particularly the Office of General Counsel, that it is always in an agency's interest to explore settlement options in every litigation. With regard to the particulars of the Aguirre matter, given that the OIG's re-investigation of Mr. Aguirre's claims would necessarily include many of the same issues raised in Mr. Aguirre's litigations, I certainly expect the results of the OIG re-investigation would inform the Agency as to how it should proceed in the litigations.

6.      **Has the Chairman issued memoranda directing changes at the SEC in response to our report? If not, when does he plan to do so? If so, please provide copies of the memoranda.**

On or about January 30, 2008, the Chairman provided you with copies of memoranda detailing the changes that have been put into place in response to the Senate Report's recommendations. I have reviewed these memoranda carefully and am following up on all these matters per your request. The following are the Senate Report's recommendations and my anticipated follow-up activities:

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 6 of 10

A.  Standardized Investigative Procedures:  The recommendation states that the SEC
should draft and maintain a uniform, comprehensive manual of procedures for
conducting enforcement investigations, along the lines of the United States
Attorney's Manual.  The manual should attempt to address situations or issues
likely to recur.  It should set a consistent SEC policy where possible and provide
general guidance for complex issues that require individual assessment on a case-
by-case basis to be handled, so that inquiries are handled as uniformly as possible
throughout the Enforcement Division.

In response to this recommendation, the SEC indicated in a January 29, 2008
memorandum provided to you that it has conducted a preliminary analysis to
determine the format of the manual, surveyed the substance of Enforcement's
current polices and procedures and plans to complete a preliminary internal draft
updating Enforcement's policies and procedures by February 28, 2008.

I have met with the individual in the Enforcement Division who is responsible for
this project and will receive copies of the preliminary internal draft policies and
procedures that are to be completed by February 28, 2008.  Once received, we
will review these policies and procedures to ensure that they satisfy all the
concerns expressed in the Senate Report.

B.  Directing Resources to Significant and Complex Cases:  The recommendation
states that the SEC currently lacks a set of objective criteria for setting staff levels
ands has no mechanism for designating a case as critically important.  The SEC
should set standards for assessing the size, complexity and importance of cases to
ensure that significant cases receive more resources.  The Enforcement Division
should develop and apply objective criteria for determining how many attorneys,
paralegals and support personnel should be assigned to a particular case.

In response to the recommendation, the SEC indicated in a January 29, 2008
memorandum provided to you that it would complete a preliminary draft of
procedures by January 31, 2008.

I have met with the individual in the Enforcement Division who is responsible for
this project and have reviewed the initial preliminary draft of procedures.  The
Enforcement Division has also assured me that a revised version of this
preliminary draft will be sent to other Agency offices, including the OIG, the
Chairman's Office, and the Office of General Counsel by March 30, 2008, for
review and comment.  At that point, we will comment on this draft to ensure that
it satisfies all the concerns expressed in the Senate Report.

C.  Transparent and Uniform External Communications:  The recommendation states
that the SEC should issue written guidance requiring supervisors to keep complete
and reliable records of all outside communications regarding any investigations.
The need for a clear record and transparency is especially acute regarding any
communications by supervisors that exclude the staff attorney assigned to the

02/13/2008   6:18PM

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 7 of 10

case. The SEC's guidance should generally discourage supervisors from
engaging in such communications without the knowledge or participation of the
lead staff attorney. The SEC needs to present one, consistent position to parties
involved in its investigation.

In response to the recommendation, the SEC indicated in a January 29, 2008
memorandum provided to you that it would begin implementation of the new
policies and procedures by February 28, 2008.

I have met with the individual in the Enforcement Division who is responsible for
this project and have reviewed an initial preliminary draft of the new policies and
procedures. I have been informed that additional work is required on these new
policies and procedures, but the Enforcement Division has assured me the
preliminary draft of these new policies and procedures will be sent to other
Agency offices, including the OIG, the Chairman's Office, and the Office of
General Counsel by March 30, 2008 for review and comment. At that point, we
will comment on this draft to ensure it satisfies all the concerns expressed in the
Senate Report.

D. Greater OIG Independence and More Thorough Investigative Procedures: The
recommendation states that the OIG should develop a plan to ensure
independence from SEC management and the General Counsel's office, and to
ensure that its future investigations are thorough, fair and credible. It also states
that the SEC needs to implement a directive requiring its Office of Technology to
provide thorough, fair and timely responses to SEC/OIG document requests.
Since the purpose of the OIG is to ensure integrity and efficiency, a document
request in connection with an SEC/OIG investigation should be among the
highest priorities.

I described above (on pages 2-3 of this letter) the new directives I have already
issued regarding OIG's investigative procedures and the initiatives that are
currently underway to ensure the OIG's independence and restore confidence in
its ability to perform its functions. In addition, I plan to provide your staff with
updates and further details of these and additional efforts in the near future.

With respect to the technology matters, the SEC has provided you with a January
22, 2008 memorandum discussing a variety of measures put into place to ensure
prompt responses to OIG requests for emails in connection with investigations. In
addition to this memorandum, I have met on several occasions with officials from
the SEC's Office of Technology (OIT) and drafted a Memorandum of
Understanding (MOU) between the OIG and OIT to further clarify the priority
level of OIG requests for emails. We expect to have this MOU finalized within a
month. I can also report that the OIG has recently made several large requests for
emails to OIT and has received satisfactory responses in only a few days.

