# Exhibit 60

to Fourth Aguirre Declaration

*Aguirre v. SEC*, 06-CV-1260 (D.D.C.)

UNITED STATES OF AMERICA
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
(APPEAL OF DECISION BY ADMINISTRATIVE JUDGE)

| | |
|---|---|
| GARY J. AGUIRRE, ) | |
| ) | |
| Appellant, ) | DOCKET NUMBER |
| ) | 01A64528 |
| v. ) | |
| ) | ADMINISTRATIVE JUDGE |
| SECURITIES AND EXCHANGE ) | DEL TORO |
| COMMISSION, ) | |
| ) | |
| Agency ) | |

**BRIEF IN SUPPORT OF APPEAL**

This appeal is taken from the order of the Administrative Judge (AJ) granting the Agency's motion for summary judgment.[1] For the purpose of this appeal, Appellant adopts the positions stated in his papers filed with the AJ in opposition to the Agency's motion for summary judgment.[2]

Appellant also seeks review of the AJ's decision denying Appellant's motion to strike.[3] In granting the Agency's motion for summary judgment, the AJ relied upon much of the evidence that was the subject of Appellant's motion to strike. Accordingly, a Commission decision vacating the AJ's denial of Appellant's motion to strike would also require the AJ's order granting the Agency's summary judgment motion to be vacated.

In granting the Agency's motion, the AJ ignored key Commission decisions cited by Appellant in his opposition papers which establish the criteria an administrative judge must

---

[1] The Appellant's opposition memorandum (pp. 6 through 10) demonstrates the Agency erroneously dismissed various claims on the theory that Appellant did not timely contact an EEO counselor (see Volume V of appellate record). The AJ did not address these claims in her order granting the Agency's motion for summary judgment.

[2] Those opposition papers are comprised of the following: Appellant's memorandum of points and authorities (44 pages), Appellant's declaration in opposition to motion for summary judgment (28 pages), Exhibits 1-100, and Appellant's motion to strike (5 pages). All the above papers are in Volume V of the appellate record, except the exhibits, which are in both Volumes V and VI.

[3] See Appellant's motion to strike (Volume V).

apply in deciding a summary judgment motion.[4] Among other things, those decisions require an administrative judge to permit reasonable discovery where necessary so a complainant can fully respond to the summary judgment motion.[5] In his opposition papers to the Agency's summary judgment motion, Appellant repeatedly explained (fifteen times in all) why discovery was essential on (1) various factual issues raised by the Agency in its motion for summary judgment or (2) evidentiary gaps in the Agency's Report of Investigation (ROI). Still, the AJ granted the motion without a hearing, without discovery, and without addressing *Raza*, *Zerman*, or *Dibert*.[6]

Instead, the AJ accepted the Agency's conclusions and factual representations as stated in its moving papers, including erroneous factual statements,[7] as if Appellant had submitted no opposing authorities, argument or evidence. The AJ's approach to the evidence violates the applicable evidentiary standards stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986): "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[8] The AJ did not merely ignore this standard. She turned the rule on its head; she accepted all factual statements made by the *moving party* as true and drew all inferences in favor of the *moving party*, despite substantial evidence to the contrary.[9]

Worse yet, the AJ barred all discovery, including discovery of missing Agency records containing evidence on key factual issues, e.g., the forms prepared by Agency employees at the time they interviewed Appellant. The records how and why Agency employees made their

---

[4] See Appellant's points and authorities in opposition to summary judgment, pp. 4-5, citing *Raza v. Department of Veterans Affairs*, EEOC Appeal No. 01A30623, 2004 EEOPUB LEXIS 5239 (September 23, 2004); *Zerman v. Johanns*, EEOC Appeal No. 01A51007, 2005 EEOPUB LEXIS 1784 (April 11, 2005), and *Dibert v. Norton*, EEOC Appeal No. 01A43759, 2005 EEOPUB LEXIS 2771 (May 31, 2005)
[5] *Id.*
[6] *Id.*
[7] The AJ wrote at page 3 of her decision: "3. Complainant retired from active legal practice in 1995 to attend film school. 4. Subsequently, Complainant formed a film company ..." Both of these statements are inaccurate. Both are lifted from page 3 of the Agency's ROI.
[8] See also: *Mortensen v. Roche*, Appeal No. 01A24231, 2005 EEOPUB LEXIS 5337 (November 4, 2005).
[9] Compare for example Appellant's discussion of the NERO Non-posted Investigative Attorney position (Opposition memo, pp. 22-25) with the AJ's discussion on the same point (AJ decision, p. 17, paragraph 15).

2

decisions are exclusively in the Agency's possession. Since evidence favorable to Appellant was not made available to the investigator, it was not included in the ROI. Since the same evidence was not included in the ROI, it was not considered by the AJ. In this way, the Agency has been able to control the outcome of its own summary judgment motion. Discovery is the device that keeps the Agency honest. In this case, the facts screamed for discovery on the numerous inconsistencies and gaps in the Agency's ROI. Unfortunately, the AJ was not listening.

Appellant offers one example of the type of documents that would have been discovered had the AJ permitted discovery: a July 15, 2004, memorandum authored by Steven Cutler (Cutler), the head of the Agency's Division of Enforcement.[10] There, Cutler lauds Appellant's qualifications for an investigative attorney position with the Enforcement Division as well as his success as a trial attorney. Director Cutler wrote:

> Mr. Aguirre has *much more litigation, securities and trial experience than the normal candidates we recruit* (emphasis added). He has seven years of securities fraud litigation, including three class actions. He has obtained substantial recoveries in 95 consecutive complex cases with a total in excess of $200 million. He was the lead counsel in more than half of these cases and assisted his partner in others. He has published many legal articles and served as a presenter in a variety of civil litigation and advocacy programs. He won appeals in seven separate cases.
>
> Mr. Aguirre received an LLM with Distinction in October 2003 concentrating in Private Studies, Securities Regulation-International Law from Georgetown University Law Center. He graduated with a LLB from Boalt hall (sic) at the

---

[10] See Declaration and Application for Consideration of New Item of Evidence on Appeal and attached Ex. 101.

