UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY AGUIRRE,

        Plaintiff,

v.                         Case No. 1:06-cv-1260-ESH

SECURITIES AND EXCHANGE
  COMMISSION,

        Defendant.

**FOURTH DECLARATION OF MELINDA HARDY**

I, Melinda Hardy, declare as follows:

1. I am an Assistant General Counsel in the Office of the General Counsel of the Securities and Exchange Commission ("Commission"). I have been employed in that capacity at the Commission since approximately 1998. I am one of the attorneys who is handling the above-captioned litigation for the Commission.

**Senate Production**

2. On August 2, 2006, Senator Charles E. Grassley, Chairman of the Senate Committee on Finance, and Senator Arlen Specter, Chairman of the Senate Committee on the Judiciary, wrote to Christopher Cox, Chairman of the Commission, regarding allegations made by Gary Aguirre ("Grassley-Specter letter"). That letter requests that the Commission provide to those Senate committees numerous documents regarding the investigation of Pequot Capital Management and the termination of Aguirre's employment by August 15, 2006.

3. Among other things, the Grassley-Specter letter requested production of:

> All documents related to the termination of the employment of Mr. Gary Aguirre including but not limited [to] all communications in any form, such as email sent

or received by any of the above named individuals.

The letter also requested production of:

> The full employment personnel file of Mr. Gary Aguirre, both formal and informal.

4. To respond to the Grassley-Specter letter, in August 2006 staff in the Commission's Office of the General Counsel ("OGC") (primarily Richard Humes, Melinda Hardy, Laura Walker, and Juanita Hernandez) took steps to gather and produce responsive documents.

5. OGC staff provided a copy of the Grassley-Specter letter to Aguirre's former supervisors (all in the Division of Enforcement) who were still employees of the Commission: Linda Thomsen, Mark Kreitman, Robert Hanson, Richard Grime, and Charles Cain. OGC staff also provided a copy of the Grassley-Specter letter to Charles Staiger who is the Division of Enforcement's Supervisory Program Analyst and who oversees the processing of all employment actions for the Division of Enforcement. OGC staff instructed each of those persons to provide, among other things, all documents responsive to the requests quoted in paragraph 3 above. OGC staff asked them to search any paper or electronic files that could have responsive information. In addition, OGC staff asked them to search all email available on their computers for, among other things, the word "Aguirre" and to provide all emails that referred to Gary Aguirre. Each person provided documents and indicated that they were providing at that time or had previously provided all responsive documents to OGC staff.

6. OGC staff had gathered some documents prior to the Senate inquiry because, in approximately May 2006, Commission staff learned that the Office of the Special Counsel

("OSC") would be investigating plaintiff Gary Aguirre's allegations regarding his termination. In anticipation of that investigation, in June and July 2006 OGC staff started gathering documents from paper and electronic files, including emails, from Linda Thomsen, Mark Kreitman, Robert Hanson, and Charles Cain. In July 2006, OGC staff stopped gathering documents at the request of the Commission's Office of the Inspector General, which had re-opened its investigation into Aguirre's allegations.

7. One of Aguirre's former supervisors, Paul Berger, left the Commission before August 2, 2006. However, in August 2006, the computer he used and his office files were still in the office he had used at the Commission. Frederic Firestone, currently an Associate Director and then an Assistant Director in the Division of Enforcement, organized a search of Berger's paper and electronic files for documents potentially responsive to the Grassley-Specter letter, including any documents that mentioned Aguirre. Firestone provided all documents he found to the OGC staff. OGC staff understood from Berger and others that any documents Berger had relating to Aguirre would have been in the paper or computer files maintained in his office, other than a binder Berger gave to Robert Hanson before Berger left the Commission.

8. OGC staff contacted all current employees who had served on the compensation committee that decided to give Aguirre a two step merit pay increase in the summer of 2005. OGC staff asked those persons to search their paper and electronic files for any information regarding Aguirre's merit pay increase. OGC staff obtained the few documents that were located.

