UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Gary Aguirre,<br><br>    Plaintiff,<br><br>v.<br><br>Securities and Exchange<br>Commission,<br><br>    Defendant. | Civil Action No.: 06-1260 (ESH) |

## FOURTH DECLARATION OF GARY J. AGUIRRE

I, Gary J. Aguirre, declare:

1) On June 13, 2008, I received four emails from Melinda Hardy to which were attached documents with Aguirre Bates numbers 867 through 1127, a total of 260 pages of documents.

2) I was never informed by any SEC official during my employment with the SEC that any problem existed with my performance or conduct. All of my evaluations were positive. I received a two-step merit raise on August 21, 2005, and received the first check at the higher pay scale after my discharge. I received a copy of the "supplemental evaluation," analyzed at length in the Senate report, five weeks after my discharge. Since then, I have observed as the SEC has continued to add, withdraw, and modify its justifications for my discharge. With the passage of time, they have grown in number and scope. On June 17, 2008, the SEC's Inspector General, David Kotz (Kotz), asked me to comment on what has become the longest list thus far of contentions by senior Enforcement officials

1

defending their decision to terminate my employment. Those contentions are in the form of opinion, speculation, and innuendo without anchor in concrete fact. They are also irreconcilable with the day to day email flow I had with SEC staff.

3) I do not know the exact number of email communications I had with my colleagues and supervisors during my employment with the SEC, but I would estimate the number to be in the vicinity of 1,500 to 2,000. These emails would sometimes contain positive feedback from other staff or my supervisors. These comments seem to have been screened out of the emails the SEC has released.

4) On June 17, 2008, Kotz asked me to comment on statements made by SEC staff and others. Among the statements Kotz asked me to comment upon were those made during a meeting in June 2005 involving SEC staff and Pequot's attorneys including Audrey Strauss (Strauss). The statements attributed to Strauss contain details identical to the details contained in the testimony of senior SEC officials when they testified on December 5, 2006, before the Senate Judiciary Committee regarding their reasons for terminating my employment.

5) The Senate Finance Committee later asked me to respond to these contentions. In my response, which is part of the Senate record, I cited internal SEC emails establishing that their testimony was untrue. The question remains, however, from what source was the erroneous information obtained. Kotz's description of the meeting and the notes seems to conform to a meeting that took place on June 28, 2006, which was documented in the notes described in item 25 to the SEC original Vaughn index, Ex. 14 to the Second Declaration of Melinda Hardy. According to Kotz, former Deputy Director Peter Bresnan

also took notes at the same meeting. I have reviewed the notes which are listed as item 25 on the SEC's Vaughn index. They clearly contain responsive material.

6) I have read the testimony of Linda Thomsen, which is available to the public at the offices of the Senate Finance Committee. At page 15 of her examination by Senate investigators on September 8, 2006, she testified, based on her recollection, that it had been a "number of years," since the SEC had discharged a probationary attorney, a first year attorney, during his or her first year with the SEC.

7) I met with Kathleen Casey (Casey) on March 13, 2006, and discussed with her in detail the facts relating to the Pequot investigation and my discharge. On March 15, 2006, I provided Casey with a copy of my 45-page sworn statement to the Office of Special Counsel and numerous exhibits relating to my allegations. A copy of my email confirming that delivery is attached as Ex. 8.

8) Exhibit1 is a true and correct copy of my letter of June 27, 2008.

9) Exhibit 2 is a true and correct copy of Melinda Hardy's letter of July 25, 2008.

10) Exhibit 3 is a true and correct copy of my letter of December 30, 2005.

11) Exhibit 4 is a true and correct copy of an email from David Wilson dated July 6, 2006, to six staff members which states in part,

   A) "I interviewed Chuck Staiger, who told me he preserved this account at the direction of Juanita Hernandez with the Office of the General Counsel which launched an investigation of the user, Gary Aguirre, prior to his departure in Sept. 2005."

   B) "Ms. Hernandez told me that in preparation for the separation, OGC directed Mr. Staiger's office to 'freeze' the subject's information technology assets. Presumably the subject's laptop and external storage devices were secured (I don't know and

3

haven't asked). The e-mail account was 'disabled,' meaning the subject could not log into it. "

C) "While the subject himself has not accessed SEC systems since September 2005, the email account still existed. One log entry notes that it was accessed in May 2006; I have not attempted to discover who accessed it or what was done (again because this *is* an ongoing investigation)and it is possible this is an artifact ..."

12) Exhibit 5 is a true and correct copy of Richard Humes's letter of January 8, 2007.

13) Exhibit 6 is a true and correct copy of Melinda Hardy's email of September 1, 2005, with attachment.

14) Exhibit 7 is a true and correct copy of draft of an email sent Paul Berger sent me on January 13, 2005. The notes on the draft appear to be notes taken during conversations with SEC staff and including a reference to "Lindy Hardy" with the staff number posted beside it.

15) Exhibit 8 is a true and correct copy of my email of March 16, 2006, to Cathleen Casey.

16) Exhibit 9 is a true and correct copy of my email of May 31, 2006, to Kathleen Casey.

Executed on August 1, 2008, in San Diego, California. I declare under penalty of perjury that the foregoing is true and correct.

_____
Gary J. Aguirre