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 8 of 10

E.  Timely and Transparent Recusals:  The recommendation states that the SEC
should review its guidance to employees regarding their obligations to recuse
themselves immediately from any matter involving a potential employer with
whom the employee has had contact, either directly or indirectly through an agent.
Recusals should be communicated in writing to all SEC staff who have official
contact with the recused individual, and a record of the recusals should be
centrally maintained by a designated ethics officer.

In response to the recommendation, the SEC indicated in a January 17, 2008
memorandum provided to you that it is taking action to strengthen its training and
written guidance in accordance with the Senate Report's recommendations, as
well as working toward the creation of a shared electronic data base for the
Enforcement Division.

I have met with the Agency's Ethics Counsel and emphasized the importance of
the issues raised in the Senate Report.  The Ethics Counsel informed me that to
date he has personally provided one-hour of newly created in-person ethics
training to 72 out of 94 SEC Senior Officers focusing on employment-related
recusals.  He assured me the remaining Senior Officers will receive this training
by or before March 30, 2008.  In addition, at my recommendation, the Ethics
Office plans to issue an Ethics Newsgram within a month to all SEC employees
communicating that recusals should be reflected in writing with copies provided
to the Ethics Office.  I will follow up with the Ethics Office on the additional
initiatives referenced in the SEC's January 17, 2008 memorandum.

F.  Standardized Evaluation Procedure:  The recommendation states that Employee
evaluations should be submitted in a timely manner, according to an established
schedule.  Evaluations should not be prepared outside or apart from the
established procedure.  Although it is appropriate to document performance issues
and to discuss them with the employee as issues arise, submitting a re-evaluation
with substantive changes after the regularly scheduled evaluation is submitted can
raise questions.  Where the re-evaluation occurs just after an employee reports
alleged wrongdoing by a supervisor, it tends to suggest that retaliation is driving
the process rather than an honest attempt to evaluate employee performance.

In response to the recommendation, the SEC indicated in a January 30, 2008
memorandum provided to you that it is phasing in a new performance
management system that will address the concerns expressed in the Senate Report
over a three-year period, with implementation already begun in the Office of
Human Resources.

The OIG previously provided significant substantive comments to various drafts
of the procedures for the new performance management system in the areas of
requiring completion of performance appraisal steps, timely completion of
supervisory summaries of employee contributions, timely certification and
completion of mid-year reviews, and clarifying the procedures for probationary

02/13/2008   6:18PM

employees, including establishing criteria on how to address unacceptable performance for probationary employees. These suggestions and comments have been incorporated into a revised Performance Management policy issued on December 18, 2007. The OIG is currently reviewing this revised policy and will be making additional comments as necessary.

The OIG plans to conduct a follow-up audit of the new performance management system once it has been in place for a suitable period of time to determine if the concerns expressed in the Senate Report have been sufficiently addressed.

G. The Senate report recommends that the SEC adopt clear, written whistleblower protections to safeguard all employees against adverse personnel actions in retaliation for reasonable good faith allegations or disclosures of perceived wrongdoing.

The SEC has agreed that the OIG will draft language for a proposed memorandum from the Chairman to be distributed to all SEC employees that will convey and re-enforce these whistleblower protections. We expect this memorandum to be issued by or before March 30, 2008.

H. The SEC should adopt clear, written guidance establishing alternate, confidential channels of communication to resolve potential issues early and without public controversy.

The SEC has agreed that the OIG will draft language for a proposed memorandum from the Chairman to be distributed to all Commission employees that will communicate and re-enforce these alternate, confidential channels of communication. We expect this memorandum to be issued by or before March 30, 2008.

**7.    Beyond any memoranda issued or about to be issued, what other steps have been taken, or will be taken, toward implementing the report's recommendations, including, but not limited to the recommendations in the text of the report on pages 81-82?**

In the responses provided to question no. 6 above, we specified the particular steps the OIG plans to undertake to follow up on the SEC's implementation of the Senate Report's recommendations, including subparagraphs G and H above, which correspond to the recommendations on pages 81-82 of the Senate report. We plan to issue quarterly reports to your staff to assess the progress of the Commission's implementation of these recommendations.

In addition, as you requested, we will monitor the Commission's progress toward implementing the recommendations of the Government Accountability Office (GAO) in two recent reports issued at the request of the Senate Committee on Finance: GAO-08-33 (November 2007), "Opportunities Exits to Improve Oversight of Self-Regulatory

The Honorable Charles E. Grassley, Ranking Member
February 13, 2008
Page 10 of 10

Organizations," and GAO-07-830 (August 2007) "Additional Actions Needed to Ensure
Planned Improvements Address Limitations in Enforcement Division Operations."
Even prior to your February 4, 2008 letter, I had met with Richard J. Hillman, GAO
Managing Director, Financial Markets and Community Investments, to discuss ways in
which the OIG could follow up on these and other GAO reports. We also plan to
incorporate all the recommendations from these two GAO reports in our revised audit
recommendation tracking system, which will enable us to monitor GAO
recommendations in the same fashion we monitor OIG recommendations.

If you have any questions or would like any further information about any of the above
initiatives or activities, please contact me at 202-551-6037. I look forward to continuing
to work closely with you and your staff on these very important matters.

Sincerely,

H. David Kotz
Inspector General

cc:    The Honorable Arlen Spector, Ranking Member, Senate Committee on the
       Judiciary
       The Honorable Christopher Cox, Chairman, Securities and Exchange Commission
       The Honorable Paul S. Atkins, Commissioner, Securities and Exchange
       Commission
       The Honorable Kathleen L. Casey, Commissioner, Securities and Exchange
       Commission

02/13/2008   6:18PM