University of California Berkeley. He graduated with a BS degree in political science from the University of California. He is a member of the bar in California.

Mr. Aguirre recently came out of retirement to obtain an LLM degree and work again in the securities area...

I am very impressed with Mr. Aguirre's legal experience, academic background, and his desire to join our staff. Based on the above facts, I believe Mr. Aguirre's *outstanding legal credentials* merit approval, and it is my opinion that he will become a valued member of our staff within a very short time (emphasis added).

As a consequence of Cutler's memorandum, the Agency hired Appellant as a "superior qualifications appointment."[11]

It is difficult to reconcile Director Cutler's conclusion that Appellant had "much more litigation, securities and trial experience than the normal candidates we recruit" and "outstanding legal credentials" with the Agency's decisions that Appellant's applications for investigative attorney and trial attorney positions were inferior to the qualifications of at least 40 other candidates for trial attorney and investigative attorney positions,[12] including one candidate who filled a trial attorney position despite the fact she had apparently never tried a lawsuit.[13] The Cutler memorandum and similar highly probative documents were never considered by the AJ because she granted the summary judgment motion without discovery. Instead, throughout her

---

[11] See Ex. 9, Volume 5.

[12] See Ex. 100, Volume VI.

[13] See letter of Appellant's counsel, dated April 30, 2004, attached to Appellant's Complaint. Volume I, Section A-1. "I have been able to identify one of the new hires, Erica Williams. I have been unable to find any record Ms. Williams has ever tried a lawsuit." Despite this statement, the Agency refused to provide the curriculum vitae or Quality Ranking Factor statement Ms. Williams submitted to the Agency when she was hired. (See Exhibit 100). This silence constitutes a classic tacit or implied admission. *United States v. Washington*, 1999 U.S. App. LEXIS 14826 (4th Cir. 1999); *Brooks v. Summers*, Agency Appeal No. 01975008, 1999 EEOPUB LEXIS 5768 (September 16, 1999)

4

decision, the AJ consistently found Appellant's qualifications inferior to the qualifications of those selected. In doing so, the AJ relied almost exclusively on the Agency's self-serving conclusions prepared long after this dispute arose.

As explained in Appellant's attached declaration, he made every effort to place the relevant evidence, such as the Cutler memorandum, before the AJ before she ruled on the Agency's summary judgment motion. Appellant repeatedly requested discovery in his opposition papers filed with the AJ. Additionally, he sought Agency records relevant to the claims urged in this matter by his written request of January 11, 2005, to the Agency pursuant to the Freedom of Information Act and the Privacy Act.[14] The Agency produced no records in response to Appellant' FOIA/Privacy Act request prior to the date on which he was required to file his opposition papers, August 15, 2006, with the AJ. The Agency's Office of Human Resources produced the Cutler memo on September 20, 2005, *more than a month after Appellant's opposing papers were due with the AJ.* The AJ's order of June 23, 2005, specifically provided that the parties were "not authorized to file additional submissions" after the parties filed the moving or opposing papers.

Again, the *two-page* Cutler memorandum is merely one concrete example of the material evidence that Appellant was unable to present to the AJ because of her order granting the summary judgment without discovery. That order blocked Appellant's access to even more critical evidence. To begin with, in its December 2, 2005, response[15] to Appellant's FOIA-Privacy Act request,[16] the Agency's FOIA Office admitted that it was withholding 251 pages of responsive documents relating to Appellant's claims in these proceedings.[17] Those 251 pages,

---

[14] See Appellant's declaration of September 28, 2006, filed herewith.
[15] *Id.*, Exhibit C.
[16] *Id.*, Exhibit A.
[17] *Id.*

5

however, do not include the curricula vitae or quality ranking factors of those to whom the Agency made offers. Further, very few of these documents were included in the ROI. Hence, it was impossible for the AJ to objectively compare Appellant's qualifications with those of the selectees in relation to the desired qualifications stated in each Agency's job announcement. Instead, the AJ relied upon the Agency's self-serving conclusions why each selectee's qualifications were superior. But there is more. Appellant's opposing papers suggest numerous other areas where discovery—document production and depositions—were critical.

The AJ's refusal to permit reasonable discovery is just one of the reasons her decision must be vacated. There are multiple other reasons. For example, the AJ also failed to address six claims in her decision.[18] These claims were dismissed by the Agency without an investigation. All were addressed in Appellant's opposition to the summary judgment. None was even mentioned in the AJ's decision. Appellant respectfully refers the Commission to his opposition papers below (Volumes V and VI) for a more complete statement why the AJ's decision should not be permitted to stand.

For the reasons stated above and in Appellant's papers filed in opposition to the motion for summary judgment, the AJ's order should be vacated.

Respectfully submitted,

September 28, 2006

Gary J. Aguirre
Appellant
1528 Corcoran St. NW
Washington, DC 20009
202-232-1803
202-328-0562 (fax)

---

[18] See section IV (The SEC'S Dismissal of Six Claims Should Not Be Affirmed) of Appellant's points and authorities filed in opposition to the Agency's summary judgment motion.

6

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and corrected copy of Appellant's Brief in Support of Appeal to be served by certified, first class mail, return receipt requested, on September 28, 2006, upon:

Juanita C. Hernández
Office of General Counsel
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549-9612


Date: September 28, 2006                    _____
                                                           Gary J. Aguirre

7