9. OGC staff also contacted several other staff members in the Division of Enforcement primarily to identify and gather documents relating to the Pequot investigation.

Several of those staff members searched their emails for, among other things, the word "Aguirre" and provided to OGC staff all emails that referred to Gary Aguirre. Some of those emails, particularly emails from Kevin O'Rourke and James Eichner, related to Aguirre's performance.

10. OGC staff contacted staff in the Commission's Office of Human Resources who had responsibility for advising the Division of Enforcement regarding personnel actions and for the administrative processing of personnel actions and asked them to search their paper and electronic files for all documents responsive to the requests quoted in paragraph 3 above. Those persons were Linda Borostovik, Adam Ramsey, Camisha Pinkney, David Cunningham, Derek Childress, and Trinette Smith. Each person indicated that they either had not found any responsive documents or were providing all responsive documents to OGC staff.

11. OGC staff contacted staff in the Commission's Office of Equal Employment Opportunity ("OEEO") and asked them to search OEEO's paper and electronic files for all documents responsive to the requests quoted in paragraph 3 above. Fran Paver of that office later told OGC staff that OEEO staff had conducted the search and provided to OGC staff all files from OEEO related to Aguirre's complaint about his termination as well as all emails from Paver and Deborah Balducchi, the Commission's EEO Director, that related to Aguirre's discrimination claims.

12. OGC staff who had had any responsibility for personnel or EEO matters related to Aguirre prior to receipt of the Grassley-Specter letter reviewed their files for documents related to Aguirre. Those staff members were Richard Humes, Melinda Hardy, and Juanita Hernandez. At that time, OGC staff provided documents that were generated as part of the decision-making process or implementation of personnel actions relating to Aguirre other than his hiring.

13. In September 2006, OGC staff provided to the Commission's Freedom of Information Act Office ("FOIA Office") documents relating to personnel actions involving Aguirre that it had gathered by that time in anticipation of an OSC investigation and for the Senate Production (*see, supra,* ¶¶ 4-12) so that the FOIA Office could review the documents and produce them as appropriate. OGC staff provided documents obtained from persons in other offices if those persons asked OGC staff to provide the documents they had given to OGC to the FOIA Office. OGC staff did not review the documents it provided to the FOIA Office for responsiveness except to remove documents related to the Pequot investigation, which was still open. OGC staff also provided documents to the FOIA Office that OGC staff had provided for production to the Senate.

14. In August 2006, OGC staff asked the Commission's Office of Information Technology ("OIT") to restore back-up tapes of all emails sent to or from the following persons: Gary Aguirre, Eric Ribelin, Mark Kreitman, Robert Hanson, Linda Thomsen, Paul Berger, Joseph Cella, James Eichner, Hilton Foster, Liban Jama, and Kevin O'Rourke from March 1, 2005 to September 30, 2005.[1] On or about September 15, 2006, OIT provided to OGC staff CDs containing the restored emails. OIT could not restore all of the emails requested because some of the back-up tapes were corrupt. OIT staff said it was not possible to restore those tapes. OGC staff searched the restored emails for the following terms, among others: Mack, Pequot, PCM,

---

[1] Restoring email for a certain period means that email that was maintained in the Inbox, Sent Items folder, Deleted Items folder, or Drafts folder on a person's computer at the times that back-ups occurred can be restored. Thus, email from earlier periods can be restored if the person has not removed it from the files that are backed up. Conversely, emails that have been removed from the files that are backed up before a back-up occurs cannot be restored.

Aguirre, Gary, GA, Samberg, and Heller. (Aguirre's emails were not searched using Aguirre, Gary, or GA.) OGC staff also used additional terms or looked through all emails for certain key dates such as the date on which Aguirre's supervisors prepared a supplemental evaluation. OGC staff then reviewed the emails identified by the searches and printed for production to the Senate all emails that related to, among other matters, Aguirre's merit pay increase, evaluation, performance, or termination.

      15.     In September 2006, OGC staff asked OIT to restore all email sent to or from the following persons for the period October 2005 to the present: Peter Bresnan, Paul Berger, Jim Eichner, Robert Hanson, Mark Kreitman, Eric Ribelin, Walter Ricciardi, and Linda Thomsen. On or about November 30, 2006, OIT provided to OGC staff CDs containing the restored emails. OIT could not restore all of the emails requested because some of the back-up tapes were corrupt. OIT staff said it was not possible to restore those tapes. OGC staff searched the restored emails for the following terms, among others: Mack, Pequot, PCM, Aguirre, Gary, GA, Samberg, and Heller. OGC staff then reviewed the emails identified by the searches and printed for production to the Senate all emails that related to, among other matters, Aguirre's merit pay increase, evaluation, performance, or termination.

      16.     OGC staff reviewed all documents they had gathered as described in paragraphs 4 through 12 and 14 through 15 of this declaration and provided to the Senate all documents gathered unless they plainly did not pertain to Aguirre or any personnel actions taken in connection with him. OGC staff also included many additional documents to the Senate in response to requests other than those quoted in paragraph 3 because the Senate committees also sought documents relating to matters other than personnel actions relating to Aguirre. The

production to the Senate began on or about August 28, 2006 and ended on or about February 7, 2007.

17.  During the summer of 2007, OGC staff compared the documents Aguirre had received pursuant to his December 30, 2005 FOIA request and the documents produced to the Senate by the OGC staff to determine whether that production contained any documents not produced to Aguirre pursuant to his FOIA request.  In reviewing the documents produced to the Senate, OGC staff looked for any documents that pertained to Aguirre's merit pay increase, evaluation, performance, or termination.  As stated in an August 16, 2007 letter from me to Scott Hodes (Exhibit 1 hereto), OGC staff identified and produced 39 pages that had not previously been produced.

## Documents from the Office of the Chairman

18.  Staff in the Office of the Chairman (Peter Uhlmann and Anil Abraham) have informed me that they gathered and asked other staff in their office to gather all paper and electronic documents they had pertaining to Aguirre in August 2006.  Christopher Cox, Peter Uhlmann, Anil Abraham, and Paul Wilkinson provided documents resulting from searches of their paper and electronic files.  No other staff in the Chairman's Office had been involved in any matters relating to Aguirre.

19.  In September 2006, staff in the Office of the Chairman asked OGC staff to review the documents they had gathered before providing them to the FOIA Office.  The OGC reviews documents from the Chairman's Office that are gathered in response to FOIA requests and, in effect, serves as the FOIA liaison for the Chairman's Office.

20.  In September 2006, after reviewing the documents from the Chairman's Office,

OGC staff provided to the FOIA Office only documents that were prepared contemporaneously with Aguirre's merit pay increase, evaluation, performance, or termination.

21. In May and June 2008, OGC staff reviewed all the documents the Chairman's Office staff originally gathered.

22. In reviewing the documents, OGC staff considered that during the May 21, 2008 hearing, the Court stated that references to Aguirre's termination in memoranda from the Office of the Inspector General to the Commission were within the scope of Aguirre's requests seeking "All records relating to the SEC's termination of Aguirre's employment." *See* Complaint ¶¶ 37(7)-(12). Nonetheless, the Court recognized that deliberative portions of the memoranda (which were not deliberations over personnel actions relating to Aguirre) could be non-responsive.

23. In light of the Court's statements, OGC staff treated as responsive any portions of documents that describe or discuss Aguirre's termination. For example, OGC staff found the following passages in a September 26, 2006 memorandum from the Office of General Counsel to the Commission regarding an "Office of Special Counsel ('OSC') Request for Information or Assistance relating to complaint from Gary Aguirre alleging retaliation for whistleblowing activities" to be responsive:

> "Aguirre has claimed that the Division of Enforcement terminated his employment because he sought to take testimony from a person with powerful political connections…."

> "The OSC has informed us that it is conducting an investigation of Aguirre's claims that the Division of Enforcement retaliated against him by terminating his employment because he complained that the Division of Enforcement did not issue a subpoena because of a person's political connections."

24. OGC staff did not deem references to Aguirre's termination or other personnel matters responsive where those matters were mentioned merely as a means to describe something else, usually a request for production of documents. Thus, in the September 26, 2006 memorandum, OGC staff deemed phrases such as the following as non-responsive:

> "Those documents include documents related to Aguirre's performance, conduct, merit pay increase, and firing…."

25. This approach is consistent with Aguirre's requests because each time Aguirre provides any examples of what he seeks in items 7 through 12 of his December 30, 2005 FOIA request, he provides examples that indicate he wants information that will reveal information about how and why the personnel decisions he refers to were made. Nothing in those items indicates that he was seeking information about any persons to whom the documents were provided or the reasons for providing those documents.

26. Some documents provided by the Office of the Chairman were not agency records and consequently are not subject to the FOIA. Those documents are handwritten notes from meetings or testimony sessions and to the best of the author's recollection they are notes taken solely for his convenience and were not relied upon by any other persons or integrated unto the Commission's record system or files. *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 163, 167 (D.C. C. 2004). If those notes were deemed to be agency records, they would be exempt under Exemption 5 of the FOIA because they would be protected by the deliberative process privilege or as work product.

27. We are now producing several documents gathered by the Office of the Chairman, or responsive portions of documents, in response to Aguirre's FOIA request. Non-responsive

portions of certain documents have been redacted, and many of those redacted portions are protected by the deliberative process and/or attorney-client privileges and/or by the work product doctrine. We are also withholding 11 documents, which are listed on the Supplemental Vaughn Index for Documents from the Office of the Chairman (Exhibit 2 hereto). We have determined that there are no segregable portions of the documents on the Supplemental Vaughn Index because the entire documents are protected by the deliberative process privilege. *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 53-55 (D.C. Cir. 2005). Indeed, many of the documents have only a small part that is even responsive. All of the documents that are being produced or that are on the Supplemental Vaughn Index are being produced as a result of the Court's statements described above. None of them comes within the scope of documents OGC staff previously deemed to be responsive.

### Search of Office of the General Counsel Documents

28.     As explained above (¶ 12), in response to the Grassley-Specter letter, OGC staff provided documents that were obtained or prepared at or close to the time the Division of Enforcement was taking actions relating to Aguirre. Although OGC staff reviewed files containing work product that was gathered or prepared to defend against claims that Aguirre had indicated he would bring against the Commission, OGC staff did not consider its work product responsive to Aguirre's FOIA request as it was not generated as part of the decision making or implementation of Aguirre's termination or other personnel actions.

29.     In light of the Court's statements described above (¶ 22), in May and June 2008, OGC staff conducted a new search for documents responsive to items 7 through 12 of Aguirre's December 30, 2005 FOIA request.

30.     OGC staff who had provided advice on personnel or EEO actions relating to Aguirre, worked on or provided advice regarding any document productions regarding Aguirre, represented witnesses in any proceedings regarding Aguirre, or worked on any personnel proceedings (whether relating to the EEOC, OSC, or Merit Systems Protection Board) reviewed their files for documents.  Those staff members include Brian Cartwright, Meridith Mitchell, Stephen Jung, Richard Humes, Samuel Forstein, Melinda Hardy, Laura Walker, Juanita Hernandez, and Noelle Frangipane.  They reviewed paper and electronic files (including email) that related to any Aguirre matter for documents created before October 1, 2006.  OGC staff also reviewed documents that had previously been gathered by OGC's Ethics Office.

31.     OGC staff followed the guidelines described above in paragraphs 23 through 25 to determine what documents were responsive.  However, OGC staff did not deem as responsive documents that OGC staff created for the sole purpose of defending this action.  Even if those documents had been deemed responsive, they would be protected under Exemption 5 of the FOIA because they are all work product, and most are also protected by the deliberative process and/or the attorney-client privileges.

32.     Individual OGC staff members had some documents that are not agency records and consequently not subject to the FOIA.  Those documents are personal notes (primarily handwritten notes) from meetings, phone calls, and witness interviews taken solely for the convenience of the attorney who took the notes and were not relied upon by any other persons or integrated into the Commission's record system or files.  *See Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 163, 167 (D.C. C. 2004).  If those notes were deemed to be agency records, they would be exempt under Exemption 5 of the FOIA because they would be protected by the

11

deliberative process and/or attorney-client privileges and/or by the work-product doctrine.

33.     We are now producing several documents gathered by the OGC, or responsive portions of documents, in response to Aguirre's FOIA request. Non-responsive portions of certain documents have been redacted, and certain of those redacted portions are protected by the deliberative process and/or attorney-client privileges and/or by the work-product doctrine. We are also withholding 42 documents, which are listed on the Supplemental Vaughn Index for Documents from the Office of the General Counsel (Exhibit 3 hereto). We have determined that there are no segregable portions of the documents on the Supplemental Vaughn Index because the entire documents are protected by the attorney-client or deliberative process privilege or by the work-product doctrine. *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 53-55 (D.C. Cir. 2005). Indeed, many of the documents have only a small part that is even responsive. All of the documents that are being produced or that are on the Supplemental Vaughn Index are being produced as a result of the Court's statements described above. None of the documents being produced or on the Supplemental Vaughn Index comes within the scope of documents OGC staff previously deemed to be responsive.

**Documents Produced to Aguirre by OGC in Response to his FOIA Request**

34.     After the FOIA Office made an initial production to Aguirre of, among other things, documents responsive to items 7 through 12 of Aguirre's December 30, 2005 FOIA request in October 2006, and after Commission staff provided public testimony regarding Aguirre's termination in a Senate hearing in December 2006, OGC staff reviewed documents the FOIA Office had withheld as exempt to determine whether to make a discretionary release of them. In reviewing those documents in December 2006 and January 2007, OGC staff deemed 38

pages non-responsive. The remaining documents were produced or included on the Commission's Vaughn Index filed with its motion for summary judgment on October 1, 2007.

35. OGC staff have reviewed again the 38 pages deemed non-responsive, following the guidelines described above in paragraphs 23 through 25 to determine what documents are responsive. Ten of those pages will be produced.

36. In or about August 2006, OGC also obtained from the Commission's Office of Inspector General ("OIG") documents gathered for production to the Senate that were potentially responsive to items 7 through 12 of Aguirre's December 30, 2005 FOIA request and reviewed those documents to determine whether they should be released. In reviewing those documents in December 2006 and early 2007, OGC staff deemed 67 pages non-responsive. The remaining documents were produced or included on the Commission's Vaughn index.

37. In addition to providing documents to OGC staff in or about August 2006, OIG identified two categories of documents that it had not provided to OGC at that time and that it believed were potentially responsive but exempt under the FOIA. First, OIG had documents in an open investigative file relating to Aguirre. The status of the open investigative file has been addressed in this litigation, and Aguirre has not contested the Commission's position that production of those documents is not required under the FOIA or the Privacy Act. *See* Memorandum of the Securities and Exchange Commission in Support of Motion for Summary Judgment at 21-29, 41-44 (filed Oct. 1, 2007). Second, OIG informed OGC staff that it had records pertaining to Congressional requests received between approximately May and September 2006 concerning Aguirre's allegations. OGC staff viewed those records as non-responsive.

38.     In August or September 2007, the OIG provided to OGC staff another group of documents consisting of all documents that had been provided to the Senate but that had not previously been provided to OGC.  *See* Third Declaration of Mary Beth Sullivan ("Third Sullivan Declaration") ¶ 9 (filed on June 13, 2008).  On or about September 17, 2007, OGC staff provided to Aguirre certain of those documents.  OGC staff also withheld certain of those documents and placed them on its Vaughn index.  OGC staff, however, deemed some of those documents to be non-responsive.

39.     In June 2008, OGC staff obtained another production of documents from the OIG: (a) the documents identified in paragraph 37, *supra*, as records pertaining to Congressional requests concerning Aguirre's allegations to the extent those documents referred to Aguirre's merit pay increase, evaluation, performance, or termination; and (b) emails described in paragraph 10 of the Third Sullivan Declaration.

40.     In June 2008, OGC staff reviewed all the documents obtained from the OIG that had previously been deemed non-responsive and the additional documents they received in June 2008, following the guidelines described above in paragraphs 23 through 25 to determine what documents were responsive.

41.     We are now producing several documents gathered by OIG, or responsive portions of documents, in response to Aguirre's FOIA request.  Non-responsive portions of some documents have been redacted, and many of those redacted portions are protected by the deliberative process privilege.  We are also withholding 32 documents, which are listed on the Supplemental Vaughn Index for Documents from the Office of Inspector General (Exhibit 4 hereto).  We have determined that there are no segregable portions of the documents on the

14

Supplemental Vaughn Index because the entire documents are protected by the deliberative process privilege. *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 53-55 (D.C. Cir. 2005). Indeed, many of the documents have only a small part that is even responsive. All of the documents that are being produced or that are on the Supplemental Vaughn Index are being produced as a result of the Court's statements described above. None of them comes within the scope of documents OGC staff previously deemed to be responsive.

### June 2008 Review of Email Back-up Tapes

42.     As described above (¶¶ 14-15), in 2006 OIT restored from back-up tapes emails for several persons and reviewed their emails. On May 21, 2008, Aguirre informed me that he wanted back-up tapes restored for all persons listed in items 7 through 12 of his December 30, 2005 FOIA request. OGC staff then asked OIT to restore emails for the period of June 2005 through August 2006 for Christopher Cox, James Clarkson, Richard Humes, Deborah Balducchi, Richard Grime, and Charles Cain. OIT could not restore all of the emails requested because some of the back-up tapes were corrupt. OIT staff said it was not possible to restore those tapes.

43.     OGC staff searched the restored emails for the term "Aguirre" and then reviewed the emails identified by the search, following the guidelines described above in paragraphs 23 through 25 to determine what documents were responsive.

44.     We are now producing some documents from the restored emails, or responsive portions of documents, in response to Aguirre's FOIA request. Non-responsive portions of some documents have been redacted, and some of those redacted portions are protected by the deliberative process and/or attorney-client privilege and/or the work-product doctrine. The documents that are being produced are being produced as a result of the Court's statements

described above. None of them comes within the scope of documents OGC staff previously deemed to be responsive.

## Miscellaneous Issues

45. We have not asked anyone in the Commission's Office of Compliance Inspections and Examinations ("OCIE") to search for documents responsive to items 7 through 12 of Aguirre's December 30, 2005 FOIA request because no person or document has indicated that any person in OCIE was consulted or otherwise involved in the implementation of or decisions relating to Aguirre's merit pay increase, evaluation, or termination. We also are not aware of any circumstances that would have caused OCIE staff to generate or obtain any document regarding Aguirre's performance.

46. I am not aware of any investigation of Aguirre by any OGC staff that preceded Aguirre's termination that related to his merit pay increase, evaluation, performance, or termination. Richard Humes and Juanita Hernandez have advised that they also are not aware of any such investigation.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 13, 2008 in Washington, D.C.

                                                                /s/ Melinda Hardy
                                                                Melinda Hardy